IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KATHLYN A. RHODES,

    Plaintiff,                    No. 2:09-cv-00489 MCE KJN PS

    v.

COUNTY OF PLACER, et al.,

    Defendants.            <u>ORDER</u>

_____/

        Presently before the court is a motion for a court order authorizing the immediate release of plaintiff's psychiatric records from the Sacramento County Mental Health Treatment Center, which was filed by defendants Sonja Marie Jackson, M.D., and David Fakhri, M.D. (Dkt. No. 109.) Several of the other defendants in this action joined in the motion.[1] (Dkt. Nos. 112-15.) Plaintiff failed to file a written opposition to the motion.

        The court heard this matter on its law and motion calendar on January 13, 2011. Attorney Robert F. Tyler appeared on behalf the moving defendants, Drs. Jackson and Fakhri,

---

[1] The following defendants joined in the motion: Placer County, Edward N. Bonner, Mike Seipert, Cheryl Hamilton, City of Rocklin, Thomas J. Platina, Susan Davis, Darrell Jantz, Jennifer Collins, Mark Seimens, Carlos Urrutia, American Medical Response, Sacramento County (erroneously sued as Sacramento County Mental Health Treatment Center), and Dorian Kittrell.

and attorneys for the other defendants who joined in the motion, and some defendants who did not join in the motion, also appeared at the hearing. Plaintiff, who is an attorney but is appearing pro se, appeared on her own behalf despite the fact that she failed to file a written opposition or a statement of non-opposition to the motion. Indeed, plaintiff conceded at the hearing that she does not oppose the motion. The undersigned has considered the briefs, oral arguments, and the record in this case and, for the reasons stated below, grants the motion for a court order authorizing the release of plaintiff's psychiatric records. Briefly stated, plaintiff has placed her mental condition directly at issue in this case, and defendants, especially those against whom plaintiff has alleged claims of medical malpractice, medical battery, and intentional infliction of emotional distress for which plaintiff seeks damages, are entitled to access to plaintiff's mental records from the Sacramento County Mental Health Treatment Center in order to adequately prepare their respective defenses.

I. BACKGROUND[2]

The operative complaint in this case is plaintiff's verified Second Amended Complaint. (Dkt. No. 66.) The Second Amended Complaint alleges facts relating to plaintiff's interaction with police officers for the City of Rocklin and various other persons, which began on November 20, 2007, with an alleged search of plaintiff in the parking lot of a Comfort Suites hotel in Rocklin, California. (Second Am. Compl. ¶ 10.) Plaintiff alleges that various police officers also, among other things, illegally searched plaintiff's hotel room later that night, physically beat and sexually assaulted plaintiff, and transported plaintiff to the Placer County Mail Jail, where plaintiff was refused medical attention. (Id. ¶¶ 11-14, 16.) Plaintiff further alleges that on November 21, 2007, after spending 24 hours in solitary confinement without food or water, she was transported by ambulance to the Sacramento County Mental Health Treatment Center ("Treatment Center") and was physically beaten yet again by the ambulance personnel in

---

[2] The following is not an exhaustive summary of the 38-page Second Amended Complaint.

the parking lot of the Treatment Center.³ (Id. ¶¶ 17-18.) She alleges that she was "falsely imprisoned and involuntarily confined for eight (8) days" at the Treatment Center. (Id. ¶ 18.)

The Second Amended Complaint alleges that Dr. Jackson is a licensed psychiatrist who provided psychiatric treatment to plaintiff at the Treatment Center on or about November 25-28, 2007, and that Dr. Fakhri treated plaintiff at the Treatment Center on November 25, 2007. (Second Am. Compl. ¶ 6.) More specifically, plaintiff alleges:

