1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KATHLYN A. RHODES,

11           Plaintiff,                        No. 2:09-cv-00489 MCE KJN PS

12      vs.

13   PLACER COUNTY, et al.,                    ORDER AND
                                               FINDINGS & RECOMMENDATIONS
14
             Defendants.
15
     _____/
16

17           Presently before this court is a motion to dismiss ("MTD") and motion to strike

18   ("MTS"), and in the alternative, a motion for a more definite statement, filed by defendants Sonja

19   Marie Jackson, M.D. and David Fakhri, M.D.  (Dkt. No. 73.)  Plaintiff Kathlyn Rhodes[1] opposed

20   the motions with a written opposition and declaration.  (Oppo., Dkt. Nos. 94, 95.)  The

21   _____

22        [1] This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered
23   February 9, 2010.  (Dkt. No. 36.)  Pursuant to the local rules, this matter was assigned to the
     undersigned because plaintiff did not initially identify to the court the fact that she is a licensed
24   attorney in California.  Local Rule 302(c)(21) provides that where a pro se litigant later becomes
     represented by an attorney, that such an action will be referred back to the district judge.  It is not
25   clear that this local rule governs the treatment of this action because plaintiff is still acting in pro
     per.  In the interests of judicial economy, the undersigned will proceed by way of findings and
26   recommendations which will then be reviewed by the district judge in this action.

                                               1

1    defendants filed a written reply.  (Dkt. No. 99.)  The matter was submitted without oral argument

2    pursuant to Eastern District Local Rule 230(g).  (Dkt. No. 101.)

3            After plaintiff filed her second amended complaint (the "SAC"), three sets of

4    defendants filed motions to dismiss and partially strike the SAC, and those motions are now

5    pending before the court.[2]  The motions filed by other defendants will be addressed in separate

6    orders.  This order addresses only the motions filed by Drs. Jackson and Fakhri (the "moving

7    defendants").  (Dkt. No. 73.)

8            After careful consideration of the pleadings on file, the record, and the papers

9    filed in support of and in opposition to these motions, and as discussed below, the undersigned

10   recommends that the motion to dismiss be granted in part and denied in part, that the motion to

11   strike be granted in part and denied in part, and that the motion for a more definite statement be

12   denied.

13   I.      BACKGROUND

14           Plaintiff, a licensed attorney[3] appearing in pro se and in forma pauperis, filed this

15   action on February 20, 2009.  (Dkt. No. 1.)  In general, plaintiff complains of alleged violations

16   of her rights based upon events surrounding her arrest and subsequent treatment at a mental

17   health facility.  Following this court's screening of her original complaint under 28 U.S.C. §

18   1915, plaintiff filed a first amended complaint on May 20, 2009.  (Dkt. No. 4.)  Several

19   defendants filed motions to dismiss that complaint.  This court heard oral arguments on the

20   _____

21       [2]  Defendants County of Sacramento and Dorian Kittrell filed a separate motion to
     dismiss the SAC.  (Dkt. No. 72.)  Defendant American Medical Response also filed a separate
22   motion to dismiss and partially strike the SAC.  (Dkt. No. 77.)   The remaining defendants filed
     answers to plaintiff's SAC, namely: California Forensic Medical Group, Inc., Elaine Hustedt,
23   Dan Hustedt, Taylor Fithian, M.D. (Dkt. No. 69), Choice Hotels International, Inc., Sac City
     Lodging Partners, LLC, Eva Cooper, Myrna Yao (Dkt. No. 70), City of Rocklin, Susan Davis,
24   Darrell Jantz, Jennifer Collins, Mark Siemens, Carlos Urrutia, Thomas J. Platina (Dkt. No. 74),
     Placer County, Edward N. Bonner, Mike Seipert and Cheryl Hamilton (Dkt. No. 75).
25
         [3]  At several hearings in this action, plaintiff confirmed her status as an active member of
26   the California Bar.  (E.g., Dkt. Nos. 60, 117.)

2

1   motion to dismiss the first amended complaint on March 25, 2010. (Dkt. No. 60.) During that

2   hearing, the undersigned warned plaintiff that, because she was a licensed member of the

3   California Bar, she would not continue to receive the leniency typically given to pro se litigants.

4   The undersigned directed plaintiff to very carefully review and amend her pleading to correct the

5   various deficiencies noted in the motions to dismiss, including the need to plead specific factual

6   allegations against each defendant for each claim. The undersigned gave plaintiff the example of

7   the defamation/slander claim, and informed her that to properly state such a claim, she must

8   allege: the statement(s) made; by whom; and identify who heard those alleged statements. The

9   undersigned also emphasized that some of the statute of limitations arguments made in the

10   motions to dismiss appeared "well-taken," and cautioned plaintiff that while she would be

11   permitted the opportunity to amend the apparently time-barred claims, she would be held to the

12   standards of an attorney and might therefore face sanctions for continuing to pursue claims that

13   are, in fact, time-barred. The undersigned warned plaintiff that, as a member of the bar, she

14   would be expected to omit claims that were time-barred unless she could make good faith

15   arguments to the contrary. Finally, the undersigned instructed plaintiff that with respect to any

16   claims with a claim presentation requirement (i.e., claims requiring compliance with the

17   Government Claims Act), plaintiff would need to plead the dates she presented her claim(s) and

18   attach the notice or claim to her pleading. (Id.)

19         After the hearing on March 25, 2010, the court dismissed the first amended

20   complaint and gave plaintiff leave to file her SAC. (Dkt. No. 61.) The court ordered plaintiff to

21   craft her SAC so as to distinguish between each defendant and his or her alleged actions, to state

22   non-conclusory factual bases for claims, and specifically set forth the notice provided to

23   defendants for any claims requiring such notice or claim presentation. (Dkt. Nos. 60, 61 at 2-4.)

24         On April 27, 2010, plaintiff filed her SAC. (SAC, Dkt. No. 66.) Plaintiff's SAC

25   sets forth fourteen separate claims for relief stemming from an allegedly improper search and

26   arrest and subsequent confinement in a mental facility following her time as a guest at the

1 Comfort Suites hotel in Rocklin, California.  (Dkt. No. 66.)  The SAC asserts claims against

2 twenty-three separate defendants.[4]

3        The SAC alleges that on November 20, 2007, three Rocklin police officers

4 surrounded plaintiff in a public parking lot, performed a pat down of her body, interrogated her

5 and ordered her to undergo a field sobriety test.  (SAC ¶ 10.)  Plaintiff alleges that this interaction

6 occurred across the street from the Comfort Suites hotel in Rocklin, where she had rented Room

7 101.  (Id.) Although plaintiff avers that she successfully complied with the police officers'

8 requirements, she nonetheless was "forced to ride in the back of Rocklin Police Officer Davis'

9 patrol car from the parking lot to the front door of Comfort Suites," and that she was injured by

10 officer Davis during this process.  (Id.)  Plaintiff alleges that defendants Platina, Collins and

11 others prepared a false police report claiming that defendant Yao told Officer Platina that

12 plaintiff had been "praying to a light" and singing in the hotel lobby and was "acting crazy." (Id.

13 ¶ 21.)

14        Later that same night, plaintiff contends that Officer Platina and another officer

15 returned to the Comfort Suites, told the hotel clerk, defendant Yao, to unlock plaintiff's room,

16 and thereafter searched plaintiff's hotel room and her other belongings without a warrant or

17 exigent circumstances.  (Id. ¶ 11.)  Plaintiff contends that the officers also broke into her car

18 trunk to perform a search.  (Id. ¶ 13.) Plaintiff then states that "Rocklin Police Officers Platina

19 and/or Jantz, Davis and/or one or more 'Doe' Defendants 1-20 subsequently beat Plaintiff to the

20 ground and rendered her unconscious, then transported Plaintiff in the back of Platina's patrol car

21 to the Placer County Main Jail in Auburn during the night of November 20, 2007."  (Id. ¶ 14.)

22 Plaintiff also alleges that "Platina sexually assaulted Plaintiff in the back seat of his police

23 vehicle." (Id.)  Plaintiff avers that she was assaulted and injured by a variety of persons

24 including four entities, five individuals, and 80 unnamed Doe defendants with whom she came

25

26      [4]  The parties are familiar with the other allegations in the complaint and they will only
be recited as relevant to the grounds discussed herein.

1  into contact on November 20 and 21, 2007.  (Id. ¶ 16 ("Said Defendants refused to allow Plaintiff

2  to make any telephone calls; refused to give Plaintiff food, water or medical treatment for her

3  personal injuries inflicted by Defendants; interrogated Plaintiff against her consent; laughed at

4  and ignored Plaintiff's multiple requests to call her boy friend [sic], a lawyer and/or a judge; told

5  Plaintiff she was at Guantanamo Bay and that most of Plaintiff's family was dead; rendered

6  Plaintiff unconscious and searched her body, stripped off Plaintiff's socks and two toe rings

7  without her consent; and injected needles and foreign substances into Plaintiff's body without her

8  consent.").

9        Plaintiff alleges that on the night of November 21, 2007, she was transported via

10  ambulance from the Placer County Main Jail to the Sacramento County Mental Health Treatment

11  Center ("SCMHTC").  (Id. ¶ 18.)  Plaintiff alleges that upon her arrival at SCMHTC, she was

12  "beat" in the parking lot by three Doe defendants employed by any of five separate entity

13  defendants.  (Id.)

14        Plaintiff alleges that she was involuntarily confined for eight days at the

15  SCMHTC.  (Id.)  Plaintiff avers that "[a]s a proximate result of the police brutality, medical

16  malpractice, torture and abuse by Platina, Jantz, Davis, Seipert, Hamilton, Bonner, CFMG,

17  AMR, 'Doe' Defendants 1-80 and/or others, Plaintiff sustained severe personal and bodily

18  injuries, including injuries to her head, neck, back, left nipple, both knees, left hip, right

19  shoulder, both wrists, both legs and both feet."  (Id. ¶ 22.)

20        Plaintiff alleges that during her time at the SCMHTC, she was "treated" by the

21  moving defendants.  (Id. ¶¶ 6, 85.)  She alleges that moving defendants "were and are physicians

22  licensed to practice psychiatry" in California.  (Id. ¶ 6.) Plaintiff alleges that moving defendants

23  did not properly advise her of the risks of ingesting medications called Seroquel and Lithobid.

24  (Id. ¶ 6.)  Plaintiff alleges that moving defendants also did not advise her of various rights (i.e.,

25  the right to a hearing, the right to a patient's advocate).  (Id.)