> Dr. **JACKSON** treated Plaintiff on or about November 25-28, 2007, and, without Plaintiff's consent prescribed Seroquel, a dangerous medication because of its adverse side effects, including causing diabetes, strokes, high blood pressure, heart attacks, nightmares, weight gain, "cotton mouth" and other adverse side effects which were not disclosed to Plaintiff and, thus, was below the standard of care required of a California psychiatrist. Dr. **FAKHRI** treated Plaintiff on or about November 25, 2007, and changed the dosage of Seroquel and prescribed Lithobid (Lithium). Plaintiff also saw Dr. **FAKHRI** at [the Treatment Center] on July 27, 2008, when Plaintiff was attempting to obtain copies of medical records. When Plaintiff called Dr. **FAKHRI**'s name, Dr. **FAKHRI** looked at Plaintiff, then turned around and walked away, ignoring and abandoning Plaintiff. [The Treatment Center's] agent or employee, Kara Miller, a social worker, told Plaintiff during her hospitalization that if Plaintiff did not take her medications ordered by Drs. **JACKSON** and **FAKHRI**, Plaintiff would remain a patient at [the Treatment Center] for a very long time. None of the Defendants identified in this paragraph advised Plaintiff of the risks by ingesting the prescribed medications or that Plaintiff had the right to refuse medications, the right to contact a Patient's Rights Advocate, and/or the right to a hearing within 72 hours after being admitted, pursuant to Welfare and Institutions Code Section 5150, to determine whether there were sufficient grounds to confine Plaintiff involuntarily.

(Id.)

Among her 14 identified claims for relief, most of which assert several additional claims under the identified heading, plaintiff alleges claims that put her mental health in controversy or relate to plaintiff's alleged confinement at the Treatment Center. For example, plaintiff asserts claims arising from her alleged involuntarily confinement at the Treatment

---

³ Plaintiff alleges that a Rocklin police officer and a Rocklin police dispatcher filed a false police report, which reflected a fabricated witness statement to the effect that plaintiff was "'praying to a light' and singing in the hotel lobby and was 'acting crazy.'" (Second Am. Compl. ¶ 21.)

3

Center pursuant to California Welfare & Institutions Code § 5150, a statutory section that necessarily relates to a person's mental health.[4]  (See Second Am. Compl. ¶ 6.)  Additionally, plaintiff's sixth claim for relief alleges "medical battery" against the Treatment Center and Drs. Jackson and Fakhri, among other defendants.  (Id. ¶¶ 53-58.)  Plaintiff also asserts a claim for intentional infliction of emotional distress arising from the various alleged acts of medical battery.  (See id. ¶¶ 62, 65, 67.)  Plaintiff further alleges that she was falsely imprisoned, in part, by the Treatment Center.  (Id. at 74-75.)  Her twelfth claim for relief alleges that the Treatment Center and Dr. Fakhri, among several other defendants, committed medical malpractice by, in part, forcing plaintiff to ingest medications detrimental to plaintiff's health.  (See id. ¶ 85-88.)

On October 18, 2010, counsel for Drs. Jackson and Fakhri, attempted to obtain plaintiff's psychiatric records from the Treatment Center by contacting the Treatment Center's in-house counsel, Rick Heyer.  (Tyler Decl. ¶ 5, Dkt. No. 109, Doc. No. 109-2.)  Mr. Heyer told the doctors' counsel that they could only have access to the records by either obtaining a "signed HIPAA compliant authorization" from plaintiff, or by obtaining a court order.[5]  (Id.)

On October 28, 2010, counsel for Drs. Jackson and Fakhri sent a letter to plaintiff requesting that plaintiff sign an attached authorization form and return it to counsel by November 12, 2010.  (Tyler Decl. ¶ 6 & Ex. A.)  As completed by Drs. Jackson and Fakhri or

---

[4] In part, California Welfare & Institutions Code § 5150 provides:

> When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, designated members of a mobile crisis team provided by Section 5651.7, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation.

[5] HIPAA stands for Health Insurance and Portability and Accountability Act of 1996, Publ. L. 104-191, 110 Stat. 1936 (1996), which limits, among other things, a covered entity's ability to disclose medical or health information without authorization.