26        More precisely, plaintiff alleges that moving defendant Jackson "treated" her on

5

1 | or about November 25 through 28, 2007, and "prescribed" a medication, Seroquel, "without

2 | plaintiff's consent."   (<u>Id.</u>)  Plaintiff alleges that moving defendant Jackson did not disclose

3 | Seroquel's "adverse side effects" to plaintiff, in violation of a duty of care.  (<u>Id.</u>)

4 | Plaintiff also alleges that, during her time at SCMHTC, moving defendant Fakhri

5 | "treated Plaintiff on or about November 25, 2007," "changed the dosage of Seroquel and

6 | prescribed Lithobid (Lithium)," also without plaintiff's informed consent.  (<u>Id.</u> ¶¶ 6, 54(b).)

7 | Plaintiff alleges that Fakhri, among other defendants, administered injections to plaintiff's body

8 | against her will.  (<u>Id.</u> ¶¶ 30(b), 54(b).)

9 | Plaintiff also alleges that, on July 27, 2008, months after her discharge from

10 | SCMHTC, plaintiff "saw Dr. Fakhri" and called his name, but he ignored her.  (<u>Id.</u> at 6.)

11 | II.   <u>LEGAL STANDARDS</u>

12 | Moving defendants' motion is brought pursuant to Rules 12(b)(1), 12(b)(6), 12(e)

13 | and 12(f) of the Federal Rules of Civil Procedure.

14 | A.  <u>Legal Standard For A Motion to Dismiss Under Rule 12(b)(1)</u>

15 | A motion brought pursuant to Rule 12(b)(1) is a challenge to the court's

16 | jurisdiction over the subject matter of the complaint.  Federal courts are courts of limited

17 | jurisdiction.  <u>Vacek v. UPS</u>, 447 F.3d 1248, 1250 (9th Cir. 2006).  The plaintiff has the burden of

18 | establishing that subject matter jurisdiction is proper.  <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511

19 | U.S. 375, 377 (1994).  "A federal court is presumed to lack jurisdiction in a particular case unless

20 | the contrary affirmatively appears."  <u>A-Z Int'l v. Phillips</u>, 323 F.3d 1141, 1145 (9th Cir. 2003).

21 | B.  <u>Legal Standard For A Motion to Dismiss Under Rule 12(b)(6)</u>

22 | A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

23 | challenges the sufficiency of the pleadings set forth in the complaint.  <u>Vega v. JPMorgan Chase</u>

24 | <u>Bank, N.A.</u>, 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).   Under the "notice pleading" standard

25 | of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

26 | plain statement" of the claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); <u>see also</u>

6

1   Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  The complaint must give a defendant

2   "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v.

3   Twombly, 550 U.S. 544, 555 (2007) (internal quotations and modification omitted).

4           On a motion to dismiss, the court construes the pleading in the light most

5   favorable to the plaintiff and resolves all doubts in the plaintiff's favor.[5]  Corrie v. Caterpiller,

6   503 F.3d 974, 977 (9th Cir. 2007); Parks School of Business, Inc. v. Symington, 51 F.3d 1480,

7   1484 (9th Cir. 1995).  The complaint's factual allegations are accepted as true.  Church of

8   Scientology of Cal. v. Flynn, 744 F.2d 694, 696 (9th Cir. 1984).  In order to survive dismissal for

9   failure to state a claim pursuant to Rule 12(b)(6), however, a complaint must contain more than a

10  "formulaic recitation of the elements of a cause of action;" it must contain factual allegations

11  sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly,

12  550 U.S. 544, 545 (2007).  Factually unsupported claims framed as legal conclusions, and mere

13  recitations of the legal elements of a claim, do not give rise to a cognizable claim for relief.

14  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-51 (2009) (holding that Rule 8 "demands more than an

15  unadorned, the defendant-unlawfully-harmed-me-accusation").

16          Iqbal and Twombly describe a two-step process for evaluation of motions to

17

18          [5] Pro se pleadings are typically held to a less stringent standard than those drafted by
    lawyers.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  "[A] pro se complaint, however
19  inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by
    lawyers."  Erickson v. Parduc, 551 U.S. 89 (2007).  With respect to pleadings by pro se parties,
20  the court must construe such a pleading liberally to determine if it states a claim and, prior to
    dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure
21  them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v. Smith, 203
    F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).  However, during a recent hearing, plaintiff
22  confirmed to the court that she is, in fact, an attorney currently licensed to practice law in
    California.  (E.g., Dkt. No. 117.)  Therefore, it makes little sense to hold the SAC to a "less
23  stringent" standard in this case.  Moreover, plaintiff has not argued that a less stringent standard
    should apply to her.  To date, this court has given plaintiff several opportunities to amend her
24  pleading and otherwise treated her as a typical, non-attorney pro se party (by, for instance,
    permitting her to make arguments in hearings for which she failed to file any written oppositions
25  despite Eastern District Local Rule 230(c)).  Plaintiff has admitted that she is a licensed attorney
    in California.  The undersigned has already informed plaintiff that her pleading will no longer be
26  held to a less stringent, non-attorney standard.  (E.g., Dkt. No. 60.)

dismiss.  The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief."  Iqbal, 129 S. Ct. at 1949-50.[6]

"A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'"  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations.  Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 557).  A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed.

---

[6]   The court may consider certain limited evidence on a motion to dismiss.  In ruling on a motion to dismiss pursuant to Rule 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007) (citation and quotation marks omitted). "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) as amended by 275 F.3d 1187 (9th Cir. 2001); accord Makua v. Gates, Civil No. 09-00369 SOM/LEK, 2009 WL 3923327, at *3 (D. Haw. Nov. 19, 2009) (not reported) (". . . the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint") (citing Sprewell).

1 Iqbal, 129 S. Ct. at 1951-52.  While the plausibility requirement is not akin to a probability

2 requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."

3 Id. at 1949; accord Twombly, 550 U.S. at 556.  This plausibility inquiry is "a context-specific

4 task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

5 at 1950.

6        C.  Legal Standard For A Motion To Strike Under Rule 12(f).

7        Rule 12(f) of the Federal Rules of Civil Procedure states that a district court "may

8 strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or

9 scandalous matter."  Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010)

10 (citing Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds by

11 Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)).  "Rule 12(f) does not authorize a district court to

12 strike a claim for damages on the ground that such damages are precluded as a matter of law."

13 Id. at 971.  Further, courts may not resolve disputed and substantial factual or legal issues in

14 deciding a motion to strike.  Id. at 973.  "The function of a 12(f) motion to strike is to avoid the

15 expenditure of time and money that must arise from litigating spurious issues by dispensing with

16 those issues prior to trial . . . ."  Id.  Granting a motion to strike may be proper if it will make trial

17 less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion

18 of the issues.  Fantasy, 984 F.2d at 1527-28;  Travelers Cas. and Sur. Co. of America v.

19 Dunmore, No. CIV. S-07-2493 LKK-DAD, 2010 WL 5200940, at *3 (E.D. Cal. Dec. 15, 2010)

20 (unpublished) (same).   Motions to strike are generally disfavored, and in determining whether to

21 grant a motion to strike a district court resolves any doubt as to the sufficiency of a defense in the

22 defendant's favor.  E.g., Mag Instrument, Inc. v. JS Prods., Inc., 595 F. Supp. 2d 1102, 1106

23 (C.D. Cal. 2008) (internal citations omitted).

24        D.  Legal Standard For A Motion For A More Definite Statement; Rule 12(e).

25        If a pleading to which a responsive pleading is permitted is so vague or

26 ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party

9

may move for a more definite statement before interposing a responsive pleading.  Fed. R. Civ.

P. 12(e).  A Rule 12(e) motion is proper only if the complaint is so indefinite that the defendant

cannot ascertain the nature of the claim being asserted.  Federal Sav. & Loan Ins. Corp. v.

Musacchio, 695 F. Supp. 1053, 1060 (N.D. Cal. 1988);  Famolare, Inc. v. Edison Bros. Stores,

Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981).  The court must deny the motion if the complaint is

specific enough to apprise defendant of the substance of the claim being asserted.  Bureerong v.

Uyawas, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996).  The court should also deny the motion if the

detail sought by a motion for more definite statement is obtainable through discovery.  Beery v.

Hitachi Home Electronics (America), Inc., 157 F.R.D. 477, 480 (C.D. Cal. 1993); accord Harvey

v. City of Oakland, No. C07-01681 MJJ, 2007 WL 3035529, at *8 (N.D. Cal. Oct. 16, 2007) (not

reported).

III.    DISCUSSION

        A.    Motion to Dismiss

        Moving defendants' MTD seeks relief on numerous grounds (Dkt. No. 73-2), each

of which is addressed in turn below.

        1.    Lack of Subject Matter Jurisdiction

        Moving defendants assert Federal Rule of Civil Procedure 12(b)(1) in efforts to

dismiss the action on grounds that the court lacks federal subject matter jurisdiction *as to them*.

(Dkt. No. 73-2 at 3.)  In an argument virtually absent of case law or other support for its

position,[7] defendants contend that (1) there is no federal question jurisdiction underlying

---

[7] Defendants cite one out-of-circuit case in support of their argument for dismissal for
lack of jurisdiction.  (Dkt. No. 73-2 at 3 (citing Serrano-Moran v. Grau-Gaztambide, 195 F.3d 68,
69-70 (1st Cir. 1999).)  In Serrano-Moran, the claim was brought by the parents of a mentally
impaired individual who was allegedly kidnapped and beaten by four police officers, hospitalized
the next day, and died a few days later, allegedly as a result of beatings and medical malpractice.
Serrano-Moran, 195 F.3d at 69-70.  The appellate court affirmed the district court's finding that
the claims against medical defendants did not share a common nucleus of operative facts with the
claims against police defendants because the facts relevant to the civil rights claim were entirely
separate from the facts relevant to the malpractice claim, and because there was a "temporal

1   plaintiff's claim against them and (2) that there is no basis for supplemental jurisdiction.  (Dkt.

2   No. 73-2 at 3.)  Defendants suggest that their alleged wrongful acts are not part of the same "case

3   or controversy" as the acts alleged to have violated federal law, and thus that no supplemental

4   jurisdiction exists.  (Dkt. No. 73-2 at 3.)  Defendants argue that supplemental jurisdiction does

5   not exist as to them because there is "no common factual nexus" or temporal relationship

6   between the alleged events triggering federal question jurisdiction and the alleged events ascribed

7   to defendants.  (Id.)  Defendants' arguments are not well-taken.

8              In general, the court must exercise supplemental jurisdiction over state-law claims

9   that are part of the "same case or controversy."  28 U.S.C. § 1367(a).  Only a "loose factual

10  connection" to the underlying federal claim is required for supplemental jurisdiction purposes.