1  their counsel, the authorization form seeks plaintiff's "[m]ental health or developmental
2  disability treatment records (excludes 'psychotherapy notes')." (Tyler Decl., Ex. A at 2.) More
3  specifically, the form seeks the following types of records that pertain to plaintiff: consultation
4  reports, discharge summaries, emergency room reports, histories and physicals, progress notes,
5  psychiatric evaluations, and behavioral evaluations. (Id.) The relevant time period is noted as
6  "November 2006 to the present." (Id.) As of the date that Drs. Jackson and Fakhri filed the
7  pending motion, plaintiff had not responded to the request. (Tyler Decl. ¶ 7.)
8            As a result of plaintiff's initial refusal to execute the authorization form, Drs.
9  Jackson and Fakhri filed the pending motion seeking a court-ordered release of the psychiatric
10 records. Plaintiff, who has repeatedly represented to the court that she is an attorney licensed to
11 practice law in the State of California, failed to file a written opposition or statement of non-
12 opposition to the pending motion.
13           At the hearing, plaintiff represented that at some recent point she signed an
14 authorization form for the release of her records from the Treatment Center, but had modified the
15 dates delineating the relevant period for the records at issue. Plaintiff has filed no declaration
16 substantiating her representation or attaching her proposed revised authorization form. The time
17 to file such a declaration and document was prior to the hearing, and the undersigned assigns no
18 weight to plaintiff's unsubstantiated representations made at the hearing. So, contrary to
19 plaintiff's remark at the hearing, this motion is not "moot."
20 II.   DISCUSSION
21           The records sought by Drs. Jackson and Fakhri are discoverable and relevant to
22 plaintiff's claims. In terms of the general scope of discovery, Federal Rule of Civil
23 Procedure 26(b)(1) provides that unless otherwise limited by court order, "[p]arties may obtain
24 discovery regarding any nonprivileged matter that is relevant to any party's claim or
25 defense--including the existence, description, nature, custody, condition, and location of any
26 documents or other tangible things and the identity and location of persons who know of any

discoverable matter."[6] Fed. R. Civ. P. 26(b)(1) (stating also that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action"). Rule 26(b)(1) further provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

Here, plaintiff's mental health records, especially as they pertain to plaintiff's involuntary confinement and treatment at the Treatment Center, are relevant to plaintiff's claims and several defendants' defenses, including those of Drs. Jackson and Fakhri. Plaintiff's Second Amended Complaint directly challenges the basis for her involuntary confinement pursuant to California Welfare & Institutions Code § 5150, which permits certain persons, including peace officers, to take a person into custody "[w]hen any person, as a result of mental disorder, is a danger to others, or to himself or herself." Moreover, as discussed above in the factual summary, plaintiff has alleged several claims against various defendants, including the Treatment Center and Drs. Jackson and Fakhri, for medical battery, medical malpractice, intentional infliction of emotional distress, and other claims arising from her forced hospitalization at the Treatment Center. These claims include medical malpractice or battery for failing to disclose information about medications prescribed to plaintiff. Plaintiff's records from the Treatment Center have a direct bearing plaintiff's claims and several defendants' defenses in this case. Accordingly, the records sought are discoverable.

This order serves as the means by which the moving and joining defendants may obtain records from the Treatment Center. As defendants Jackson and Fakhri note in their moving papers, a court order is one permissible means by which an entity covered by HIPAA may lawfully disclose health in the context of a judicial proceeding. See 45 C.F.R.

---

[6] It is unclear from defendants' filings whether the parties have conferred regarding discovery pursuant to Federal Rule of Civil Procedure 26(f). Of course, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). However, discovery may nonetheless be conducted prior to a Rule 26(f) conference when "authorized by . . . court order." Id.

§ 164.512(e)(1); see also Martin v. County of Sacramento, No. 2:07cv863-FCD-JFM (PC), 2008 WL 2625859, at *1 (E.D. Cal. June 25, 2008) (unpublished). To the extent not preempted by HIPAA, California's Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56 et seq., also provides that covered entities may disclose medical records pursuant to a court order. See Cal. Civ. Code § 56.10(b)(1).