11  See e.g. CVPartners Inc. v. Boben, No. C 09-689 SI, 2009 WL 1331108, at *1 (N.D. Cal. May

12  13, 2009) (not reported); Campos v. Western Dental Servs. Inc., 404 F. Supp. 2d 1164, 1168-69

13  (N.D. Cal. 2005) (exercising supplemental jurisdiction where claim and counterclaim were

14  factually and legally distinct but were "offshoots of same basic transaction").)  If this condition is

15  satisfied,[8] the federal court maintains jurisdiction over the state claims and all other parties –

16  even parties not facing an allegation that they violated federal law.  28 U.S.C. § 1367(a); Sea-

17  Land Serv. v. Lozen Int'l, 285 F.3d 808, 814 (9th Cir. 2002) (claims that "rely on identical facts

18  _____

19  break" between the two sets of facts.  (Id.)  The facts of Serrano-Moran are similar to this case
    but are ultimately distinguishable.  While the court in Serrano-Moran found that "whether or not
20  the police violated [the decedent's] civil rights has nothing to do with whether the hospital and
    doctors conformed to the requisite standard of care," that is not the case on the pleaded facts at
21  issue here.  Here, the propriety of the mental health treatments that the moving defendants
    allegedly administered to plaintiff are intertwined with the propriety of plaintiff's arrest,
22  detention, and the reasons plaintiff was transferred to SCMHTC into the care of moving
    defendants.  The facts relevant to plaintiff's federal claims against the police officers are not
23  "entirely separate" from the facts relevant to her claims against the moving defendant physicians.
    See Hensley v. U.S, No. C04-302P, 2006 WL 118248, at *2-3 (W.D. Wash. Jan. 13, 2006) (not
24  reported) (discussing Serrano-Moran, factually distinguishing it, and clarifying that supplemental
    jurisdiction exists unless facts relevant to state claims are "entirely separate" from facts relevant
25  to federal claims, as "a loose factual connection between the claims is generally sufficient").

26      [8]  The court's exercise of supplemental jurisdiction is also subject to certain conditions
    that are inapplicable in this case and were not advanced by defendants.  See 28 U.S.C. 1367(c).

1   for their resolution" are part of the same "case or controversy" for supplemental jurisdiction

2   purposes); Executive Software N. Am., Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal., 24 F.3d

3   1545, 1556 (9th Cir. 1994), overruled on other grounds in Cal. Dept. of Water Res. v. Powerex

4   Corp., 533 F.3d 1087 (9th Cir. 2008); e.g., Ortega v. Brock, 501 F. Supp. 2d 1337, 1340-44

5   (M.D. Ala. 2007) (court had original jurisdiction over defendant officer based on 42 U.S.C. §

6   1983 claim and had supplemental jurisdiction over other defendants based on state-law claims.)

7          Plaintiff's state law claims are related to the federal claims alleged in this action

8   (SAC ¶¶ 8-9) and thereby form part of the same case or controversy.  Here, plaintiff has alleged

9   numerous violations of her rights over seven consecutive days, beginning on November 20, 2007,

10   with the allegedly improper search of her body, hotel room, and vehicle, continuing with her

11   allegedly improper detention and treatment at the Placer County Main Jail, and continuing with

12   her allegedly improper detention and treatment at the SCMHTC allegedly under the care of

13   moving defendants through November 28, 2007.  (Id.  ¶¶ 6, 10, 14.)  Thus, the SAC alleges a

14   temporally-connected chain of events.  Yet moving defendants seek to sever this chain of events

15   at the time plaintiff was placed in the care of defendants at SCMHTC.

16          Artificially severing this pleaded chain of alleged events at the time of plaintiff's

17   admittance into SCMHTC makes little sense, given that the events preceding her admittance are

18   relevant to whether such admittance (and subsequent treatment) was proper.  Those events give

19   context to plaintiff's alleged treatment at SCMHTC.  Given this temporal and logical connection,

20   moving defendants' alleged actions are part of the same "case or controversy" as the acts alleged

21   to have violated federal law—in other words, potential reasons for plaintiff's arrest and detention

22   relate to moving defendants' treatment of plaintiff.  Even if the SAC fails to alleged that the

23   moving defendants violated federal law, the other defendants' alleged violations of federal law

24   ////

25   ////

26   ////

have not been challenged at this posture.[9]  Absent such a showing, this court maintains

jurisdiction over the case and all parties to it, including the moving defendants.  Hence, at the

present time, the invocation of supplemental jurisdiction is appropriate here.  28 U.S.C. §

1367(a).  The motion to dismiss for lack of subject matter jurisdiction is denied.

2.   <u>Failure To State A Claim</u>

The moving defendants request dismissal of seven claims for relief on grounds

that they fail to state a claim under Rule 12(b)(6).  Moving defendants' arguments with respect to

these claims are addressed in turn below.

a.   <u>Plaintiff's Second Claim for Violation of California Civil and<br>Constitutional Rights (Cal. Civ. Code §§ 43, 45, 46, 51 et seq., 1708.)</u>

Plaintiff's second claim cites to a litany of statutes but is largely unsupported by

specific factual assertions regarding the moving defendants.  For the most part, this dart-board

approach to pleading fails to meet the notice requirements of Federal Rule 8.  To the extent that

plaintiff is claiming violation of a specific privacy interest, she was obligated to identify the

nature of the privacy interest that was violated, and *by whom*, so that each defendant has

sufficient notice of the claims against him or her.  <u>See</u> <u>Twombly</u>, 550 U.S. at 557.  Federal

pleading standards require the presentation of factual allegations sufficient to state a plausible

claim for relief as to *each* defendant.  See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.

1998) ("[a] plaintiff must allege facts, not simply conclusions, that show that an individual was

personally involved in the deprivation of civil rights").

Plaintiff brings a melange of purported statutory claims against the moving

defendants.  Plaintiff describes these statutory claims as violations of her "rights guaranteed by

the California Constitution."  (SAC ¶ 30.)  Plaintiff essentially alleges that each and every named

and unnamed defendant participated in a conspiracy to violate plaintiff's civil and constitutional

---

[9]  Moving defendants have not argued that the SAC fails to state a claim invoking at least one federal law as against at least one defendant.

1    rights.  Plaintiff then enumerates some facts underlying her belief that her rights were so violated.

2    Plaintiff frequently lumps all defendants into one category as if they all performed each action

3    together.  (E.g., id. ¶ 85 (summarily listing various defendants, "*including but not limited to*"

4    nine individual and entity defendants, then alleging that "*defendants* . . . inject[ed] Plaintiff's

5    body with needles and foreign substances *at the Main Jail* in Auburn *and/or* in the AMR

6    ambulance *and* at SCMHTC . . . ." and then continuing to list various alleged wrongs without

7    ascribing any of them to specific defendants) (emphasis added).)

8         As the moving defendants point out, plaintiff provides very few non-conclusory

9    facts supporting a basis for *their* potential liability under plaintiff's second claim.  Comparing the

10   second claim for relief as pleaded within plaintiffs' SAC and that same claim as stated within her

11   former pleading demonstrates that, in many instances, rather than using her opportunity to amend

12   the pleading to insert additional *factual* allegations to support her claim, plaintiff instead tacked

13   laundry lists of various defendants onto laundry lists of allegations and bare citations to statutes.

14   (Compare Dkt. No. 4 ¶¶ 26-32 with SAC ¶ 30(a)-(c).)

15        However, when the conclusory allegations are stripped away, the SAC can be read

16   to state certain factual allegations as against moving defendants: namely, that during plaintiff's

17   time at SCMHTC, the moving defendants prescribed medications without her informed consent

18   and that those medications were injected against plaintiff's wishes.  (SAC ¶¶ 6, 54, 54(b), 85.)

19   Although these allegations are almost always directed at moving defendants *and* other

20   defendants, the SAC repeatedly ascribes these alleged events to the moving defendants.  Moving

21   defendants have notice of these alleged facts and whatever claims may arise from them.[10]

22

23        [10]  Where, as here, defendants have fair notice of the nature of the *claim*, the complaint
     need not even allege the legal theory on which recovery is being sought.  Crull v. GEM Ins. Co.,
24   58 F.3d 1386, 1391 (9th Cir. 1995).  A claim is the "aggregate of operative facts which give rise
     to a right enforceable in the courts."  Bautista v. Los Angeles County, 216 F.3d 837, 840 (9th Cir.
25   2000).  It is not necessary, at the pleading stage, that plaintiff break out all of her legal theories
     into separate "causes" of action with precise accompanying facts and law as to each one, for
26   defendants cannot reasonably complain of failing to understand the nature of plaintiff's

i)  California Civil Code § 43

As to California Civil Code § 43 (protection from restraint or bodily harm)[11], moving defendants appear to make a passing argument that California Civil Code § 43 is not a statute "that can form the basis for a self-supporting cause of action . . . .", but they cite no authority supporting that argument.  (MTD at 4-5.)  Absent such authority, the undersigned cannot conclude that California Civil Code § 43 does not create a private right of action warranting the claim's dismissal at the pleading stage.  Moreover, district courts within this circuit have not described violations of California Civil Code § 43 as unable to form the basis of a self-supporting cause of action.  E.g., Davis v. Kissinger, 2009 WL 2043899, No. CIV S-04-0878 GEB DAD P, at *8 (E.D. Cal. July 14, 2009) (not reported) (holding that California Civil Code § 43 "codifies causes of action for assault, battery, and invasion of privacy" and denying summary judgment on state law claims, including those under that section); Atilano v. County of Butte, No. CIV. S-07-0384 FCD KJM, 2008 WL 4078809 , at *6-7 (E.D. Cal. Aug. 28, 2008) (not reported) (granting summary judgment on claim for violation of California Civil Code § 43 because undisputed facts did not show physical harm, *not* describing the statute as unable to form the basis of a cause of action).

With respect to the factual sufficiency of the SAC, plaintiff has pleaded factual allegations supporting a claimed violation of California Civil Code § 43—but only as to moving defendant Fakhri.  As described above, when conclusory allegations are stripped away, the SAC's allegations are that moving defendants "prescribed" medications to her without obtaining

complaint.  See NAACP v. American Family Mut. Ins. Co., 978 F.2d 287, 292 (7th Cir. 1992) (criticizing the practice of utilizing different legal labels in separate counts and stating that "[o]ne set of facts producing injury creates one claim for relief, no matter how many laws are broken").

[11]  "Besides the personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations."  Cal. Civ. Code § 43.

her informed consent (e.g., SAC ¶ 6), *including* an allegation that moving defendant Fakhri himself administered injections against her will.  (Id.; ¶¶ 30(b), 54(b).)  Plaintiff also circuitously alleges that she suffered emotional distress as a result.  (E.g., id. ¶¶ 6, 24, 59-61, 85, Prayer at p. 36.)   The SAC makes substantially the same allegations against moving defendant Jackson, but falls short of alleging that Jackson herself actually performed any injections, restrained her, or threatened her.  (Compare id. ¶ 6, 85, 30(b) with ¶ 64(b) (listing only Fakhri as among defendants who allegedly administered injections to plaintiff).)