One issue remains. Although not raised by plaintiff, some of the discoverable Treatment Center's records pertaining to plaintiff might be subject to the psychotherapist-patient testimonial privilege that federal courts have recognized applies in federal question cases. See, e.g., United States v. Romo, 413 F.3d 1044, 1046-47 (9th Cir. 2005) ("The Supreme Court has recognized a psychotherapist-patient testimonial privilege, holding that 'confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure. . . .'"), cert. denied, 547 U.S. 1048 (2006) (quoting Jaffee v. Redmond, 518 U.S. 1, 15 (1996)). The Ninth Circuit Court of Appeals has held that to rely on this privilege, the party asserting the privilege bears the burden of showing that: (1) the party from whom the testimony is sought is a licensed psychotherapist, (2) the communications at issue were confidential, and (3) the communications were made during the course of diagnosis or treatment. Id. at 1047. The Court in Jaffee premised the psychotherapist-patient privilege on Federal Rule of Evidence 501, and district courts have applied that privilege in the context of the discovery of mental health records. See, e.g., Oleszko v. State Compensation Ins. Fund, 243 F.3d 1154, 1156 (9th Cir. 2001), cert. denied, 534 U.S. 892 (2001); EEOC v. Cal. Psychiatric Transitions, 258 F.R.D. 391, 399 (E.D. Cal. 2009); Fitzgerald v. Cassil, 216 F.R.D. 632, 634-640 (N.D. Cal. 2003); Doe v. City of Chula Vista, 196 F.R.D. 562, 563-66 (S.D. Cal. 1999).

Plaintiff has not asserted any privilege here and, in any event, waived reliance on the psychotherapist-patient privilege through the allegations contained in the Second Amended Complaint. Although plaintiff has asserted no privilege, the court briefly addresses the

psychotherapist-patient privilege so that no doubt remains regarding the applicability of that privilege relative to the records at issue.

As an initial matter, plaintiff did not timely respond to the request by counsel for Drs. Jackson and Fakhri that plaintiff sign a HIPAA-compliant authorization for the release of her records from the Treatment Center. Additionally, she did not file a written opposition to the motion for a court order compelling the release of the relevant records. Moreover, she conceded at the hearing that she has no opposition to the motion. Accordingly, plaintiff has given no indication that she wishes to invoke the psychotherapist-patient privilege and, in any event, has not met her burden under the applicable standard.

To be sure, even if plaintiff attempts to raise the psychotherapist-patient privilege as to the records at issue here, plaintiff has waived the privilege because she has plainly placed the communications between her and her treating psychiatrists, and related records, directly at issue in this case. See, e.g., Samaan v. Sauer, No. CIV S-07-0960 RRB GGH, 2008 WL 214680, at *1 (E.D. Cal. Jan. 24, 2008) (unpublished) ("Like other privileges . . . , a plaintiff may waive the psychotherapist-patient privilege if claims put privileged information at issue."). In Jaffee, the Supreme Court acknowledged that, "[l]ike other testimonial privileges, the patient may of course waive the protection," Jaffee, 518 U.S. at 15 n.14, but did not set forth a standard governing waiver. The Ninth Circuit Court of Appeals apparently has not determined the standard to be applied in assessing waiver of the psychotherapist-patient privilege, and district courts in this Circuit disagree as to whether a broad view, narrow view, or middle-ground view governs the question of waiver. See, e.g., Samaan, 2008 WL 214680 at *2 ("Lower courts disagree on the test to determine whether the privilege is waived."); Doe, 196 F.R.D. at 565 ("The courts are divided on the circumstances in which a patient waives her privilege by bringing a law suit."); see also James Wm. Moore, 6 Moore's Federal Practice § 26.50[5] (Matthew Bender 3d ed. 2010) ("There is a conflict among the district courts as to what constitutes a waiver of the psychotherapist-patient privilege.").