Administering an injection against someone's wishes logically involves a physical touching and could potentially constitute the tort of battery or be determined to have caused "bodily harm" under California Civil Code § 43.  To establish a claim of battery under California law, a plaintiff must prove that: (1) the defendant touched the plaintiff with the intent to harm or offend him, (2) the plaintiff did not consent to the touching, and (3) the plaintiff was harmed or offended by defendant's conduct.  Boyd v. City of Oakland, 458 F. Supp. 2d 1015, 1051-52 (N.D. Cal. 2006).

Therefore, while the SAC alleges a bare minimum of facts as against moving defendants, these facts are sufficient to support a claim that moving defendant Fakhri violated California Civil Code § 43 such that the claim survives the pleading stage.  As to moving defendant Jackson, on the other hand, the allegations within the SAC are not sufficient to support a claim that she violated California Civil Code § 43.

Accordingly, as to alleged violations of California Civil Code § 43, moving defendants' motion is granted with respect to Jackson and denied with respect to Fakhri.  As plaintiff has had multiple opportunities to amend her pleading in order to clearly link specific allegations with specific defendants, the undersigned recommends that the claim for violation of California Civil Code § 43 be dismissed with prejudice as against Jackson.

ii)   California Civil Code §§ 45 and 46

As to California Civil Code §§ 45 and 46 (libel, slander), defendants again cite no

1   authority and argue in passing that neither statute can "form the basis of a self-supporting cause

2   of action . . . ." (MTD at 4-5).  As stated above in reference to California Civil Code § 43, absent

3   such authority, the undersigned cannot conclude that these sections do not support a private right

4   of action warranting dismissal at the pleading stage.

5           Defendants also argue that plaintiff has not pleaded factual allegations pertaining

6   to the moving defendants that would support a claim for violation of California Civil Code §§

7   45-46.  (MTD at 5.)  The argument is well-taken.  Plaintiff alleges that moving defendants

8   "prescribed" medications to her without obtaining her informed consent (e.g., SAC ¶ 6) and that

9   Fakhri injected her against her wishes, not facts suggesting that moving defendants *themselves*

10  ever published any statements about her – defamatory or otherwise.  (Id.; ¶ 30(b).)

11          Accordingly, with respect to plaintiff's claims for violations of California Civil

12  Code §§ 45-46, moving defendants' motion to dismiss is granted.  As plaintiff has had multiple

13  opportunities to amend her pleading and has not suggested any ability to amend her pleading to

14  correct these defects, the undersigned recommends that the claim for violation of California Civil

15  Code §§ 45-46 be dismissed with prejudice as against the moving defendants.

16                              iii)  California Civil Code §§ 51 and 51.7

17          As to the sections of the Unruh Act upon which plaintiff purports to base her

18  second claim (Cal. Civ. Code §§ 51 and 51.7), plaintiff has not alleged that moving defendants

19  had knowledge that plaintiff had any alleged protected "characteristic listed or defined in

20  subdivision (b) or (e) of Section 51."  Cal. Civ. Code § 51.7.  Therefore, while plaintiff may

21  plead facts that might possibly support these claims as against *other* defendants (such as her

22  allegation that she was arrested in part due to her religious practices within a hotel) (SAC ¶ 21),

23  she has not alleged facts indicating that *moving defendants* were involved in that arrest or that

24  their alleged conduct toward her was "on account of" such alleged protected characteristic(s).  Id.

25          Accordingly, with respect to plaintiff's claims for violations of California Civil

26  Code §§ 51 and 51.7,  moving defendants' motion to dismiss is granted.  As plaintiff has had

                                              17

1    multiple opportunities to amend her pleading in order to clearly link specific allegations with

2    specific defendants and has not suggested any ability to amend her pleading to remedy these

3    defects, the undersigned recommends that the claim for violation of California Civil Code §§ 51

4    and 51.7 be dismissed with prejudice as against the moving defendants.

5                             iv) California Civil Code §§ 54, 54.1, and 54.3

6                Plaintiff's claims under California Civil Code §§ 54 (equal rights to public

7    facilities), 54.1 (right to full and equal access to public facilities), and 54.3 (denial or interference

8    with admittance to or enjoyment of public facilities) (SAC ¶ 30(c) are unsupported by factual

9    allegations with respect to the moving defendants.   Moreover, these statutes protect the right to

10   equal access to public accommodations by blind and physically disabled persons.   Cal. Civ. Code

11   §§ 54, 54.1, 54.3.   Plaintiff has alleged neither blindness nor physical disability within her SAC.

12   Likewise, she has not alleged that moving defendants played any role in denying her access to

13   any public facilities.

14                Accordingly, with respect to plaintiff's claims for violations of California Civil

15   Code §§ 54, 54.1, and 54.3, moving defendants' motion to dismiss is granted.   As plaintiff has

16   had multiple opportunities to amend her pleading in order to clearly link specific allegations with

17   specific defendants, and because plaintiff has not suggested any ability to amend her pleading to

18   correct these defects, the undersigned recommends that the claim for violation of California Civil

19   Code §§ 54, 54.1, and 54.3 be dismissed with prejudice as against the moving defendants.

20                             v) California Civil Code § 52.1

21                Plaintiff's claim under California Civil Code § 52.1 (interference with exercise of

22   civil rights) (SAC ¶ 30(c) is largely unsupported by factual allegations with respect to the moving

23   defendants.   California Civil Code § 52.1(a)-(b) makes actionable any interference "with the

24   exercise or enjoyment. . . of rights secured by the Constitution or laws of the United States, or of

25   the rights secured by the Constitution or laws of this state" by "threats, intimidation, or

26   coercion."

1    As described above, plaintiff alleges that moving defendants "prescribed"

2    medications to her without obtaining her informed consent, *and* alleges that moving defendant

3    Fakhri (but not Jackson) administered injections against her will.  (Id.; ¶¶ 6, 30(b), 54(b).)  While

4    the SAC alleges a bare minimum of facts as against moving defendants, moving defendants have

5    not cited authorities indicating that, for instance, administering unwanted injections are

6    insufficient to support a claim that moving defendant Fakhri violated California Civil Code §

7    52.1.  Because moving defendants cite no authority to the contrary, the undersigned cannot

8    determine that administering injections without a patient's consent does not amount to "threats,

9    intimidation, or coercion" interfering with plaintiff's rights as a matter of law, such that the claim

10   should be dismissed at the pleading stage.

11   Accordingly, as to moving defendant Fakhri, the allegations within the SAC are

12   sufficient to support a claim that he violated California Civil Code § 52.1 by injecting plaintiff

13   against her wishes.  As to moving defendant Jackson, on the other hand, the allegations within

14   the SAC (i.e., that Jackson prescribed medication without informing plaintiff of adverse side

15   effects (SAC ¶ 6)) are not sufficient to support a claim that she violated California Civil Code §

16   52.1.  Therefore, with respect to the claim for violation of California Civil Code § 52.1, the

17   motion to dismiss is denied as to moving defendant Fakhri and granted as to moving defendant

18   Jackson.  As plaintiff has had multiple opportunities to amend her pleading in order to clearly

19   link specific allegations with specific defendants, and as plaintiff has not suggested any ability to

20   amend her pleading to correct these defects, the undersigned recommends that the claim be

21   dismissed with prejudice as to moving defendant Jackson.

22   vi)  California Civil Code § 1708

23   Plaintiff's claim under California Civil Code § 1708[12] (duty to avoid injuring

24

25   [12] "Every person is bound, without contract, to abstain from injuring the person or
     property of another, or infringing upon any of his or her rights."  Cal. Civ. Code § 1708.

26

1  persons or property) (SAC ¶ 30(d)), does not provide for a private right of action.  Von Grabe v.

2  Sprint PCS, 312 F. Supp. 2d 1285 (S.D. Cal. 2003) (holding that Section 1708 does not create a

3  private right of action); accord Carr v. Allied Waste Systems of Alameda County, No. C 10-0715

4  PJH, 2010 WL 4916433, at *14 (N.D. Cal. Nov. 23, 2010) (not reported).)  Accordingly, the

5  motion to dismiss is granted with respect to this claim.  As amendment would be futile, the

6  undersigned recommends that this claim be dismissed with prejudice as against moving

7  defendants.

8                      b.     Medical Battery Claim

9                             i)     Statute of Limitations

10          Moving defendants argue that the statute of limitations bars any claim for medical

11  battery.  (MTD at 7-8.)  They cite to California Code of Civil Procedure § 340.5 ("Section

12  340.5"), which provides for a one year statute of limitations in actions against medical providers

13  "based upon such person's alleged professional negligence. . . ."  Cal. Code Civ. Proc. § 340.5.

14  Yet a "medical battery" claim does not sound in negligence, but in an intentional act.  Aware of

15  this distinction, moving defendants cite the Central Pathology case and suggest it can be

16  interpreted to bring even intentional tort claims against medical providers within the one-year

17  statute of limitations stated in Section 340.5.  (MTD at 7-8 (citing Central Pathology Serv. Med.

18  Clinic, Inc. v. Superior Court, 3 Cal. 4th 181, 192 (1992).)  This argument is not well-taken.

19          The court in Central Pathology did not examine Section 340.5 or deal with

20  statutes of limitation.  Central Pathology, 3 Cal. 4th at 192.  Instead, the court interpreted *another*

21  statutory section (Cal. Civ. Code § 425.13 (punitive damages)).  Id.  The court construed the

22  phrase "arising out of professional negligence" in *that* statutory section to include intentional

23  torts, so long as the conduct giving rise to such damages is "directly related to the manner in

24  which defendants provided professional services."  Central Pathology, 3 Cal. 4th at 192.  The

25  court's conclusion was shaped by the specific statute in question – Civil Code § 425.13 – and the

26  need to read the section broadly in order to effectuate its purpose of limiting *punitive damages*

1    suits against medical providers.  Id. at 190-93 (recognizing the "Legislature's intent to protect

2    health care providers from unsubstantiated punitive damage claims" and holding that "[t]he clear

3    intent of the Legislature is that any claim for punitive damages in an action against a health care

4    provider be subject to the statute if the injury that is the basis for the claim was caused by

5    conduct that was directly related to the rendition of professional services.")  Therefore, the

6    court's decision in Central Pathology to lump together claims sounding in negligence together

7    with claims sounding in tort is limited to the circumstances of that case.

8            Further, moving defendants have not cited a single case invoking Central

9    Pathology's rationale for statute of limitations purposes in general, let alone using that rationale

10   to treat tort claims akin to negligence claims under Section 340.5 in particular.  Absent more

11   specific direction from the case law, the undersigned cannot find that Central Pathology

12   effectively expands Section 340.5 to shorten the statutes of limitation for intentional tort claims

13   alleged against medical providers.  Accordingly, at this posture the undersigned cannot find that

14   plaintiff's medical battery claim—and other intentional tort claims under state law—are time-

15   barred under Section 340.5 as a matter of law.