1         Under the broadest view, a party waives the privilege by including an allegation of
2 emotional distress in his or her pleading. See, e.g., Doe, 196 F.R.D. at 568-69 (adopting the
3 broad view but limiting the scope of discovery); see generally Wilson v. Nesbeth, No. CIV-
4 S-06-1139 FCD GGH P, 2010 WL 4394093, at *1 (E.D. Cal. Oct. 29, 2010) (unpublished)
5 ("Some [district courts] apply a broad test, finding mental condition at issue, and, accordingly,
6 waiver of the privilege, whenever the mental condition is at issue and damages are sought.").
7 Under the narrowest view, a party waives the privilege only when he or she affirmatively relies
8 on the psychotherapist-patient communications. See Fitzgerald, 216 F.R.D. at 636-39 (adopting
9 narrower view); see generally Boyd v. City & County of San Francisco, No. C-04-5459 MMC
10 (JCS), 2006 WL 1390423, at *5 (N.D. Cal. May 18, 2006) (unpublished) ("Other courts have
11 taken a narrow approach, holding that there must be an affirmative reliance on the
12 psychotherapist-patient communication before the privilege is waived."). Other district courts
13 have embraced a middle-ground approach under which a party generally waives the privilege
14 when he or she "has done more than allege 'garden-variety' emotional distress," which has been
15 described as "ordinary or commonplace emotional distress," as opposed to distress that, for
16 example, led to a specific psychiatric disorder. See Fitzgerald, 216 F.R.D. at 637.

17         Here, the court need not decide which view is the most appropriate because, under
18 the particular facts of this case, plaintiff has waived the psychotherapist-patient privilege even
19 under the narrow view of waiver. As discussed above, plaintiff's records from the Treatment
20 Center are relevant to plaintiff's claims, including her claims of medical battery, medical
21 malpractice, and intentional infliction of emotional distress, among others, arising from her time
22 at the Treatment Center. Moreover, plaintiff's Second Amended Complaint expressly relies on
23 the content of the communications between plaintiff and her treating psychiatrists and staff at the
24 Treatment Center. For example, plaintiff's medical malpractice claims allege, in part, that she
25 was not provided with material information about a medication before she was allegedly forced
26 to take it at the Treatment Center. Moreover, as noted above, plaintiff challenges the basis of her

detention under California Welfare & Institutions Code § 5150, which throws her mental condition at the time of admission to the Treatment Center into question. Plaintiff has affirmatively relied on otherwise potentially privileged communications. Accordingly, assuming for this discussion that the narrow view of waiver applies, plaintiff has waived the psychotherapist-patient privilege. Several of the defendants here would be severely hampered in preparing their respective cases if they were not permitted to review plaintiff's records from the Treatment Center.

Based on the foregoing, the undersigned grants defendants Jackson and Fakhri's request for a court order compelling the release of plaintiff's psychiatric records from the Treatment Center. As noted below, however, the records to be disclosed shall not include "psychotherapy notes," as those records were not part of the authorization form submitted by defendants Jackson and Fakhri to plaintiff or the court.

### III. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that:

1. The motion for a court order authorizing the release of plaintiff's psychiatric records (Dkt. Nos. 109, 112-115) is granted.

2. The Sacramento County Mental Health Treatment Center shall release to defendants in this case, or their designated counsel, plaintiff's psychiatric records for the period November 2006 through the present. As noted on the authorization form submitted by the moving defendants, these records shall include plaintiff's "[m]ental health or developmental disability treatment records," but shall exclude psychotherapy notes, if any exist. The following specific types of records, excluding psychotherapy notes, shall be released: consultation reports, discharge summaries, emergency room reports, histories and physicals, progress notes, psychiatric evaluations, and behavioral evaluations. The Sacramento County Mental Health

////

////

1  Treatment Center shall release any records within 20 days of receipt of a written request from a
2  defendant or counsel for that defendant, *and a copy of this order shall be attached to any such*
3  *request*.
4         IT IS SO ORDERED.
5  DATED: January 13, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

11