16                    ii)      Failure to Plead Facts Supporting Claim

17           A typical "medical battery" case is where "a patient has consented to a particular

18   treatment, but the doctor performs a treatment that goes beyond the consent."  Thomas v.

19   Hickman, No. CV F 06-0215 AWI SMS, 2009 WL 1273190, at *18-19 (E.D. Cal. May 5, 2009)

20   (not reported).  The California Supreme Court has held that a battery and lack of informed

21   consent are two separate causes of action.  Id.  "A claim based on lack of informed

22   consent—which sounds in negligence—arises when the doctor performs a procedure without first

23   adequately disclosing the risks and alternatives.  In contrast, a battery is an intentional tort that

24   occurs when a doctor performs a procedure without obtaining any consent."  Thomas, 2009 WL

25   1273190, at *18-19 (citing Saxena v. Goffney, 159 Cal. App.4th 316, 324 (2008).)

26           Plaintiff's "medical battery" claim is premised on factual allegations that

1    medications Seroquel and Lithobid were prescribed to her without consent, and that she was

2    injected with "needles" containing such medication and "foreign substances" without her

3    consent.  (SAC ¶¶ 54, 85.)  Plaintiff alleges that she suffered emotional distress as a result of

4    receiving medication in this fashion.  (FAC ¶¶ 6, 24, 85, Prayer at p. 36.)

5            Plaintiff also alleges that moving defendants' failed to advise her of a right to a

6    hearing to determine whether she was "gravely disabled," and failed to provide records after

7    plaintiff's discharge.  (SAC ¶¶ 6, 54(b).)  However, plaintiff does not allege facts suggesting that

8    either of moving defendants *themselves* had the duty to hold hearings or provide records, and no

9    allegation that plaintiff asked either defendant to do either.  Regardless, the "hearing" and

10   "failure to provide records" allegations do not support the medical battery claim.

11           Nevertheless, plaintiff's "medical battery" claim meets minimum pleading

12   standards given the factual allegations that moving defendants prescribed and administered

13   medications without "any" informed consent from plaintiff.  See Thomas, 2009 WL 1273190, at

14   *18-19.  Therefore, while plaintiff does not allege that she suffered directly from side effects of

15   the administered drugs, a point advanced by moving defendants, plaintiff does allege that she

16   suffered some form of harm resulting from defendants' alleged conduct.

17                        iii)    Immunity under Section 5278

18           Although plaintiff has pleaded facts sufficient to support a "medical battery"

19   claim against moving defendants, defendants argue that they are fully immunized against the

20   claim by virtue of California Welfare and Institutions Code § 5278 ("Section 5278").  (MTD at

21   10-11.) Plaintiff alleges that most of her contact with moving defendants occurred during a 72-

22   hour hold "pursuant to Welfare and Institutions Code Section 5150."  (E.g., SAC ¶ 6.)

23   According to defendants, because moving defendants' alleged tortious contact (i.e., prescribing

24   medications and administering them without consent) occurred during that 72-hour hold (MTD at

25   2, 5), Section 5278 necessarily applies to render defendants immune to all claims arising from

26   that contact.

22

1      Defendants' argument is premature at this posture.  The undersigned cannot

2  determine, as a matter of law, that plaintiff's detention under Welfare and Institutions Code §

3  5150 was prompted by "probable cause" and thus done "in accordance with the law" as required

4  for immunity to apply pursuant to Section 5278.  Cal. Welf. & Inst. Code §§ 5150, 5278; Bias v.

5  Moynihan, 508 F.3d 1212, 1221-23 (9th Cir. 2007).  The threshold question of whether

6  "probable cause" existed for plaintiff's detention is a question of fact that cannot be resolved *at

7  the pleading stage*.  Defendants did not cite any precedent involving a claim similar to plaintiff's

8  that was dismissed at the pleading stage on grounds that it arose from conduct that was

9  immunized pursuant to Section 5278.  Instead, defendants' cited cases involved dismissal of

10  claims *at the summary judgment stage*, after a determination that "undisputed facts"

11  demonstrated "probable cause" for detention and thus that Section 5278 immunity applied.  E.g.,

12  Bias, 508 F.3d at 1221-23 (granting summary judgment on immunity grounds); Gonzalez v.

13  Paradise Valley Hospital Assn., 111 Cal. App. 4th 735, 742 (2003) (overturning grant of

14  summary judgment on immunity grounds); Heater v. Southwood Psychiatric Center, 42 Cal.

15  App. 4th 1068, 1083 (1996) (after an evidentiary hearing involving three days of testimony, the

16  court found immunity and entered judgment for defendants).  Accordingly, the undersigned

17  cannot find that immunity under Section 5278 acts as an absolute bar to plaintiff's medical

18  battery (and other state law tort claims) against moving defendants at this time.  Therefore, the

19  motion to dismiss is denied with respect to plaintiff's medical battery claim.

20            c.        Intentional Infliction of Emotional Distress ("IIED") Claim

21                      i)        Failure To Plead Facts Supporting Claim

22      Defendants argue that the SAC "factually fails to state a claim" for IIED upon

23  which relief can be granted.  To state a claim for IIED under California law, a plaintiff must

24  satisfactorily allege the following elements: "(1) extreme and outrageous conduct by the

25  defendant with the intention of causing, or reckless disregard of the probability of causing,

26  emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and

23

(3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009) (citations and quotation marks omitted). The California Supreme Court has explained that "outrageous" conduct is that which is so "extreme as to exceed all bounds of that usually tolerated in a civilized community," and that "the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." Id. (citations and quotation marks omitted).

As described above, plaintiff alleges that moving defendants "prescribed" medications "without Plaintiff's consent" (SAC ¶ 6) and administered them without her consent (id.), including via injection with needles. (SAC ¶¶ 6, 85.) Albeit circuitously, plaintiff alleges that she suffered emotional distress as a result of receiving medication in this fashion. (SAC ¶¶ 6, 24, 59-61, 85, Prayer at p. 36.) As described above, plaintiff does not allege that both moving defendants *themselves* injected her against her wishes (although she alleges this as to moving defendant Fakhri), however, she suggests that both moving defendants "prescribed" such injections. (SAC ¶ 30(b).)

Moving defendants focus on the "outrageous conduct" element of an IIED claim. (MTD at 12.) They argue that "the factual basis for plaintiff's claim lies in an alleged lack of advice and information," and that such conduct is not so "outrageous" to as subject them to liability for IIED. (MTD at 12 (citing Berkley v. Dowds, 152 Cal. App. 4th 518, 533 (2007).) Regardless of the plausibility of the events as alleged, the court cannot find, at this time, that the SAC fails to state facts "outrageous" enough to support an IIED claim against moving defendants as a matter of law. If, as alleged, the moving defendants ordered injections into plaintiff's body without proper consent, the court cannot find that this claim is subject to dismissal at the pleading stage on grounds that the alleged conduct is not sufficiently severe or outrageous. "[W]hether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous." Berkley v. Dowds, 152 Cal. App.

1    4th 518, 533-34 (2007).

2                  ii)        Statute of Limitations

3              Defendants argue that the IIED claim in this case is "directly based" on health care

4    services and should therefore be construed as "subject to the one year statute of limitation as set

5    forth by Code of Civil Procedure section 340.5." (MTD at 7, 9.) For the reasons described

6    above in the discussion of plaintiff's medical battery claim, however, the undersigned cannot find

7    that plaintiff's IIED claim is time-barred under Section 340.5 as a matter of law. Accordingly,

8    defendants' motion to dismiss is denied with respect to the IIED claim.

9            d.      Medical Malpractice (Professional Negligence) Claim

10                  i)        Failure To Plead Facts Supporting Claim

11             The elements a plaintiff must prove for a negligence action based on medical

12   malpractice are: "(1) the duty of the professional to use such skill, prudence, and diligence as

13   other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a

14   proximate causal connection between the negligent conduct and the resulting injury; and (4)

15   actual loss or damage resulting from the professional's negligence." Thomas, 2007 WL

16   1273190, at *16-17 (citing Johnson v. Superior Court, 143 Cal. App. 4th 297, 305 (2006);

17   Hanson v. Grode, 76 Cal. App. 4th 601, 606 (1999).)

18             When stripped of conclusory and vague statements, plaintiff's medical

19   malpractice claim boils down to an allegation that the moving defendants, alleged medical

20   professionals with a duty of care, failed to properly advise her about side effects for certain

21   medications, administered them without her consent, and that plaintiff suffered emotional

22   distress as a result. (SAC ¶ 6, 24, 85, Prayer at p. 36.) Specifically, plaintiff alleges that moving

23   defendants "prescribed" medications Seroquel and Lithobid "without Plaintiff's consent" (id. ¶

24   6), and administered them without her consent (id.), including (as to Fakhri) via injection of

25   plaintiff's body with needles. (Id. ¶¶ 6, 30(b), 54(b), 85.) Albeit circuitously, plaintiff alleges

26   that she suffered emotional distress as a result of receiving medication in this fashion. (Id. ¶¶ 6,

1  24, 85, 59-61, Prayer at p. 36.)  Therefore, while she does not allege that she suffered directly

2  from side effects of the administered drugs, plaintiff alleges that she suffered some form of harm

3  resulting from defendants' alleged conduct.  Plaintiff's medical malpractice claim meets minimal

4  pleading requirements and cannot be dismissed at this stage.

5          Further, as described above, the undersigned cannot conclude at this posture that

6  Section 5278 immunizes defendants' alleged medical malpractice or professional negligence,

7  because a factual determination is required regarding whether plaintiff's detention was prompted

8  by "probable cause" and therefore done "in accordance with the law."  E.g., Cal. Welf. & Inst.

9  Code §§ 5150, 5278; Bias, 508 F.3d at 1221-23.  Further, Section 5278 only provides immunity

10  for the exercise of authority to detain and evaluate, not from actions for negligence or other acts

11  or omissions in the evaluation or treatment during 72-hour holds.  Gonzalez v. Paradise Valley

12  Hosp., 111 Cal. App. 4th 735 (2003).

13                    ii)      Statute of Limitations

14          Plaintiff's medical malpractice claim alleges professional negligence by health

15  care providers—the moving defendants—and is therefore subject to the statute of limitations set

16  forth in Section 340.5.  Section 340.5 requires plaintiff to commence her action "three years after

17  the date of the injury or one year after the plaintiff discovers, or through the use of reasonable

18  diligence should have discovered, the injury, *whichever comes first*."  Cal. Civ. Code § 340.5

19  (emphasis added).  Plaintiff alleges that moving defendants treated her "on or about" November

20  25 through November 28, 2007.  (SAC ¶ 6.)  On the pleaded facts, then, plaintiff discovered her

21  alleged injuries at the time they occurred or soon thereafter.  (Id. ¶¶ 6, 59-61, 85.)  Plaintiff does

22  not allege any delay in discovering the physical and emotional distress injuries she alleges

23  resulted from moving defendants' alleged prescription and administration of Seroquel and

24  Lithobid without consent.  Accordingly, without any extensions or tolling, the statute of

25  limitations appears to have run on or about November 25 through November 28, 2008.  (Id. ¶ 6;

26  see Cal. Civ. Code § 340.5.)  Plaintiff filed her complaint on February 20, 2009, well after that

1   date.  (Dkt. No. 1.)

2            However, plaintiff argues that Section 340.5's limitation period was extended for

3   a 90-day period because she served moving defendants with letters giving Notice of Intention to

4   File Suit ("NIFs") (Oppo. at 11), pursuant to California Code of Civil Procedure § 364.  "From

5   the language of section 364(d) it is apparent that the Legislature intended (1) that for a plaintiff

6   who serves notice within the last 90 days of the original limitations period that period is

7   'extended' for a variable period beyond the initial expiration date, not 'tolled' for an automatic

8   90 days, and (2) that the extension be calculated from the date of 'service of the notice,' by its

9   terms a date that varies with each case."  Estrella v. Brandt, 682 F.2d 814, 818 (Cal. 1982).

10  Plaintiff has indicated that she served the NIFs "on August 27, 2008." (Oppo. at 11.)

11           Defendants appear to admit NIFs were served, although they state that such

12  service occurred "on August 26, 2008."  (MTD at 9-10.)  They conclude that such service did not

13  occur "<u>within</u> the last 90 days of the expiration of" the one-year statute of limitations, and

14  therefore that no 90-day extension occurred.  (<u>E.g.</u>, MTD at 9-10, Reply at 3; Cal. Code Civ.

15  Proc. § 364(d) (emphasis added).)[13]  Defendants calculate the "last 90 days before the expiration

16  of" the statute of limitations as August 30, 2008, such that service of any NIFs *prior to* that date

17  would not trigger the 90-day extension provided in Section 364(d).  (MTD at 9-10.)  Defendants

18  argue that the SAC alleges that a NIF was served upon Fakhri "91 days before the limitations

19  period ran," and that a NIF was served upon Jackson "94 days before the limitations period" ran.

20  (MTD at 10, Reply at 3.)

21           However, the actual dates of service of the NIFs are facts that do not appear on the

22

23       [13] "No action based upon the health care provider's professional negligence may be
    commenced unless the defendant has been given at least 90 days' prior notice of the intention to
24  commence the action. [...] If the notice is served within 90 days of the expiration of the
    applicable statute of limitations, the time for the commencement of the action shall be extended
25  90 days from the service of the notice."  Cal. Code Civ. Proc. § 354(a), (d).

26

1    face of the SAC or its attachments, and therefore it is not clear that the NIFs were served upon

2    the moving defendants "within" the "last 90 days" of the statute of limitations.  See Cal. Code

3    Civ. Proc. § 364(d).  While plaintiff alleges that she served NIFs on "August 27, 2008," (Oppo.

4    at 11) and defendants have stated that such service occurred on "August 26, 2008" (MTD at 9-

5    10), the fact of such service does not clearly appear on the face of the SAC or exhibits thereto.

6    Although the FAC appends NIF-related documents as exhibits, it attaches only a NIF addressed

7    to defendant Fakhri (Exh. 5 to SAC) and dated August 25, 2008 with no proof of service for that

8    letter, and two "certified mail receipts" confirming the mailing of some document(s) (not clearly

9    a NIF) upon defendant Jackson on August 27, 2008.[14]  (Exh. 5 to SAC.)  In a nutshell, there is no

10   NIF addressed to Jackson and no proof that Fakhri was ever served with the NIF addressed to

11   him.  (See id.)  Therefore, while the defendants do not dispute that NIFs were served upon them,

12   it is not clear from the face of the pleading (or exhibits appended thereto) *when* such service

13   occurred, let alone whether it definitely occurred "within" the last 90 days of the expiration of the

14   statute of limitations.  (See Cal. Code Civ. Proc. § 364(d).)

15          On a motion to dismiss, all the court has before it is the pleading itself, exhibits

16   attached thereto, and judicially-noticeable documents.  Outdoor Media Group, Inc. v. City of

17   Beaumont, 506 F.3d 895, 899 (9th Cir. 2007).  Although a claim may be dismissed pursuant to

18   Rule 12(b)(6) on the ground that the claim is barred by the applicable statute of limitations, such

19   a dismissal may be had "only when 'the running of the statute is apparent on the face of the

20   complaint.'"  Von Saher v. Norton Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir.

21   2010) (quoting Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006)).  "'[A]

22   complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set

23

24          [14]   At most, the SAC conclusorily alleges that "plaintiff timely served notices of her intent
     to commence litigation for medical malpractice against the Medical Defendants . . . thereby
25   extending the statute of limitations pursuant to California Code of Civil Procedure § 364."  (SAC
     ¶ 89.)  Whether plaintiff did anything in a "timely" manner is a legal conclusion, and therefore
26   that element of the allegation is disregarded here.  See Iqbal, 129 S. Ct. at 1949-50.

1   of facts that would establish the timeliness of the claim.'"  Id. (modification in original) (quoting

2   Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995)); see also Cervantes

3   v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir. 1993) (stating that when a motion to dismiss is

4   based on the running of the statute of limitations, the motion "can be granted only if the

5   assertions of the complaint, read with the required liberality, would not permit the plaintiff to

6   prove that the statute was tolled") (citation and quotation marks omitted); accord E.E.O.C. v.

7   ABM Industries Inc., 249 F.R.D. 588, 591 (E.D. Cal. 2008) (explaining that pleadings "can be

8   dismissed for failure to state a valid claim when a violation of the limitations period is evident

9   from the face of the complaint" and concluding that, "[b]ased on the pleadings filed to date, it is

10  impossible for the Court to ascertain with any degree of certainty whether" claims were time-

11  barred.)

12          Defendants have not requested judicial notice[15] of any NIF-related documents,

13  leaving factual gaps regarding whether NIFs were actually *served* upon moving defendants, let

14  alone whether such service occurred "within" the crucial "last 90 days."  See id.  Plaintiff's

15  representation in her opposition that she effectuated such service on "August 27, 2008" (Oppo. at

16  11) does not remedy this issue, given that the motion before the court is limited to the contents of

17  the SAC and judicially-noticeable facts.  E.g., Outdoor Media Group, 506 F.3d at 899.  Neither

18  plaintiff nor defendants have properly filled the factual gaps that would permit resolution of the

19  issue at the pleading stage.[16]

20          Further, given that the alleged service of the NIFs may have occurred on the eve

21  of the relevant 90-day deadline (i.e., one day before the cutoff in defendant Fakhri's case, and

22  four days before the cutoff in defendant Jackson's case) (MTD at 10, Reply at 3), a confirmation

---

[15]  Defendants have not requested judicial notice of any document confirming the service date of the NIFs, and regardless, it is unlikely that any such document would be suitable for judicial notice.

[16]  However, this issue may be suitable for a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

1    of the actual date(s) of service is necessary prior to dismissal of any of plaintiff's claims, with

2    prejudice, on statute of limitations grounds at the pleading stage.  Therefore, the undersigned

3    cannot resolve the issue of whether service of the NIFs actually occurred "within" 90 days of the

4    expiration of the statute of limitations at this posture.  Defendants' motion to dismiss is denied

5    with respect to plaintiff's medical malpractice (professional negligence) claims.

6                    e.      Negligence Per Se Claim

7                    Just as the undersigned cannot conclude at this posture that plaintiff's medical

8    malpractice (professional negligence) claim is time-barred at this posture, for the same reasons,

9    the undersigned cannot conclude that plaintiff's "negligence per se (violation of statutes)" claim

10   is time-barred.  (MTD at 9.)  The date(s) defendants were served with the NIF(s) is not clear from

11   the face of the SAC, so the application of the 90-day extension (Cal. Code Civ. Proc. § 364(d))

12   cannot be determined at this stage.

13                   Putting aside their statute of limitations argument, moving defendants argue that

14   plaintiff has not alleged facts specific to *them* that would give rise to liability for "negligence per

15   se."  (MTD at 14.)  When plaintiff amended her "negligence per se" claim she did not include

16   any allegations against the moving defendants, and thus moving defendants are implicated only

17   through the paragraph incorporating all foregoing allegations "by reference."  (Id.; SAC ¶ 90.)

18                   In California, negligence per se is "a presumption of negligence [that] arises from

19   the violation of a statute which was enacted to protect a class of persons of which the plaintiff is

20   a member against the type of harm which the plaintiff suffered as a result of the violation of the

21   statute."  People of California v. Kinder Morgan Energy Partners, L.P., 569 F. Supp. 2d 1073,

22   1087 (S.D. Cal. 2008) (citing cases).  Negligence per se "is merely an evidentiary doctrine and

23   not an independent cause of action."  Id. (clarifying that negligence per se is simply a codified

24   evidentiary doctrine that does not establish tort liability).  However, the facts giving rise to a

25   negligence claim—not a violation of the statute or regulation itself—are what entitle a plaintiff to

26   recover civil damages for negligence per se.  Spencer v. DHI Mortg. Co., Ltd., 642 F. Supp. 2d

30

1    115, 1161-62 (E.D. Cal. 2009) ("The negligence per se doctrine assists as evidence to prove

2    negligence. . . .  In such circumstances the plaintiff is not attempting to pursue a private cause of

3    action for violation of the statute; rather, he is pursuing a negligence action and is relying upon

4    the violation of a statute, ordinance, or regulation to establish part of that cause of action."

5    (citations and internal quotation marks omitted).)

6              As described above, plaintiff has pleaded a minimal basis for a medical

7    malpractice claim (professional negligence) claim against moving defendants.  But while the

8    allegations supporting that underlying negligence claim might support civil damages for

9    "negligence per se," "negligence per se" is not an independent cause of action.  See Spencer, 642

10   F. Supp. 2d at 1161-62.

11             Moreover, even if "negligence per se" were an independent cause of action,

12   plaintiff's allegations, that she "was and is one of the class of persons for whose protection the

13   statutes or regulations were adopted" (SAC ¶ 92), and that her alleged injuries at the hands of

14   moving defendants "resulted from occurrences that said statutes and/or regulations were designed

15   to prevent" (id. ¶ 93), are vague and conclusory and do not support a negligence per se "claim."

16   As described above, while plaintiff alleges she was arrested on account of her religious practices,

17   she has not alleged that *moving defendants* played a role in her arrest, that their conduct toward

18   her had anything to do with those religious practices, or that they were even aware of her

19   religious beliefs.

20             Accordingly, the motion to dismiss is granted with respect to plaintiff's

21   negligence per se claim, and the undersigned recommends that this "claim" be dismissed without

22   leave to amend as against moving defendants.

23             f.    False Imprisonment Claim

24             Moving defendants argue that the false imprisonment claim in this case is

25   "directly based" on health care services and should therefore be construed as "subject to the one

26   year statute of limitation as set forth by Code of Civil Procedure section 340.5."  (MTD at 10.)

1   For the reasons described above in the discussion of plaintiff's medical battery claim, however,

2   the undersigned cannot find that plaintiff's false imprisonment claim is time-barred under

3   Section 340.5 as a matter of law.

4   However, defendants also argue in the alternative that plaintiff's false

5   imprisonment claim is time-barred even if it is treated as a "straight" false imprisonment claim

6   and therefore subject to the one-year limitations period set forth in Code of Civil Procedure §

7   340(c) ("Section 340(c)").  (MTD at 10.)  As to the application of Section 340(c), defendants'

8   argument is well-taken.

9   The limitations period on a claim of false imprisonment begins to run when the

10  alleged false imprisonment ends.  Wallace v. Kato, 549 U.S. 384, 387-89 (2007).  As described

11  above, moving defendants' alleged tortious contact (i.e., prescribing medications and

12  administering them without consent) occurred "on or about" November 25 through November

13  28, 2007.  (SAC ¶ 6.)  On the pleaded facts, plaintiff discovered her alleged injuries (i.e.,

14  unwanted injections, medications, and emotional distress therefrom) at the time they occurred or

15  soon thereafter.  (Id. ¶¶ 6, 24, 59-61, 85.)  Plaintiff does not allege any delay in discovering the

16  physical and emotional distress injuries she alleges resulted from unwanted medication and

17  injections.

18  Accordingly, on the face of the SAC, the one-year statute of limitations appears to

19  have run on or about November 25 through November 28, 2008.  (Id. ¶¶ 6, 85.)  Plaintiff filed

20  her complaint on February 20, 2009, well after that period.  (Dkt. No. 1.)  From the face of the

21  SAC, then, plaintiff's false imprisonment claim is time-barred as against moving defendants.

22  Therefore, the motion to dismiss is granted with respect to the false imprisonment claim, and the

23  undersigned recommends that the claim be dismissed with prejudice as to the moving

24  ////

25  ////

26  ////

1   defendants.[17]

2              g.      Conversion Claim

3              A conversion occurs where the defendant wrongfully exercises dominion over the

4   property of another.  Bank of New York v. Fremont General Corp., 523 F.3d 902, 914 (9th Cir.

5   2008).  To establish conversion, a plaintiff must show: (1) her ownership of or right to possess

6   the property at the time of the conversion; (2) that the defendant disposed of the plaintiff's

7   property rights or converted the property by a wrongful act; and (3) damages.  Id. (citing cases).

8              While plaintiff purports to advance her conversion claim against "all defendants,"

9   (SAC ¶¶ 80-81), the SAC is devoid of factual allegations supporting a conversion claim as

10  against moving defendants.  While the SAC alleges an ownership in certain personal property

11  including a flute, purse, luggage, etc. (id. ¶ 82), plaintiff does not allege any further details about

12  what happened to other items of personal property except for conclusions that the items were

13  "seized, damaged, destroyed, lost, converted, and/or stole[n]." (Id. at 82).  While the SAC alleges

14  the facts that officers arresting plaintiff had access to and seized various items of property,

15  plaintiff does not allege that moving defendants were ever remotely near her property.  Indeed,

16  nowhere in the SAC does plaintiff allege facts suggesting that moving defendants themselves

17  ever came into contact with or had access to plaintiff's personal property, let alone facts

18  indicating that moving defendants unlawfully converted or seized that property.

19             On these allegations, it possible that moving defendants—or any one of the over

20  100 defendants—confiscated plaintiff's personal property, but there are no factual allegations

21  nudging the claim into the realm of plausibility as to moving defendants.  See Iqbal, 129 S.Ct. at

22

23             [17]  Unlike plaintiff's negligence claims, her "false imprisonment" claim is not potentially
   tolled by the service of NIFs, and therefore, the unresolved factual issues regarding those NIFs do
24  not prevent the dismissal of the false imprisonment claim.  (Cal. Code Civ. Proc. § 340(c); e.g.
   Noble v. Superior Court, 191 Cal. App. 3d 1189, 1190, 1192 (1987) (where plaintiff alleging
25  negligence and battery by her surgeon and served a NIF upon him, the court dismissed plaintiff's
   battery claim as time-barred and held that the "tolling provisions of [Section 364(d)] apply only
26  to negligence causes of action and not to those based upon intentional torts or other theories as to
   which the limitations period has run.")

1   1952 (where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable

2   to plausible," the complaint may be dismissed.)  At most, these allegations suggest only "a sheer

3   possibility that" moving defendants seized plaintiff's personal property.  See id. at 1949; see

4   Twombly, 550 U.S. at 544.  Accordingly, the motion to dismiss is granted with respect to the

5   conversion claim, and the undersigned recommends that this claim be dismissed without leave to

6   amend.

7              B.      Motion to Strike

8              1.      Allegations that Dr. Fakhri "Abandoned" Plaintiff

9              Moving defendants seek to strike the SAC's allegations that Dr. Fakhri abandoned

10  plaintiff by failing to acknowledge her when plaintiff returned to SCMHTC to obtain copies of

11  medical records on July 27, 2008.  (SAC ¶ 6 (specifically, page 4, lines 17-20).)  Moving

12  defendants argue that the statement that Fakhri "abandoned" plaintiff lacks a factual basis and is

13  impertinent and immaterial under Federal Rule of Civil Procedure 12(f).  (MTS at 15.)

14  "Immaterial" statements are those with "no essential or important relationship to the claim for

15  relief or the defenses" pleaded.  Whittlestone, 681 F.3d at 974.  "Impertinent" statements are

16  statements that "do not pertain, and are not necessary, to the issues in question."  Id.  Under

17  these definitions, moving defendants' argument is well-taken.

18             The SAC fails to allege any factual basis for a continuing doctor-patient

19  relationship following plaintiff's discharge from SCMHTC in November 2007.  Further, an

20  allegation that Fakhri "abandoned" plaintiff is conclusory and does not lend factual support to

21  any of the tort claims plaintiff alleges against Fakhri.  In other words, whether Fakhri

22  "abandoned" or "ignored" plaintiff months after his alleged injections and alleged prescription of

23  medications without informed consent does not bear on the alleged medical battery, assault, or

24  medical malpractice (professional negligence) claims alleged against him.  Accordingly, the

25  allegation that Fakhri "abandoned" plaintiff is both impertinent and immaterial, and page 4, lines

26  17-20, of the SAC are hereby stricken.

1           2.      Claims for Punitive Damages From Moving Defendants

2           The Ninth Circuit Court of Appeals has clarified that "Rule 12(f) does not

3   authorize a district court to strike a claim for damages on the ground that such damages are

4   precluded as a matter of law."  Whittlestone, 618 F.3d at 971.  Here, the MTS argues that

5   punitive damages are unavailable as a matter of law on grounds that plaintiff has not complied

6   with statutory procedural requirements enabling her to properly seek such damages.  (MTS at 16-

7   17 (citing Cal. Code Civ. Proc. § 425.13 (requiring leave of court to seek punitive damages

8   against medical providers); Central Pathology, 3 Cal. 4th at 192 (construing Cal. Code Civ. Proc.

9   § 425.13 as encompassing punitive damages requests arising from claims sounding in negligence

10  *and* in tort).)  Accordingly, the motion to strike appears to run afoul of Rule 12(f)'s limits as

11  described by the court in Whittlestone.  See Whittlestone, 618 F.3d at 971.  However, courts

12  sometimes construe such deficient motions to strike as motions to dismiss and analyze them

13  accordingly, and the undersigned will do so here.[18]

14          Construing the motion to strike "punitive damages" claims against moving

15  defendants as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), moving

16  defendants are correct that California Code of Civil Procedure § 425.13 requires a plaintiff to

17  obtain leave of court before claiming punitive damages against medical providers.  Defendants

18  are also correct that the court in Central Pathology construed the requirements of that section to

19  apply to both negligence *and* tort claims against medical providers.  Central Pathology, 3 Cal. 4th

20  at 192.  Defendants are also correct that a review of the court's docket confirms that plaintiff has

21  not complied with California Code of Civil Procedure § 425.13 and has not obtained leave of

22  court with respect to the punitive damages she seeks from moving defendants.

23  _____

24      [18]  See, e.g., Arrad v. City of Fresno, No. 10-cv-01628 LJO SMS, 2011 WL 284971, at *2
    n. 4 (E.D. Cal. Jan. 26, 2011) (unpublished) (construing defendant's motion to strike punitive
25  damages as a motion to dismiss in light of the holding in Whittlestone); Angel v. Golden Valley
    Transport, LLC, No. 10-cv-890 LJO DLB, 2011 WL 201465, at *2 (E.D. Cal. Jan. 20, 2011)
26  (unpublished) (noting that a motion to strike portions of plaintiff's request for statutory penalties
    is improper and instead construing the motion as a motion to dismiss).

1    However, defendants' arguments overlook the fact that this case is proceeding in

2    federal court and is subject to the Federal Rules of Civil Procedure—not the procedural rules

3    governing actions proceeding in California state courts.  California Code of Civil Procedure §

4    425.13 is a procedural rule that does not necessarily apply in this federal case.

5    Moreover, moving defendants failed to cite to any authorities directly on this

6    point.  E.g., Jackson v. East Bay Hosp., 980 F. Supp. 1341, 1353 (N.D. Cal. 1997) (where

7    plaintiff claimed punitive damages under a federal statute that incorporates state substantive law

8    on determination of damages, the court denied a motion to strike punitive damages claim against

9    medical providers in federal court "[s]ince section 425.13 is a procedural requirement and does

10   not warrant special exception, it is therefore inapplicable"); contra Allen v. Woodford, No.

11   1:05-CV-01104-OWW-LJO, 2006 WL 1748587, at *22 (E.D. Cal. June 26, 2006) (not reported)

12   (granting motion to strike punitive damages and holding that, because Section 425.13 is so

13   "intimately bound up" with the substantive law of the underlying state law claims arising from

14   the rendering of professional medical services, it must be applied by federal courts when

15   addressing the issue of punitive damages against medical providers for state law claims.);

16   Thomas v. Hickman, No. CV F 06-0215 AWI SMS, 2006 WL 2868967, at *38-41 (E.D. Cal.

17   Oct. 6, 2006) (not reported) (holding that "Plaintiff's causes of action for professional

18   negligence, intentional infliction of emotional distress, fraud and misrepresentation are directly

19   related to the manner in which Defendants provided their professional services. These claims

20   arise out of the professional negligence of health care providers.  Plaintiff must petition the court

21   for punitive damages pursuant to Section 425.13 for such relief under her state law claims.")

22   (citing Allen, 2006 WL 1748587 at *20-22; Jackson, 980 F. Supp. at 1352.)

23   Like the claims in Allen and Thomas, in this case plaintiff's punitive damages

24   claims arise from state law claims and are directly related to the manner in which moving

25   defendants provided their professional services.  See Allen, 2006 WL 1748587 at *20-22;

26   Thomas, 2006 WL 2868967, at *40-41.  Therefore, those two cases provide more guidance than

1   the Jackson case, which involved a punitive damages claim under a federal statute incorporating

2   state substantive law regarding damages.  See Thomas, 2006 WL 2868967, at *38-41.

3   Accordingly, plaintiff must petition the court for punitive damages as against moving defendants

4   pursuant to Section 425.13 for such relief under her state law claims.  See Thomas, 2006 WL

5   2868967, at *41.

6            Therefore, the motion to strike plaintiff's punitive damages claims against moving

7   defendants is construed as a motion to dismiss and the motion is granted on this issue.  All of

8   plaintiff's claims and prayers for punitive damages as against the moving defendants are

9   dismissed without prejudice.  If plaintiff wishes to pursue punitive damages from moving

10  defendants Fakhri and Jackson, plaintiff will have 30 days from the date of this order to file

11  documents attempting to make the "substantial probability" showing required under California

12  Code of Civil Procedure § 425.13.

13           3.     Claims for Attorneys' Fees and Costs Under the Federal Civil Rights Act

14           The Federal Civil Rights Act provides for an award of attorney fees for plaintiffs

15  who prevail in actions brought under 42 U.S.C. § 1983 ("Section 1983").  The statutory section

16  permitting such a fee award in any Section 1983 "action or proceeding" is 42 U.S.C. § 1988

17  ("Section 1988").  Because plaintiff has only alleged state law claims as against moving

18  defendants (MTS at 15-16), moving defendants seek to strike plaintiff's claims for attorneys' fees

19  and costs insofar as those requests are "pursuant to 42 U.S.C. § 1983."  (SAC ¶ 31.)  According

20  to moving defendants, plaintiff is not entitled to recover attorney fees or costs from them as a

21  matter of law, because Section 1988 only embraces "violations of the United States Constitution

22  and/or federal law" and "violations of state and/or common law do not support claims for relief

23  under that section."  (MTS at 15-16.)  As discussed above, because the motion seeks to strike a

24  claim for fees and costs on grounds that such fees and costs are unavailable as a matter of law,

25  the motion runs afoul of Rule 12(f)'s limits as described by the court in Whittlestone.  See

26  Whittlestone, 618 F.3d at 971.  However, also as described above, courts sometimes construe

37

1   such deficient motions to strike as motions to dismiss and analyze them accordingly, and the

2   undersigned will do so here.

3           In support of moving defendants' argument that plaintiff cannot invoke the

4   Federal Civil Rights Act to collect attorney fees when only pendant *state law* claims are alleged

5   as against them, moving defendants cite several cases but none are on point for the issue.  (MTS

6   at 16 (citing Snowden v. Hughes, 321 U.S. 1, 11 (1944); Moore v. Kuspar, 465 F.2d 256, 258-59

7   (7th Cir. 1972); and Lecrenski Bros., Inc. v. Johnson, 312 F. Supp. 2d 117, 120-21 (D. Mass.

8   2004).)  At the pages cited, these three cases address a federal court's jurisdiction in Section

9   1983 cases, *not* the availability of attorney fees under Section 1988 for supplemental or pendant

10  state law claims in Section 1983 cases.  Indeed, the word "fees" does appear in any of these

11  cases.

12          Absent authority to the contrary, the undersigned cannot conclude as a matter of

13  law that attorney fees may not be awarded as against moving defendants pursuant to Section

14  1988 in the event plaintiff were successful upon her pendant state law claims against those

15  defendants.  Indeed, some courts have interpreted the Federal Civil Rights Act to provide for an

16  award of attorneys' fees upon successful pendant state law claims even where a federal

17  constitutional claim ultimately fails.  E.g., Maher v. Gagne, 448 U.S. 122, 132 (1980) (clarifying

18  that attorney's fees under Section 1988 are available in cases "in which the plaintiff prevails on a

19  wholly statutory, non-civil rights claim pendent to a substantial constitutional claim"); Milwe v.

20  Cavuoto, 653 F.2d 80, 84 (C.A. Conn. 1981) (holding that attorney fees may be awarded as

21  against a defendant found to have committed the state law tort of assault, a claim pendant to the

22  Section 1983 claim, even though defendant was not found to have committed a violation of

23  federal constitutional law).

24          Moreover, the Ninth Circuit Court of Appeals has held that, when the plaintiff in a

25  civil rights action prevails on a pendent state claim based on a common nucleus of operative fact

26  with a substantial federal claim, fees may be awarded under Section 1988.  Carreras v. City of

1   Anaheim, 768 F.2d 1039, 1050 (9th Cir. 1985) abrogated on other grounds by Los Angeles

2   Alliance for Survival v. City of Los Angeles, 22 Cal. 4th 352 (2000); cf. Mateyko v. Felix, 924

3   F.2d 824, 828-29 (9th Cir. 1990) (denying Section 1988 fees for successful pendant state law

4   claims if plaintiff "loses on his federal claim").

5            While there might be case law supporting moving defendants' argument, they

6   have not provided any to the undersigned.  Absent such authority, the undersigned cannot find

7   that Section 1988 attorney fees can never be awarded as against moving defendants as a matter of

8   law on grounds that no federal claims are alleged as to those defendants.  Accordingly, the

9   motion to strike plaintiff's claims for attorneys's fees and costs is construed as a motion to

10   dismiss, and the motion is denied.

11                C.     Motion for a More Definite Statement

12            Moving defendants seek a more definite statement under Federal Rule of Civil

13   Procedure 12(e) in the event the undersigned does not grant their motion to dismiss in full.

14   (MTD at 17.)  While it contains few non-conclusory, factual allegations relating to the moving

15   defendants, the SAC nonetheless provides moving defendants with adequate notice of the basis

16   for the claims against them.  While the SAC is far from a model of clarity, it does state claims

17   against moving defendants as described above.  The proper avenue for eliciting additional detail

18   is discovery, not a Rule 12(e) motion.  See e.g., Musacchio, 695 F.Supp. at 1060; Famolare, 525

19   F. Supp. at 949; Beery, 157 F.R.D. at 480.  Accordingly, the moving defendants' motion for a

20   more definite statement is denied.

21            For the foregoing reasons, IT IS HEREBY ORDERED that:

22            1.     The motion to dismiss (Dkt. No. 73-2 at 1-14) filed by moving defendants

23   Jackson and Fakhri is granted in part and denied in part.

24                a.     As to the argument that this court lacks subject matter jurisdiction

25   with respect to moving defendants Jackson and Fakhri, the motion is denied.

26                b.     As to alleged claims for violations of California Civil Code § 43,

the motion denied as to Fakhri.

        c.      As to alleged claims for violation of California Civil Code § 52.1, the motion to dismiss is denied as to Fakhri.

        d.      The motion to dismiss the claim for medical battery is denied.

        e.      The motion to dismiss the claim for intentional infliction of emotional distress is denied.

        f.      The motion to dismiss claims for medical malpractice (professional negligence) is denied.

    2.      The motion for a more definite statement (Dkt. No. 73-2 at 17) is denied.

    3.      The motion to strike (Dkt. No. 73-2 at 15-17) is granted in part and denied in part.

        a.      The allegation that Fakhri "abandoned" plaintiff (SAC ¶ 6 (page 4, lines 17-20)) is stricken as impertinent and immaterial.

        b.      The motion to strike punitive damages claims against moving defendants Jackson and Fakhri is construed as a motion to dismiss those claims under Rule 12(b)(6) and such motion to dismiss is granted.  Plaintiff's claims and prayers for punitive damages as against the moving defendants are dismissed without prejudice.  If plaintiff wishes to pursue punitive damages from moving defendants Fakhri and Jackson, she will have 30 days from the date of this order to file documents attempting to make the "substantial probability" showing required under California Code of Civil Procedure § 425.13.

        c.      The motion to strike plaintiff's claims for attorneys's fees and costs as against moving defendants is construed as a motion to dismiss those claims under Rule 12(b)(6) and such motion to dismiss is denied.

    4.      This matter is set for status conference on <u>Thursday, May 19, 2011</u>, at 10:00 a.m., before the undersigned.  The parties are to comply with the local rules regarding the filing of a timely joint status report.

Additionally, IT IS HEREBY RECOMMENDED that:

1.      The motion to dismiss the claim for violation of California Civil Code § 43 be granted as to moving defendant Jackson, and the claim be dismissed with prejudice as against her;

2.      The motion to dismiss claims for violations of California Civil Code §§ 45-46 be granted as to moving defendants Jackson and Fakhri, and the claims be dismissed with prejudice as against them;

3.      The motion to dismiss claims for violations of California Civil Code §§ 51 and 51.7 be granted as to moving defendants Jackson and Fakhri, and the claims be dismissed with prejudice as against them;

4.      The motion to dismiss claims for violations of California Civil Code §§ 54, 54.1, and 54.3 be granted as to moving defendants Jackson and Fakhri, and those claims be dismissed with prejudice as against them;

5.      The motion to dismiss claims for violation of California Civil Code § 52.1 be granted as to moving defendant Jackson, and the claim be dismissed with prejudice as against her;

6.      The motion to dismiss the claim for violation of California Civil Code § 1708 be granted as to moving defendants Jackson and Fakhri, and that the claim be dismissed with prejudice as against them.

7.      The motion to dismiss the "negligence per se" claim be granted as to moving defendants Jackson and Fakhri, and the claim be dismissed with prejudice as against them;

8.      The motion to dismiss the false imprisonment claim be granted as to moving defendants Jackson and Fakhri, and the claim be dismissed with prejudice as against them; and

9.      The motion to dismiss the conversion claim be granted as to moving

41

1  defendants Jackson and Fakhri, and the claim be dismissed with prejudice as against them.

2         These findings and recommendations are submitted to the United States District

3  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

4  days after being served with these findings and recommendations, any party may file written

5  objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

6  Such a document should be captioned "Objections to Magistrate Judge's Findings and

7  Recommendations."  Any response to the objections shall be filed with the court and served on

8  all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

9  Failure to file objections within the specified time may waive the right to appeal the District

10  Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

11  1153, 1156-57 (9th Cir. 1991).

12              **IT IS SO ORDERED AND RECOMMENDED**

13  DATED:  March 30, 2011

15  KENDALL J. NEWMAN
16  UNITED STATES MAGISTRATE JUDGE