1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KATHLYN A. RHODES,

11              Plaintiff,                        No. 2:09-cv-00489 MCE KJN PS

12        vs.

13   PLACER COUNTY, et al.,
                 Defendants.

14                                               ORDER and FINDINGS &
                                                 RECOMMENDATIONS

15   _____ /

16              Presently before this court is a motion to dismiss ("MTD") and motion to strike

17   ("MTS"), and in the alternative, a motion for a more definite statement, filed by defendant

18   American Medical Response ("AMR" or "moving defendant").  (Dkt. Nos. 77-78.)  Plaintiff

19   Kathlyn Rhodes[1] opposed the motions with a written opposition and declaration.  (Oppo., Dkt.

20   Nos. 95-96.)  AMR filed a written reply.  (Reply, Dkt. No. 97.)  The matter was submitted

21   _____

22         [1] This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered
     February 9, 2010.  (Dkt. No. 36.)  Pursuant to the local rules, this matter was assigned to the
23   undersigned because plaintiff did not initially identify to the court the fact that she is an attorney
     licensed in California.  Local Rule 302(c)(21) provides that where a pro se litigant later becomes
24   represented by an attorney, that such an action will be referred back to the district judge. It is not
     clear that this local rule governs the treatment of this action because plaintiff is still acting in pro
25   per.  In the interests of judicial economy, the undersigned will proceed by way of findings and
     recommendations which will then be reviewed by the district judge in this action.

26

                                                 1

1   without oral argument pursuant to Eastern District Local Rule 230(g).  (Dkt. No. 101.)

2          After plaintiff filed her second amended complaint (the "SAC"), three sets of

3   defendants filed motions to dismiss and partially strike the SAC, and those motions are now

4   pending before the court.[2]  The motions filed by other defendants will be addressed in separate

5   orders.  This order addresses only the motions filed by AMR.  (Dkt. No. 77)

6          After careful consideration of the pleadings on file, the record, and the papers

7   filed in support of and in opposition to these motions, and as discussed below, the undersigned

8   recommends that the motion to dismiss be granted in part and denied in part, that the motion to

9   strike be granted in part and denied in part, and that the motion for a more definite statement be

10  denied.

11  I.     BACKGROUND

12         Plaintiff, a licensed attorney[3] appearing in pro se and in forma pauperis, filed this

13  action on February 20, 2009.  (Dkt. No. 1.)  In general, plaintiff complains of alleged violations

14  of her rights based upon events surrounding her arrest and subsequent treatment at a mental

15  health facility.  Following this court's screening of her original complaint under 28 U.S.C. §

16  1915, plaintiff filed a first amended complaint on May 20, 2009.  (Dkt. No. 4.)  Several

17  defendants filed motions to dismiss that complaint.  This court heard oral arguments on the

18  motion to dismiss the first amended complaint on March 25, 2010.  (Dkt. No. 60.)  During that

19  hearing, the undersigned warned plaintiff that, because she was a licensed member of the

20

21         [2]  Defendants County of Sacramento and Dorian Kittrell filed a separate motion to
    dismiss and strike the SAC.  (Dkt. No. 72.)  Defendants Fakhri and Jackson also filed a separate
22  motion to dismiss and partially strike the SAC.  (Dkt. No. 73.)  The remaining defendants filed
    answers to plaintiff's SAC, namely: California Forensic Medical Group, Inc., Elaine Hustedt,
23  Dan Hustedt, Taylor Fithian, M.D. (Dkt. No. 69), Choice Hotels International, Inc., Sac City
    Lodging Partners, LLC, Eva Cooper, Myrna Yao (Dkt. No. 70), City of Rocklin, Susan Davis,
24  Darrell Jantz, Jennifer Collins, Mark Siemens, Carlos Urrutia, Thomas J. Platina (Dkt. No. 74),
    Placer County, Edward N. Bonner, Mike Seipert and Cheryl Hamilton (Dkt. No. 75).
25
           [3]  At several hearings in this action, plaintiff confirmed her status as an active member of
26  the California Bar.  (E.g., Dkt. Nos. 60, 117.)

1   California Bar, she would not continue to receive the leniency typically given to pro se litigants.

2   The undersigned directed plaintiff to very carefully review and amend her pleading to correct the

3   various deficiencies noted in the motions to dismiss, including the need to plead specific factual

4   allegations against each defendant for each claim.  The undersigned gave plaintiff the example of

5   the defamation/slander claim, and informed her that to properly state such a claim, she must:

6   allege the statement(s) made; by whom; and identify who heard those alleged statements.  The

7   undersigned also emphasized that some of the statute of limitations arguments made in the

8   motions to dismiss appeared "well-taken," and cautioned plaintiff that while she would be

9   permitted the opportunity to amend the apparently time-barred claims, she would be held to the

10  standards of an attorney and might therefore face sanctions for continuing to pursue claims that

11  are, in fact, time-barred.  The undersigned warned plaintiff that, as a member of the bar, she

12  would be expected to omit claims that were time-barred unless she could make good faith

13  arguments to the contrary.  Finally, the undersigned instructed plaintiff that with respect to any

14  claims with a claim presentation requirement (i.e., claims requiring compliance with the

15  Government Claims Act), plaintiff would need to plead the dates she presented her claim(s) and

16  attach the notice or claim to her pleading.  (Id.)

17        After the hearing on March 25, 2010, the court dismissed the first amended

18  complaint and gave plaintiff leave to file her SAC.  (Dkt. No. 61.)  The court ordered plaintiff to

19  craft her SAC so as to distinguish between each defendant and his or her alleged actions, to state

20  non-conclusory factual bases for claims, and to specifically set forth the notice provided to

21  defendants for any claims requiring such notice or claim presentation.  (Dkt. Nos. 60, 61 at 2-4.)

22        On April 27, 2010, plaintiff filed her SAC.  (SAC, Dkt. No. 66.)  Plaintiff's SAC

23  sets forth fourteen separate claims for relief stemming from an allegedly improper search and

24  arrest and subsequent confinement in a mental facility following her time as a guest at the

25  Comfort Suites hotel in Rocklin, California.  (Dkt. No. 66.)  The SAC asserts claims against

26

3

1  twenty-three separate defendants.[4]

2         The SAC alleges that on November 20, 2007, three Rocklin police officers

3  surrounded plaintiff in a public parking lot, performed a pat down of her body, interrogated her

4  and ordered her to undergo a field sobriety test. (SAC ¶ 10.) Plaintiff alleges that this interaction

5  occurred across the street from the Comfort Suites hotel in Rocklin, where she had rented Room

6  101. (Id.) Although plaintiff avers that she successfully complied with the police officers'

7  requirements, she nonetheless was "forced to ride in the back of Rocklin Police Officer Davis'

8  patrol car from the parking lot to the front door of Comfort Suites," and that she was injured by

9  officer Davis during this process. (Id.) Plaintiff alleges that defendants Platina, Collins and

10  others prepared a false police report claiming that defendant Yao told Officer Platina that

11  plaintiff had been "praying to a light" and singing in the hotel lobby and was "acting crazy." (Id.

12  ¶ 21.)

13         Later that same night, plaintiff contends that Officer Platina and another officer

14  returned to the Comfort Suites, told the hotel clerk, defendant Yao, to unlock plaintiff's room,

15  and thereafter searched plaintiff's hotel room and her other belongings without a warrant or

16  exigent circumstances. (Id. ¶ 11.) Plaintiff contends that the officers also broke into her car

17  trunk to perform a search. (Id. ¶ 13.) Plaintiff alleges that "Rocklin Police Officers Platina

18  and/or Jantz, Davis and/or one or more 'Doe' Defendants 1-20 subsequently beat Plaintiff to the

19  ground and rendered her unconscious, then transported Plaintiff in the back of Platina's patrol car

20  to the Placer County Main Jail in Auburn during the night of November 20, 2007." (Id. ¶ 14.)

21  Plaintiff also alleges that "Platina sexually assaulted Plaintiff in the back seat of his police

22  vehicle." (Id.)

23         Plaintiff avers that she was assaulted and injured by a variety of persons including

24  multiple entities, multiple individuals, and 80 unnamed Doe defendants with whom she came

25
26         [4] The parties are familiar with the other allegations in the complaint and they will only be
   recited as relevant to the grounds discussed herein.

1  into contact on November 20 and 21, 2007. (Id. ¶ 16 ("Said Defendants refused to allow Plaintiff

2  to make any telephone calls; refused to give Plaintiff food, water or medical treatment for her

3  personal injuries inflicted by Defendants; interrogated Plaintiff against her consent; laughed at

4  and ignored Plaintiff's multiple requests to call her boy friend [sic], a lawyer and/or a judge; told

5  Plaintiff she was at Guantanamo Bay and that most of Plaintiff's family was dead; rendered

6  Plaintiff unconscious and searched her body, stripped off Plaintiff's socks and two toe rings

7  without her consent; and injected needles and foreign substances into Plaintiff's body without her

8  consent."). The list of defendants against whom this list of allegations is targeted includes AMR

9  and "Doe" defendants employed by AMR. (Id.)

10          Plaintiff alleges that on the night of November 21, 2007, she was transported via

11  ambulance from the Placer County Main Jail to the Sacramento County Mental Health Treatment

12  Center ("SCMHTC"). (Id. ¶ 18.) Specifically, plaintiff alleges that various defendants

13          transported themselves on the night of November 21, 2007 (the
        night before Thanksgiving), via ambulance owned and/or operated
14          by Defendant AMR to the Defendant SCMHTC. Plaintiff
        designates "DOES 61 and 62" as two Caucasian females, one the
15          driver and the other the passenger in the front seat of the AMR
        ambulance. Plaintiff also designates "DOES 2, 3, 4, 25, 26, 27, 41-
16          60 and/or 63-80["] as one female and two males who then
        intentionally beat Plaintiff to the ground a third time in the parking
17          lot at SCMHTC, lied to personnel at SCMHTC, filed a false report
        to SCMHTC and caused Plaintiff to be falsely imprisoned and
18          involuntarily confined for eight (8) days at SCMHTC.

19  (Id.) Plaintiff designated Does 61-80 as "employed by or agents of Defendant AMR" (hereinafter

20  the "AMR Does"). (Id. ¶ 5.)

21          Plaintiff alleges that AMR and the AMR Does, among other defendants, "injected

22  syringes into eleven (11) areas on Plaintiff's hands and left inside forearm without a physician's

23  order" and that she suffered emotional distress as a result. (Id. ¶ 46-47.) Plaintiff alleges that

24  AMR and the AMR Does, among other defendants, "inject[ed] Plaintiff's body with needles and

25  foreign substances without Plaintiff's consent," rendered her unconscious, and forced

26  medications upon her, denied her food and water and failed to treat her injuries. (Id. ¶ 54(c).)

5

1   Plaintiff also alleges that AMR and the AMR Does, among other defendants, "inject[ed]

2   Plaintiff's body with needles and foreign substances at the Main Jail in Auburn and/or in the

3   AMR ambulance and at SCMHTC, without Plaintiff's consent, rendering Plaintiff unconscious .

4   . . forc[ed] Plaintiff to ingest medications . . . fail[ed] to give Plaintiff any food or water" and

5   "fail[ed] to treat" her injuries.  (Id. ¶ 85.)

6          Plaintiff also alleges that AMR and the AMR Does, among other defendants,

7   "falsely told plaintiff there had been a national disaster, that some of plaintiff's family members

8   were dead, and that Plaintiff was being transported via ambulance to a 'safe place.'" (Id. ¶ 30(f).)

9   Plaintiff alleges that AMR and the AMR Does—among multiple other named and Doe

10  defendants—"threaten[ed] to bash Plaintiff's head into a wall," and denied her food, water, and

11  medical care.  (Id. ¶ 46.)

12         Plaintiff avers that "[a]s a proximate result of the police brutality, medical

13  malpractice, torture and abuse by Platina, Jantz, Davis, Seipert, Hamilton, Bonner, CFMG,

14  AMR, 'Doe' Defendants 1-80 and/or others, Plaintiff sustained severe personal and bodily

15  injuries, including injuries to her head, neck, back, left nipple, both knees, left hip, right

16  shoulder, both wrists, both legs and both feet."  (Id. ¶ 22.)

17         Plaintiff alleges her "civil and constitutional rights" were violated by customs,

18  policies, and official acts of numerous defendants, including AMR.  (Id. ¶ 27(a).)  Those customs

19  and policies allegedly include a failure to train and supervise employees, resulting in "false

20  imprisonments," among other things.  (Id.)  Plaintiff also alleges that AMR, CFMG, and Placer

21  County had a "custom and practice" of "beating and use of excessive force during the arrest

22  process."  (Id. ¶ 27(c).)

23         Plaintiff alleges that Placer County and AMR "had a contract for ambulance

24  services for arrestees" at the Placer County Main Jail in November, 2007."  (Id. ¶ 27(c).)  This

25  alleged "oral contract" was to "split the fees generated by the arrest process."  (Id.)  Plaintiff also

26  alleges that AMR and the AMR Does, among other named and Doe defendants, "confiscated"

1   various items of plaintiff's personal property.  (Id. ¶¶ 33, 40.)

2   II.     LEGAL STANDARDS

3           AMR's motions are brought pursuant to Rules 12(b)(1), 12(b)(6), 12(e) and 12(f)

4   of the Federal Rules of Civil Procedure.

5           A.  Legal Standard For A Motion to Dismiss Under Rule 12(b)(1)

6           A motion brought pursuant to Rule 12(b)(1) is a challenge to the court's

7   jurisdiction over the subject matter of the complaint.  Federal courts are courts of limited

8   jurisdiction.  Vacek v. UPS, 447 F.3d 1248, 1250 (9th Cir. 2006).  The plaintiff has the burden of

9   establishing that subject matter jurisdiction is proper.  Kokkonen v. Guardian Life Ins. Co., 511

10  U.S. 375, 377 (1994).  "A federal court is presumed to lack jurisdiction in a particular case unless

11  the contrary affirmatively appears."  A-Z Int'l v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003).

12          B.  Legal Standard For A Motion to Dismiss Under Rule 12(b)(6)

13          A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

14  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

15  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).   Under the "notice pleading" standard

16  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

17  plain statement" of the claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also

18  Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  The complaint must give a defendant

19  "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v.

20  Twombly, 550 U.S. 544, 555 (2007) (internal quotations and modification omitted).

21          On a motion to dismiss, the court construes the pleading in the light most

22  favorable to the plaintiff and resolves all doubts in the plaintiff's favor.[5]  Corrie v. Caterpiller,

23

24          [5] Pro se pleadings are typically held to a less stringent standard than those drafted by
    lawyers.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  "[A] pro se complaint, however
25  inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by
    lawyers."  Erickson v. Parduc, 551 U.S. 89 (2007).  With respect to pleadings by pro se parties,
26  the court must construe such a pleading liberally to determine if it states a claim and, prior to

1   503 F.3d 974, 977 (9th Cir. 2007); <u>Parks School of Business, Inc. v. Symington</u>, 51 F.3d 1480,

2   1484 (9th Cir. 1995).  The complaint's factual allegations are accepted as true.  <u>Church of</u>

3   <u>Scientology of Cal. v. Flynn</u>, 744 F.2d 694, 696 (9th Cir. 1984).  In order to survive dismissal for

4   failure to state a claim pursuant to Rule 12(b)(6), however, a complaint must contain more than a

5   "formulaic recitation of the elements of a cause of action;" it must contain factual allegations

6   sufficient to "raise a right to relief above the speculative level."  <u>Bell Atlantic Corp. v. Twombly</u>,

7   550 U.S. 544, 545 (2007).  Factually unsupported claims framed as legal conclusions, and mere

8   recitations of the legal elements of a claim, do not give rise to a cognizable claim for relief.

9   <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949-51 (2009) (holding that Rule 8 "demands more than an

10   unadorned, the defendant-unlawfully-harmed-me-accusation").

11        <u>Iqbal</u> and <u>Twombly</u> describe a two-step process for evaluation of motions to

12   dismiss.  The court first identifies the non-conclusory factual allegations, and the court then

13   determines whether these allegations, taken as true and construed in the light most favorable to

14   the plaintiff, "plausibly give rise to an entitlement to relief."  <u>Iqbal</u>, 129 S. Ct. at 1949-50.[6]

15

16   dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure
     them if it appears at all possible that the complaint can correct the defect.  <u>See</u> <u>Lopez v. Smith</u>, 203
17   F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).  However, during a recent hearing, plaintiff
     confirmed to the court that she is, in fact, an attorney currently licensed to practice law in
18   California.  (<u>E.g.</u>, Dkt. No. 117.)  Therefore, it makes little sense to hold the SAC to a "less
     stringent" standard in this case.  Moreover, plaintiff has not argued that a less stringent standard
19   should apply to her.  To date, this court has given plaintiff several opportunities to amend her
     pleading and otherwise treated her as a typical, non-attorney pro se party (by, for instance,
20   permitting her to make arguments in hearings for which she failed to file any written oppositions
     despite Eastern District Local Rule 230(c)).  Plaintiff has admitted that she is a licensed attorney
21   in California.  The undersigned has already informed plaintiff that her pleading will no longer be
     held to a less stringent, non-attorney standard.  (<u>E.g.</u>, Dkt. No. 60.)
22

23        [6]   The court may consider certain limited evidence on a motion to dismiss.  In ruling on
     a motion to dismiss pursuant to Rule 12(b), the court "may generally consider only allegations
24   contained in the pleadings, exhibits attached to the complaint, and matters properly subject to
     judicial notice."  <u>Outdoor Media Group, Inc. v. City of Beaumont</u>, 506 F.3d 895, 899-900 (9th
25   Cir. 2007) (citation and quotation marks omitted).  "The court need not, however, accept as true
     allegations that contradict matters properly subject to judicial notice or by exhibit."  <u>Sprewell v.</u>
26   <u>Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001) <u>as</u> <u>amended</u> <u>by</u> 275 F.3d 1187 (9th Cir.
     2001); <u>accord</u> <u>Makua v. Gates</u>, Civil No. 09-00369 SOM/LEK, 2009 WL 3923327, at *3 (D.

1    "A complaint may survive a motion to dismiss if, taking all well-pleaded factual

2   allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its

3   face.'" Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010). "'A claim has facial

4   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

5   inference that the defendant is liable for the misconduct alleged.'" Caviness v. Horizon Cmty.

6   Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).

7    "Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood

8   that a pleader will succeed in proving the allegations.  Instead, it refers to whether the

9   non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the

10  reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at

11  1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

12  than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.

13  at 557).  A complaint may fail to show a right to relief either by lacking a cognizable legal theory

14  or by lacking sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police

15  Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Only where a plaintiff has failed to "nudge [his or her]

16  claims across the line from conceivable to plausible," is the complaint properly dismissed.

17  Iqbal, 129 S. Ct. at 1951-52.  While the plausibility requirement is not akin to a probability

18  requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."

19  Id. at 1949; accord Twombly, 550 U.S. at 556.  This plausibility inquiry is "a context-specific

20  task that requires the reviewing court to draw on its judicial experience and common sense." Id.

21  at 1950.

22    C.  Legal Standard For A Motion To Strike Under Rule 12(f).

23    Rule 12(f) of the Federal Rules of Civil Procedure states that a district court "may

24

25  Haw. Nov. 19, 2009) (not reported) (". . . the court need not accept as true allegations that
    contradict matters properly subject to judicial notice or allegations contradicting the exhibits
26  attached to the complaint") (citing Sprewell).

1   strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or

2   scandalous matter." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010)

3   (citing Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds by

4   Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)). "Rule 12(f) does not authorize a district court to

5   strike a claim for damages on the ground that such damages are precluded as a matter of law."

6   Id. at 971. Further, courts may not resolve disputed and substantial factual or legal issues in

7   deciding a motion to strike. Id. at 973. "The function of a 12(f) motion to strike is to avoid the

8   expenditure of time and money that must arise from litigating spurious issues by dispensing with

9   those issues prior to trial . . . ." Id. Granting a motion to strike may be proper if it will make trial

10  less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion

11  of the issues. Fantasy, 984 F.2d at 1527-28; Travelers Cas. and Sur. Co. of America v.

12  Dunmore, No. CIV. S-07-2493 LKK-DAD, 2010 WL 5200940, at *3 (E.D. Cal. Dec. 15, 2010)

13  (unpublished) (same). Motions to strike are generally disfavored, and in determining whether to

14  grant a motion to strike a district court resolves any doubt as to the sufficiency of a defense in the

15  defendant's favor. E.g., Mag Instrument, Inc. v. JS Prods., Inc., 595 F. Supp. 2d 1102, 1106

16  (C.D. Cal. 2008) (internal citations omitted).

17              D. Legal Standard For A Motion For A More Definite Statement; Rule 12(e).

18              If a pleading to which a responsive pleading is permitted is so vague or

19  ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party

20  may move for a more definite statement before interposing a responsive pleading. Fed. R. Civ.

21  P. 12(e). A Rule 12(e) motion is proper only if the complaint is so indefinite that the defendant

22  cannot ascertain the nature of the claim being asserted. Federal Sav. & Loan Ins. Corp. v.

23  Musacchio, 695 F. Supp. 1053, 1060 (N.D. Cal. 1988); Famolare, Inc. v. Edison Bros. Stores,

24  Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981). The court must deny the motion if the complaint is

25  specific enough to apprise defendant of the substance of the claim being asserted. Bureerong v.

26  Uyawas, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996). The court should also deny the motion if the

1   detail sought by a motion for more definite statement is obtainable through discovery.  <u>Beery v.</u>

2   <u>Hitachi Home Electronics (America), Inc.</u>, 157 F.R.D. 477, 480 (C.D. Cal. 1993); <u>accord Harvey</u>

3   <u>v. City of Oakland</u>, No. C07-01681 MJJ, 2007 WL 3035529, at *8 (N.D. Cal. Oct. 16, 2007) (not

4   reported).

5   III.    <u>DISCUSSION</u>

6           A.      <u>Motion to Dismiss</u>

7                   AMR's motion to dismiss seeks relief on two main grounds (Dkt. No. 78): (1)

8   failure to state a claim under Rule 12(b)(6); and (2) lack of jurisdiction under Rule 12(b)(1).

9                   1.      <u>Failure to State a Claim</u>

10                  AMR requests dismissal of thirteen causes of action against it for failure to state a

11  claim.  AMR's arguments with respect to the factual bases for these claims are addressed in turn

12  below.

13                  a.      <u>Statute of Limitations: Intentional Tort Claims Under State Law</u>

14                  The undersigned first addresses AMR's broad argument that all state law claims

15  against it are time-barred.  (MTD at 8-9.)  AMR cites to California Code of Civil Procedure §

16  340.5 ("Section 340.5"), which potentially provides for a one year statute of limitation in actions

17  against medical providers "based upon such person's alleged professional negligence. . . ."  Cal.

18  Code Civ. Proc. § 340.5.  Yet, with the exception of the claim for "medical malpractice," the

19  state law claims alleged against AMR do not sound in negligence, but are alleged intentional

20  torts.  Aware of this distinction, AMR cites the <u>Central Pathology</u> case and suggest that it can be

21  interpreted to bring even intentional tort claims against medical providers within the one-year

22  statute of limitations stated in Section 340.5.  (MTD at 7-8 (citing <u>Central Pathology Serv. Med.</u>

23  <u>Clinic, Inc. v. Superior Court</u>, 3 Cal. 4th 181, 192 (1992).)  This argument is not well-taken.

24                  The court in <u>Central Pathology</u> did not examine Section 340.5 or deal with

25  statutes of limitation.  <u>Central Pathology</u>, 3 Cal. 4th at 192.  Instead, the court interpreted *another*

26  statutory section (Cal. Civ. Code § 425.13 (punitive damages)).  <u>Id.</u>  The court construed the

1    phrase "arising out of professional negligence" in *that* statutory section to include intentional

2    torts, so long as the conduct giving rise to such damages is "directly related to the manner in

3    which defendants provided professional services."  Central Pathology, 3 Cal. 4th at 192.  The

4    court's conclusion was shaped by the specific statute in question—Civil Code § 425.13—and the

5    need to read the section broadly in order to effectuate its purpose of limiting *punitive damages*

6    suits against medical providers.  Id. at 190-93 (recognizing the "Legislature's intent to protect

7    health care providers from unsubstantiated punitive damage claims" and holding that "[t]he clear

8    intent of the Legislature is that any claim for punitive damages in an action against a health care

9    provider be subject to the statute if the injury that is the basis for the claim was caused by

10   conduct that was directly related to the rendition of professional services.")  Therefore, the

11   court's decision in Central Pathology to lump together claims sounding in negligence together

12   with claims sounding in tort is limited to the circumstances of that case.

13           Further, AMR has not cited a single case invoking Central Pathology's rationale

14   for *statute of limitations purposes* in general, let alone using that rationale to treat tort claims

15   akin to negligence claims under Section 340.5 in particular.  Absent more specific direction from

16   the case law, the undersigned cannot find that Central Pathology effectively expands Section

17   340.5 to shorten the statutes of limitation for intentional tort claims alleged against medical

18   providers.  Accordingly, at this posture the undersigned cannot find that plaintiff's state law tort

19   claims are time-barred under Section 340.5 as a matter of law.

20           b.      First Claim for "Violation of Federal Civil and Constitutional Rights"

21                   i)      Claims Under The U.S. Constitution

22           AMR summarily argues that, as a matter of law, it cannot be liable for violations

23   of the U.S. Constitution because it is a "private entity" and not a "state actor."  (MTD at 3.)

24   AMR's argument cites no supporting authority.

25           Normally, private parties, including corporations, are not acting under color of

26   state law, and as such, no cause of action under Section 1983 is available.  Price v. Hawaii,

707-08 (9th Cir. 1991).  Corporations are generally not acting under color of state law and alleged violations of the Constitution by a corporation does not provide a plaintiff with a private cause of action against the corporation.  Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982).  The only way to proceed with an action against a corporation for alleged violations of the Constitution is to show that the corporation's actions were fairly attributable to the federal or state government.  Lugar, 457 U.S. at 936; Mathis v. Pacific Gas and Elec. Co., 75 F.3d 498, 502 (9th Cir. 1996).

However, private entities can be liable for constitutional violations under certain circumstances.  E.g., Fonda v. Gray, 707 F.2d 435, 437-38 (9th Cir. 1983)[7]; Lopez v. Dept. of Health Services, 939 F.2d 881, 883 (9th Cir. 1991) (citing cases and describing the "joint action test" and the "governmental nexus test".)  For instance, in the Lopez case, the Ninth Circuit found that state action was sufficiently alleged by a complaint stating that the defendant hospital was under contract with the State of Arizona to provide medical services to indigents.  Lopez, 939 F.2d at 883.  In the West case, the Supreme Court held that "a private physician under contract with a state to provide medical services to inmates [is] a state actor for purposes of section 1983."  West v. Atkins, 487 U.S. 42, 54 (1988).

AMR does not discuss these authorities or others involving private medical providers under contract with state actors.  AMR does not describe ways that the SAC's allegations might fall short of meeting the circumstances required for a private entity to be treated as a state actor.  Here, the SAC alleges that AMR operated under contract with Placer County, a state actor (SAC ¶ 27(c)), and AMR does not address this allegation or its impact on the issue of AMR's Section 1983 liability.  AMR has not shown that, as a matter of law, AMR cannot be liable for the constitutional violations alleged in the SAC's first claim for relief such

[7]  "Section 1983 actions may be brought to redress constitutional violations effected under color of state law.  A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights."  Fonda, 707 F.2d at 437-38 (collecting cases).

1  that the claim warrants dismissal at this posture.  Accordingly, the motion to dismiss the first

2  claim for violations of the U.S. Constitution is denied.

3               ii)      Claims Under Federal Statutes

4          42 U.S.C. § 1981

5          AMR argues that the "specific function" of 42 U.S.C. § 1981 ("Section 1981") is

6  to protect the "equal right of 'all persons within the jurisdiction of the United States' to 'make

7  and enforce contracts' without respect to race." (MTD at 3-4 (quoting Domino's Pizza, Inc. v.

8  McDonald, 546 U.S. 470, 475 (2006).  AMR argues that plaintiff's Section 1981 claim must

9  identify an impaired "contractual relationship" under which plaintiff has rights.  (Id.)

10         A plain reading of Section 1981 reveals that it applies outside the strict context of

11 "make[ing] and enforce[ing] contracts"—it also protects the right to "sue, be parties, give

12 evidence, and to the full and equal benefit of all laws and proceedings for the security of persons

13 and property as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981.

14         While Section 1981 may be read to embrace other rights aside from "making and

15 enforcing contracts," more central here is the U.S. Supreme Court's clarification that Section

16 1981 protects against discrimination based on race.  See Domino's Pizza, Inc, 546 U.S. at 474-75

17 (holding that Section 1981 protects the equal right of all persons "without respect to race");

18 Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1123 (9th Cir. 2008) (holding that

19 Section 1981 "creates a cause of action only for those discriminated against on account of their

20 race or ethnicity"); White v. Wash. Pub. Power Supply Sys., 692 F.2d 1286, 1290 (9th Cir. 1982)

21 (holding that it is "well settled that section 1981 only redresses discrimination based on

22 plaintiff's race"); Longariello v. Phoenix Union High School Dist., No. CV-09-1606-PHX-LOA,

23 2009 WL 4827014, at *5 (D. Ariz. Dec. 15, 2009) (not reported) (granting motion to dismiss

24 Section 1981 claim because complaint did not allege that the plaintiff was a member of a racial

25 minority).

26         Plaintiff has not alleged that any of the events and injuries described in her SAC

14

1    were the result of her race, nor does she plead her race or ethnicity.  (E.g., SAC ¶ 1.)

2    Accordingly, AMR's motion to dismiss is granted with respect to the claim for violation of 42

3    U.S.C. § 1981.  Because plaintiff has had multiple opportunities to amend her pleading and has

4    never intimated that any of the alleged events were the result of racial discrimination, the

5    undersigned recommends that the claim be dismissed with prejudice as against AMR.

6                                    42 U.S.C. §§ 1985 and 1986

7              AMR summarily argues that, as a matter of law, it cannot be liable for violations

8    of 42 U.S.C. § 1985 ("Section 1985") because the SAC does not allege a "meeting of the minds"

9    between a private entity and state actor.   (MTD at 4 (citing  Fonda v. Gray, 707 F.2d 435, 437-38

10   (C.A. Cal. 1983).)  AMR is correct that, to prove a conspiracy between a private party and the

11   government under Sections 1983 and 1985, the plaintiff must show an agreement or "meeting of

12   the minds" by the defendants to violate her constitutional rights.  Caldeira v. County of Kauai,

13   866 F.2d 1175, 1181 (9th Cir. 1989) (citing Fonda).  AMR is incorrect that "the SAC makes no

14   such allegations as to AMR."

15             After alleging that AMR and other defendants "conspired among themselves" to

16   injure her on account of her "religion, including silent prayer," (SAC ¶ 26(e)), a liberal reading of

17   the SAC suggests that this "conspiracy" was partially expressed in the form of an "oral, illegal

18   contract" between AMR and several other defendants "to split the fees generated by the arrest

19   process."  (SAC ¶ 27(c).)  While these odd allegations may not be sufficient to plead the bases

20   for a conspiracy, AMR has not cited authorities on the issue or attempted to make such a

21   showing.  As noted above, AMR fails to address the impact of allegations that it was operating

22   pursuant to a "contract" with Placer County when plaintiff's injuries allegedly occurred.

23   Accordingly, the undersigned cannot conclude that the Section 1985 claim is deficient as a matter

24   of law warranting dismissal at the pleading stage.  Likewise, because AMR argues only that the

25   claim for violation of 42 U.S.C. § 1986 ("Section 1986") fails because the Section 1985 claim

26   fails (MTD at 4), AMR has not shown that the Section 1986 claim warrants dismissal at this

time.  Therefore, the motion to dismiss is denied with respect to the claims for violation of both sections.

<u>18 U.S.C. § 245</u>

District courts have clarified that "18 U.S.C. § 245 is a criminal statute and does not grant the plaintiff a private right of action." <u>Cooley v. Keisling</u>, 45 F. Supp. 2d 818, 820 (D. Or. 1999); <u>e.g.</u>, <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980).  Accordingly, as to any alleged violation of 18 U.S.C. § 245, the motion to dismiss is granted.  Because amendment would be futile with respect to this claim, the undersigned recommends that the claim for violation of 18 U.S.C. § 245 be dismissed with prejudice against AMR.

        c.    <u>Second Claim for "Violation of California Civil and Constitutional Rights"</u>

        i)    <u>Failure to Plead Supporting Facts</u>

AMR argues that the SAC fails to "set forth a cognizable claim" as to the "litany of constitutional and statutory references" in plaintiff's second claim. The entirety of AMR's argument is that: "First, most of the statutes set forth under this heading cannot form the basis for a private right of action.  Second, none of the facts alleged as to AMR violate any of these provisions."  (MTD at 4.)  AMR cites not a single case or statute in support of these assertions.

Absent citations to authority showing that, as a matter of law, each alleged statutory violation "cannot form the basis for a private right of action," (regardless of AMR's view of what "most of" those statutes provide) the undersigned cannot dismiss any element of plaintiff's second claim.  (<u>Id.</u>)  AMR essentially asks the undersigned to take it at its word that "none of the facts alleged as to AMR violate any of these provisions."  (<u>Id.</u>)  Again, while AMR's arguments might have merit, by writing two sentences on the issue and by failing to cite a single supporting authority, AMR seeks to leave all the heavy lifting to the undersigned.

AMR may argue that by citing a "litany" of statutes in the second claim, the SAC burdens AMR with equally heavy lifting, and this may be true.  However, AMR is seeking dismissal of certain claims at the pleading stage and thus bears the burdens commensurate with

16

1   that request, while plaintiff enjoys more lenient "notice pleading" rules under Federal Rule 8.

2   AMR cannot expect the undersigned to broadly dismiss claims (with or without prejudice) on a

3   two-sentence "argument" without a single citation to supporting authority.

4          Notwithstanding the foregoing, in connection with analyzing the motion to

5   dismiss filed by AMR's co-defendants, Drs. Jackson and Fakhri (Dkt. No. 73), the undersigned

6   has examined several of the alleged statutory violations within the SAC's second claim.  For

7   purposes of judicial economy, the undersigned applies some of those analyses to AMR here.  In

8   the future AMR should avoid hoping that other parties will make arguments on its behalf.

9                          California Civil Code §§ 51 and 51.7

10         As to the sections of the Unruh Act upon which plaintiff purports to base her

11   second claim (Cal. Civ. Code §§ 51 and 51.7), plaintiff has not alleged that AMR had knowledge

12   that plaintiff had any alleged protected "characteristic listed or defined in subdivision (b) or (e) of

13   Section 51."  Cal. Civ. Code § 51.7.  Therefore, while plaintiff pleads facts that might support

14   these claims as against *other* defendants (such as her allegation that she was arrested in part due

15   to her religious practices within a hotel) (SAC ¶ 21), she has not alleged any facts indicating that

16   *AMR* was involved in that arrest or that its alleged conduct toward her was "on account of" such

17   alleged protected characteristics.  Id.

18         Accordingly, with respect to plaintiff's claims for violations of California Civil

19   Code §§ 51 and 51.7, AMR's motion to dismiss is granted.  As plaintiff has had multiple

20   opportunities to amend her pleading in order to clearly link specific allegations with specific

21   defendants, and because plaintiff did not suggest any ability to amend her pleadings to correct

22   any deficiencies regarding the alleged violations of these statutes, the undersigned recommends

23   that the claim for violation of California Civil Code §§ 51 and 51.7 be dismissed with prejudice

24   as against AMR.

25                      California Civil Code §§ 54, 54.1, and 54.3

26         Plaintiff's claims under California Civil Code §§ 54 (equal rights to public

17

1   facilities), 54.1 (right to full and equal access to public facilities), and 54.3 (denial or interference

2   with admittance to or enjoyment of public facilities) (SAC ¶ 30(c), are unsupported by factual

3   allegations with respect to AMR.  These statutes protect the right to equal access to public

4   accommodations by blind and physically disabled persons.  Cal. Civ. Code § 54, 54.1, 54.3.

5   Plaintiff has alleged neither blindness nor physical disability within her SAC.  Likewise, she has

6   not alleged facts suggesting that AMR played any role in denying her access to any public

7   facilities.

8              Accordingly, with respect to plaintiff's claims for violations of California Civil

9   Code §§ 54, 54.1, and 54.3, AMR's motion to dismiss is granted.  As plaintiff has had multiple

10  opportunities to amend her pleading in order to clearly link specific allegations with specific

11  defendants, and because plaintiff did not suggest any ability to amend her pleadings to correct

12  any deficiencies regarding the alleged violations of these statutes, the undersigned recommends

13  that the claim for violation of California Civil Code §§ 54, 54.1, and 54.3 be dismissed with

14  prejudice as against AMR.

15                          California Civil Code § 1708

16             Plaintiff's claim under California Civil Code § 1708[8] (duty to avoid injuring

17  persons or property) (SAC ¶ 30(d)), does not provide for a private right of action.  Von Grabe v.

18  Sprint PCS, 312 F. Supp. 2d 1285 (S.D. Cal. 2003) (holding that Section 1708 does not create a

19  private right of action); accord Carr v. Allied Waste Systems of Alameda County, No. C 10-0715

20  PJH, 2010 WL 4916433, at *14 (N.D. Cal. Nov. 23, 2010) (not reported).)  Accordingly, the

21  motion to dismiss is granted with respect to this claim.  Because amendment would be futile, the

22  undersigned recommends that the claim for violation of California Civil Code § 1708 be

23  dismissed with prejudice as against AMR.

24  _____

25       [8] "Every person is bound, without contract, to abstain from injuring the person or
property of another, or infringing upon any of his or her rights."  Cal. Civ. Code § 1708.

26

1    Remaining Alleged Statutory Violations

2    As to the alleged statutory violations contained within the SAC's second claim for

3    relief but not expressly addressed above, AMR's motion to dismiss the second claim for relief is

4    denied.

5    ii)    Statutory Immunity

6    AMR argues that it "enjoys unqualified statutory immunity for any action taken by

7    an authorized entity in furtherance of a 5150 hold." (MTD at 8 (citing California Welfare &

8    Institutions Code § 5278) (2009) ("Section 5278"); Bias v. Moynihan, 508 F.3d 1212, 1221 (9th

9    Cir. 2007).) AMR argues that, pursuant to this statutory immunity, all state law claims against it

10   (except for medical malpractice) should be dismissed as a matter of law. (Id. (citing Gonzalez v.

11   Paradise Valley Hospital Assn., 111 Cal. App. 4th 735, 742 (2003).) In a nutshell, AMR argues

12   that because some of AMR's alleged tortious contact (i.e., administering injections without

13   consent) occurred during plaintiff's "5150 hold,"[9] Section 5278 necessarily applies to render

14   AMR immune to the state law claims arising from that contact.

15   AMR's argument is premature at this posture. The undersigned cannot determine,

16   as a matter of law, that plaintiff's detention under Welfare and Institutions Code § 5150 was

17   prompted by "probable cause" and thus done "in accordance with the law" as required for

18   immunity to apply pursuant to Section 5278. Cal. Welf. & Inst. Code §§ 5150, 5278; e.g., Bias,

19   508 F.3d at 1221-23. The threshold question of whether "probable cause" existed for plaintiff's

20   detention is a question of fact that cannot be resolved at the pleading stage. AMR did not cite

21   any cases involving a claim similar to plaintiff's that was dismissed *at the pleading stage* on

22   grounds that the alleged conduct was immunized pursuant to Section 5278. Instead, AMR cited

23   cases involving dismissal of claims *at the summary judgment stage*, after a determination that

24   ————————

25   [9] A designated facility may detain a person for up to 72 hours for evaluation and treatment if there is "probable cause to believe that the person is, as a result of mental disorder, a

26   danger to others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5150.

19

1   "undisputed facts" demonstrated "probable cause" for detention and thus that Section 5278

2   immunity applied; none of the decisions resolve this factual issue by way of a motion to dismiss.

3   E.g., Bias, 508 F.3d at 1221-23 (granting summary judgment on immunity grounds); Gonzalez,

4   111 Cal. App. 4th at 742-43 (overturning grant of summary judgment on immunity grounds).

5           Accordingly, the undersigned cannot find that Section 5278 immunity serves as an

6   absolute bar to plaintiff's second claim (and other state law tort claims) against AMR at this

7   time.

8                   d.      Third Claim for "Trespass" (Cal. Civ. Code § 1708)

9                           i)      Failure to Plead Supporting Facts

10          As a preliminary matter, while California Civil Code § 1708 does not create a

11   private right of action (e.g., Von Grabe, 312 F. Supp. 2d 1285), plaintiff may still state a claim

12   for common law trespass if she pleads factual allegations support each element of that claim.

13          A claim for "trespass to chattels" requires an allegation of intentional interference

14   with possession of personal property.  Thrifty-Tel, Inc. v. Bezenek, 46 Cal. App. 4th 1559, 1566-

15   67 (1996); accord eBay, Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058, 1069-70 (N.D. Cal.

16   2000).

17          Plaintiff bases her "trespass to chattels" claim solely upon the allegation that

18   various items of her personal property were allegedly "confiscated" by various defendants,

19   including AMR.  (SAC ¶¶ 37-42.)  While plaintiff details the items of personal property allegedly

20   trespassed upon, she does not plead facts suggesting that AMR ever had access to or came

21   remotely near such property.  Indeed, plaintiff alleges that her items were searched and seized

22   upon her *arrest* at Room 101 of the Comfort Suites hotel in Rocklin—something she does not

23   allege AMR participated in—and then conclusorily alleges that the arresting defendants *and*

24   AMR (and others) "confiscated" her property.  (Id. ¶¶ 32-33, 38-39, 40.)  On these allegations, it

25   is *possible* that AMR—or any one of the over 100 defendants—confiscated plaintiff's personal

26   property, but there are no factual allegations nudging the claim into the realm of plausibility.  See

                                                20

1   Iqbal, 129 S. Ct. at 1952 (where a plaintiff has failed to "nudge [his or her] claims across the line

2   from conceivable to plausible," the claim may be dismissed.)  These allegations suggest only "a

3   sheer possibility that" AMR seized plaintiff's personal property.  See id. at 1949; see Twombly,

4   550 U.S. at 544.  Accordingly, the motion to dismiss is granted with respect to plaintiff's

5   "trespass" claim.  The undersigned recommends that the "trespass" claim be dismissed as against

6   AMR with prejudice.

7              e.       Fourth Claim for "Assault"

8                       i)       Failure to Plead Supporting Facts

9              As to plaintiff's assault claim (and claimed violation of California Civil Code §

10   43 (protection from bodily restraint or harm)[10]), AMR argues that plaintiff has not pleaded facts

11   sufficient to support the claim.[11]  (MTD at 5.)

12              "'A civil action for assault is based upon an invasion of the right of a person to

13   live without being put in fear of personal harm.'"  Thing v. La Chusa, 48 Cal. 3d 644, 649

14   (1989); accord Martinez v. Garza, No. 1:09cv0899 LJO DLB, 2011 WL 23670, at *22 (E.D. Cal.

15   Jan. 4, 2011) (not reported).  "Generally speaking, an assault is a demonstration of an unlawful

16   intent by one person to inflict immediate injury on the person of another then present" and the

17   "tort of assault is complete when the anticipation of harm occurs."  Steel v. City of San Diego,

18   726 F. Supp. 2d 1172, 1189-90 (S.D. Cal. 2010) (citing cases); Martinez, 2011 WL 23670, at *22

19   (same).  While threatening words alone are not sufficient to state a claim for assault, when those

20

21        [10]  "Besides the personal rights mentioned or recognized in the Government Code, every
     person has, subject to the qualifications and restrictions provided by law, the right of protection
22   from bodily restraint or harm, from personal insult, from defamation, and from injury to his
     personal relations."  Cal. Civ. Code § 43.
23
          [11]  District courts within this circuit have described violations of California Civil Code §
24   43 as codifying causes of action for assault and battery.  E.g., Davis v. Kissinger, 2009 WL
     2043899, No. CIV S-04-0878 GEB DAD P, at *8 (E.D. Cal. July 14, 2009) (not reported)
25   (holding that California Civil Code § 43 "codifies causes of action for assault, battery, and
     invasion of privacy" and denying summary judgment on state law claims, including those under
26   that section).

1   words are accompanied by an action demonstrating an intent to carry out the threat, a cause of

2   action for assault may be stated.  Cf. Steel, 726 F. Supp. 2d at 1189-90 (a threatening message,

3   without accompanying act that demonstrated intent to carry out the threat, was insufficient for

4   assault cause of action and motion to dismiss that claim was granted).

5          When conclusory allegations are stripped away, the SAC's relevant allegations are

6   that AMR and its "Doe" employees—among multiple other named and Doe defendants—

7   "threaten[ed] to bash Plaintiff's head into a wall . . . ." (SAC ¶ 46), transported plaintiff from the

8   Auburn jail to SCMHTC and subsequently "beat Plaintiff to the ground . . . in the parking lot at

9   SCMHTC" (SAC ¶ 18), "injected syringes into eleven (11) areas on Plaintiff's hands and left

10  inside forearm without a physician's order" causing her emotional distress (id. ¶ 46-47),

11  "inject[ed] Plaintiff's body with needles and foreign substances without Plaintiff's consent,"

12  rendered her unconscious, and forced medications upon her (id. ¶ 54(c)), and "inject[ed]

13  Plaintiff's body with needles and foreign substances at the Main Jail in Auburn and/or in the

14  AMR ambulance and at SCMHTC, without Plaintiff's consent, rendering Plaintiff unconscious .

15  . . forc[ed] Plaintiff to ingest medications . . . ." (id. ¶ 85).

16         On these facts, the undersigned cannot determine as a matter of law that plaintiff

17  has failed to plead factual allegations supporting the elements of "assault" (as well as a claimed

18  violation of California Civil Code § 43) as to AMR.  Threatening to bash someone's head into a

19  wall and then beating them in a parking lot, as well as administering an injection against

20  someone's wishes could potentially constitute the tort of assault, and/or be determined to have

21  caused "bodily harm" under California Civil Code § 43.  Defendants have not cited any cases

22  indicating otherwise.  Accordingly, while the SAC alleges a bare minimum of facts as against

23  AMR, these facts are sufficient to support a claim that AMR assaulted plaintiff and violated

24  California Civil Code § 43 such that the claim survives the pleading stage.  As to the assault

25  claim and alleged violations of California Civil Code § 43 by AMR, the motion is denied.

26  ////

ii)    <u>Statutory Immunity</u>

As described above, the undersigned cannot determine, as a matter of law, that plaintiff's detention under Welfare and Institutions Code § 5150 was prompted by "probable cause" and thus done "in accordance with the law" as required for immunity to apply pursuant to Section 5278.  Cal. Welf. & Inst. Code §§ 5150, 5278; <u>e.g.</u>, <u>Bias</u>, 508 F.3d at 1221-23. Accordingly, the assault claim cannot be dismissed on the grounds of Section 5278 immunity at this time.

f.    <u>Fifth Claim for "Battery (Police Brutality)"</u>

i)    <u>Failure to Plead Supporting Facts</u>

To establish a claim of battery under California law, a plaintiff must prove that: (1) the defendant touched the plaintiff with the intent to harm or offend him; (2) the plaintiff did not consent to the touching; and (3) the plaintiff was harmed or offended by the defendant's conduct.  <u>Boyd v. City of Oakland</u>, 458 F. Supp. 2d 1015, 1051-52 (N.D. Cal. 2006).

AMR argues that the SAC fails to "unequivocally describe what acts AMR performed to cause harmful and offensive contact with her person." (MTD at 5.) Notwithstanding plaintiff's penchant for directing her claims against long lists of defendants, it is nonetheless possible to cobble together a cognizant set of factual allegations pertaining to AMR. The fact that AMR is typically listed with other defendants in various claims does not necessarily mean that the complaint fails to allege actions that, in context, AMR employees could have plausibly performed—such as administering unwanted injections during an ambulance ride.

As described above, when conclusory allegations are stripped away, the SAC's relevant allegations are that AMR and its "Doe" employees—among multiple other named and Doe defendants—"threaten[ed] to bash Plaintiff's head into a wall . . . ." (SAC ¶ 46), transported plaintiff from the Auburn jail to SCMHTC and subsequently "beat Plaintiff to the ground . . . in the parking lot at SCMHTC" (<u>id.</u> ¶ 18), "injected syringes into eleven (11) areas on Plaintiff's hands and left inside forearm without a physician's order" causing her emotional distress (<u>id.</u> ¶

23

1   46-47), "inject[ed] Plaintiff's body with needles and foreign substances without Plaintiff's

2   consent," rendered her unconscious, and forced medications upon her (id. ¶ 54(c)), and

3   "inject[ed] Plaintiff's body with needles and foreign substances at the Main Jail in Auburn and/or

4   in the AMR ambulance and at SCMHTC, without Plaintiff's consent, rendering Plaintiff

5   unconscious . . . forc[ed] Plaintiff to ingest medications . . . ." (id. ¶ 85).

6          On these facts, the undersigned cannot determine as a matter of law that plaintiff

7   has failed to plead factual allegations supporting the elements of "battery" (as well as a claimed

8   violation of California Civil Code § 43) as to AMR.  Taking these allegations as true, if AMR

9   employees beat plaintiff in the SCMHTC parking lot after riding in the AMR ambulance, or

10  administered injection(s) and medication against plaintiff's wishes, these "facts" could

11  potentially constitute the tort of battery and/or be determined to have caused "bodily harm" under

12  California Civil Code § 43.  AMR has not cited any cases indicating otherwise.  The pleaded

13  facts are sufficient to support a claim that AMR employees battered plaintiff and violated

14  California Civil Code § 43 such that the claim survives the pleading stage.  Accordingly, as to the

15  battery claim and claim for violation of California Civil Code § 43, the motion is denied.

16                 ii)    Statutory Immunity

17         As described above, the undersigned cannot determine as a matter of law that

18  plaintiff's detention under Welfare and Institutions Code § 5150 was prompted by "probable

19  cause" and thus done "in accordance with the law" as required for Section 5278 immunity to

20  apply.  Cal. Welf. & Inst. Code §§ 5150, 5278; e.g., Bias, 508 F.3d at 1221-23.  Accordingly, the

21  battery claim cannot be dismissed on grounds of Section 5278 immunity at this time.

22         g.     Sixth Claim for "Medical Battery"

23                 i)    Failure to Plead Supporting Facts

24         A typical "medical battery" case is where "a patient has consented to a particular

25  treatment, but the doctor performs a treatment that goes beyond the consent."  Thomas v.

26  Hickman, No. CV F 06-0215 AWI SMS, 2009 WL 1273190, at *18-19 (E.D. Cal. May 5, 2009)

1   (not reported).  The California Supreme Court has held that a battery and lack of informed

2   consent are two separate causes of action.  Id.  "A claim based on lack of informed

3   consent—which sounds in negligence—arises when the doctor performs a procedure without first

4   adequately disclosing the risks and alternatives.  In contrast, a battery is an intentional tort that

5   occurs when a doctor performs a procedure without obtaining any consent."  Thomas, 2009 WL

6   1273190, at *18-19 (citing Saxena v. Goffney, 159 Cal. App.4th 316, 324 (2008).)

7           AMR is correct that "geographic and temporal reality make it impossible for

8   AMR to have participated in every act complained of," (MTD at 6 (citing Magluta v. Samples,

9   156 F.3d 1282, 1284 (11th Cir. 2001)), but again notwithstanding plaintiff's penchant for

10  directing her claims against long lists of defendants, it is nonetheless possible to cobble together

11  a cognizant set of factual allegations pertaining to AMR.  When the conclusory allegations are

12  stripped away, Plaintiff's "medical battery" claim is premised on the factual allegations that

13  during the AMR ambulance ride from the Auburn jail to SCMHTC, plaintiff was injected

14  —without her consent—with needles containing unwanted medication and foreign substances.

15  (SAC ¶¶ 18, 46-47, 54(c), 85.)

16          The SAC's relevant allegations are that AMR and its "Doe" employees—among

17  multiple other named and Doe defendants—injected syringes into eleven (11) areas on Plaintiff's

18  hands and left inside forearm without a physician's order" causing her emotional distress (id. ¶

19  46-47), "inject[ed] Plaintiff's body with needles and foreign substances without Plaintiff's

20  consent," rendered her unconscious, and forced medications upon her (id. ¶ 54(c)), and

21  "inject[ed] Plaintiff's body with needles and foreign substances at the Main Jail in Auburn and/or

22  in the AMR ambulance and at SCMHTC, without Plaintiff's consent, rendering Plaintiff

23  unconscious . . . forc[ed] Plaintiff to ingest medications . . . ." (id. ¶ 85).  Plaintiff also alleges

24  that she suffered emotional distress as a result of receiving medication in this fashion.  (FAC ¶¶

25  24, 85, Prayer at p. 36.)

26          Plaintiff's "medical battery" claim meets minimum pleading standards given the

1  factual allegation that AMR personnel administered medications via injections without "any"

2  informed consent from plaintiff.  See Thomas, 2009 WL 1273190, at *18-19.  Accordingly, the

3  motion to dismiss the claim for medical battery is denied.

4                          ii)      Statutory Immunity

5              As described above, the undersigned cannot determine, as a matter of law, that

6  plaintiff's detention under Welfare and Institutions Code § 5150 was prompted by "probable

7  cause" and thus done "in accordance with the law" as required for Section 5278 immunity to

8  apply.  Cal. Welf. & Inst. Code §§ 5150, 5278; e.g., Bias, 508 F.3d at 1221-23.  Accordingly, the

9  medical battery claim cannot be dismissed on grounds of Section 5278 immunity at this time.

10 The motion to dismiss the claim for medical battery is denied.

11         h.      Seventh Claim for "Intentional Infliction of Emotional Distress" ("IIED")

12                      i)      Failure to Plead Supporting Facts

13             To state a claim for IIED under California law, a plaintiff must satisfactorily

14 allege the following elements: "(1) extreme and outrageous conduct by the defendant with the

15 intention of causing, or reckless disregard of the probability of causing, emotional distress; (2)

16 the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate

17 causation of the emotional distress by the defendant's outrageous conduct."  Hughes v. Pair, 46

18 Cal. 4th 1035, 1050 (2009) (citations and quotation marks omitted).  The California Supreme

19 Court has explained that "outrageous" conduct is that which is so "extreme as to exceed all

20 bounds of that usually tolerated in a civilized community," and that "the defendant's conduct

21 must be intended to inflict injury or engaged in with the realization that injury will result."  Id.

22 (citations and quotation marks omitted).

23             AMR focuses solely on the "outrageous conduct" element of an IIED claim.

24 (MTD at 6.)  AMR argues that "transportation of [plaintiff] from the Placer County Main Jail to

25 SCMHTC cannot qualify" as "conduct so extreme as to exceed all bounds of that usually

26 tolerated in a civilized society."  (MTD at 6 (citing Hughes, 46 Cal. 4th at 1050-51).)  If the SAC

had only alleged the bare fact that AMR "transported" plaintiff somewhere, this argument would

be correct.  However, when conclusory allegations are stripped away, the SAC's relevant

allegations are that AMR and AMR Does, among other defendants, "falsely told Plaintiff there

had been a national disaster," and "that some of Plaintiff's family members were dead . . . ."

(SAC ¶ 30(f).)  Plaintiff also alleges that AMR and AMR Does, among other defendants, "told

Plaintiff she was at Guantanamo Bay and that most of Plaintiff's family was dead."  (SAC ¶ 16.)

Further, as described above, AMR and its "Doe" employees—among multiple other named and

Doe defendants—allegedly "threaten[ed] to bash Plaintiff's head into a wall . . . ." (SAC ¶ 46),

transported plaintiff from the Auburn jail to SCMHTC and subsequently "beat Plaintiff to the

ground . . . in the parking lot at SCMHTC" (SAC ¶ 18), "injected syringes into eleven (11) areas

on Plaintiff's hands and left inside forearm without a physician's order" causing emotional

distress (id. ¶ 46-47), "inject[ed] Plaintiff's body with needles and foreign substances without

Plaintiff's consent," rendered her unconscious, and forced medications upon her (id. ¶ 54(c)), and

"inject[ed] Plaintiff's body with needles and foreign substances at the Main Jail in Auburn and/or

in the AMR ambulance and at SCMHTC, without Plaintiff's consent, rendering Plaintiff

unconscious . . . forc[ed] Plaintiff to ingest medications . . . ." (id. ¶ 85).  Albeit circuitously,

plaintiff alleges that she suffered emotional distress as a result.  (SAC ¶¶ 24, 59-61, 85, Prayer at

pp. 36.)

        Notwithstanding plaintiff's penchant for directing her claims against long lists of

defendants, as noted above it is nonetheless possible to cobble together a cognizant set of factual

allegations pertaining to AMR and those facts, if true, could support a claim that meets the

"outrageous" conduct element of an IIED claim.  If, as alleged, AMR administered injections into

plaintiff's body without proper consent, the court cannot find that this claim is subject to

dismissal at the pleading stage on grounds that the alleged conduct is not sufficiently severe or

outrageous.  The same is true for the allegations that AMR or AMR Does made statements

suggesting plaintiff was "at Guantanamo Bay" or that plaintiff's family members were dead.

1   "[W]hether a defendant's conduct can reasonably be found to be outrageous is a question of law

2   that must initially be determined by the court; if reasonable persons may differ, it is for the jury

3   to determine whether the conduct was, in fact, outrageous." Berkley v. Dowds, 152 Cal. App.

4   4th 518, 533-34 (2007).  Accordingly, the undersigned cannot conclude at this time that the SAC

5   fails to state an IIED claim as against AMR, and the motion to dismiss that claim is denied.

6                                   ii)      Statutory Immunity

7                As described above, the undersigned cannot determine as a matter of law that

8   plaintiff's detention under Welfare and Institutions Code § 5150 was prompted by "probable

9   cause" and thus done "in accordance with the law" as required for Section 5278 immunity to

10  apply.  Cal. Welf. & Inst. Code §§ 5150, 5278; e.g., Bias, 508 F.3d at 1221-23.  Accordingly, the

11  IIED claim cannot be dismissed on the grounds of Section 5278 immunity at this time, and the

12  motion to dismiss is denied.

13               i.     Eighth and Ninth Claims For "False Arrest" and "False Imprisonment"

14                                   i)      Failure to Plead Supporting Facts

15               AMR argues that "false arrest" and "false imprisonment" are not separate torts

16  (MTD at 6) and the undersigned therefore addresses both claims as "false imprisonment." Collins

17  v. City and County of San Francisco, 50 Cal. App. 3d 671, 673 (1975); accord Pankey v. City of

18  Concord, No. C-06-03737 JCS, 2007 WL 2253401 at *8-9 n.4 (N.D. Cal. Aug. 2, 2007) (not

19  reported).

20               On the pleaded facts, plaintiff alleges that she was deprived of her freedom during

21  the ambulance ride from the Auburn jail to SCMHTC.  (E.g., SAC ¶ 18.)  AMR argues that,

22  because plaintiff was already in "police custody and already deprived of her liberty by other

23  defendants prior to and throughout her contact with AMR," AMR cannot be liable for false

24  imprisonment as a matter of law.  (MTD at 6.)  As AMR succinctly puts it, plaintiff "alleges to

25  have been a prisoner of the state, not AMR, throughout her only contact with AMR."  (Id.)

26  These arguments may be meritorious.  Unfortunately, AMR again fails to cite a single supporting

                                              28

1   authority for either argument.  Absent authority suggesting that an individual in police custody at

2   the time he or she is transported from one point to another cannot state a false imprisonment

3   claim against the entity doing the transporting as a matter of law, the undersigned cannot dismiss

4   the claim at this posture.

5                          ii)      Statutory Immunity

6           As described above, the undersigned cannot determine, as a matter of law, that

7   plaintiff's detention under Welfare and Institutions Code § 5150 was prompted by "probable

8   cause" and thus done "in accordance with the law" as required for immunity to apply pursuant to

9   Section 5278.  Cal. Welf. & Inst. Code §§ 5150, 5278; e.g., Bias, 508 F.3d at 1221-23.

10  Accordingly, the false imprisonment and false arrest claims cannot be dismissed on grounds of

11  Section 5278 immunity at this time.

12                         iii)     Statute of Limitations

13          AMR argues that the false imprisonment claim in this case is "directly based" on

14  health care services and should therefore be construed as "subject to the one year statute of

15  limitation as set forth by Code of Civil Procedure section 340.5." (MTD at 10.)  For the reasons

16  described above, however, the undersigned cannot find that plaintiff's false imprisonment/false

17  arrest claims are time-barred under Section 340.5 as a matter of law.

18          However, AMR also argues in the alternative that plaintiff's false imprisonment

19  claim is time-barred even if treated as a "straight" false imprisonment claim and therefore subject

20  to the one-year limitations period set forth in Code of Civil Procedure § 340(c) ("Section

21  340(c)").  (MTD at 10.)  As to the application of Section 340(c), defendants' argument is well-

22  taken.[12]

23          The limitations period on a claim of false imprisonment begins to run when the

24  alleged false imprisonment ends.  Wallace v. Kato, 549 U.S. 384, 387-89 (2007).  As described

25

26          [12] "An action for libel, slander, false imprisonment" has a statute of limitations of "one
        year."  Cal. Code. Civ. Proc. § 340(c).

                                            29

1    above, AMR's alleged tortious conduct occurred "on or about" November 21, 2007—and the

2    alleged false imprisonment by AMR necessarily ended when plaintiff was checked into

3    SCMHTC.  (SAC ¶ 18.)  The pleaded facts suggest that plaintiff discovered her alleged injuries

4    (i.e., unwanted injections, medications, being "beat" in the SCMHTC parking lot, and emotional

5    distress therefrom) at the time they occurred or soon thereafter.  At the very least, plaintiff does

6    not allege any delay in discovering the physical and emotional distress injuries she alleges

7    resulted from AMR's conduct.

8            Accordingly, on the face of the SAC, the one-year statute of limitations appears to

9    have run on or about November 21, 2008.  (Id. ¶ 18.)  Plaintiff filed her complaint on February

10   20, 2009, well after that period.  (Dkt. No. 1.)  From the face of the SAC, then, plaintiff's false

11   imprisonment/false arrest claims are time-barred as against AMR.[13]  Therefore, the motion to

12   dismiss is granted with respect to the false imprisonment and false arrest claims, and because

13   plaintiff has not suggested any ability to amend the claims to correct the deficiency, the

14   undersigned recommends that these claims be dismissed with prejudice as to AMR on the

15   grounds that they are time-barred.

16           j.      Tenth Claim for "Defamation and Slander"

17                   i)      Failure to Plead Supporting Facts

18           Under California law, the elements of defamation are: (a) a publication that is (b)

19   false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that

20   causes special damage.  Lee Myles Associates Corp. v. Paul Rubke Enterprises, Inc., 557 F.

21   Supp. 2d 1134, 1139 (S.D. Cal. 2008).

22

23           [13]  Unlike plaintiff's negligence claims against medical providers, her "false
     imprisonment" claim is not potentially tolled by the service of Notices of Intent to File suit
24   ("NIFs").  (Cal. Code Civ. Proc. § 340(c); e.g. Noble v. Superior Court, 191 Cal. App. 3d 1189,
     1190, 1192 (1987) (where plaintiff is alleging negligence and battery by her surgeon and served a
25   NIF upon him, the court dismissed plaintiff's battery claim as time-barred and held that the
     "tolling provisions of [Section 364(d)] apply only to negligence causes of action and not to those
26   based upon intentional torts or other theories as to which the limitations period has run.")

                                                    30

1    AMR argues that the allegedly defamatory statements within the SAC are

2 "hyperbole" that cannot form the basis for a claim for defamation. (MTD at 7.) The argument is

3 well-taken. Plaintiff alleges that AMR (and/or other defendants) called plaintiff a "crazy flute

4 player" and "mental." (SAC ¶ 78.) Statements of hyperbole that cannot be interpreted as stating

5 actual facts will not amount to defamation. Lieberman v. Fieger, 338 F.3d 1076 (9th Cir. 2003)

6 (holding that comments that individual was "Looney Tunes," "crazy," "nuts," and "mentally

7 imbalanced," were protected under First Amendment as statements of opinion, that none of these

8 remarks contained verifiable assertions, and thus could not serve as basis for defamation claim);

9 Ferlauto v. Hamsher, 74 Cal. App. 4th 1394, 1404 (1999) (dismissing defamation claim without

10 leave to amend and holding that the phrases "creepazoid attorney" and "loser wannabe lawyer"

11 are "classic rhetorical hyperbole which cannot reasonably [be] interpreted as stating actual facts")

12 (internal quotation marks omitted).

13    Plaintiff alleges that AMR (and/or other defendants) called plaintiff a "crazy flute

14 player" and "mental" (SAC ¶ 78) and in the next paragraph alleges that as a result, she "lost her

15 job as a professional flute player in a flute-harp duo *because of the injuries to her back and right*

16 *shoulder . . . .*" (Id. ¶ 79 (emphasis added).) Thus, even if those hyperbolic comments were

17 ascribed to AMR, plaintiff has not alleged that any damages actually resulted from the "crazy

18 flute player" or "mental" comments—her claimed damages were due to physical injuries. (Id. ¶

19 78.) There are no factual allegations that AMR or the AMR Does published false statements

20 about plaintiff to third parties and that damages resulted therefrom. Further, plaintiff's allegation

21 that AMR (or other defendants) generally made "false statements concerning plaintiff's mental

22 health" or filed a vague "false report" (id. ¶ 18) to SCMHTC are conclusory and do not support

23 the claim

24    Moreover, the Ninth Circuit Court of Appeals has clarified that, as a matter of law,

25 expressing an opinion that someone is "crazy" is not a "verifiable assertion" that could

26 proven as false—yet these exact sorts of "epithets" are the only alleged statements that could

31

1  potentially support plaintiff's defamation claim.  See Lieberman, 338 F.3d at 1079-80.

2  Accordingly, the undersigned recommends that the motion to dismiss plaintiff's defamation

3  claim be granted as to AMR with prejudice.

4                          ii)       Statute of Limitations

5          As described above, AMR argues that the defamation/slander claim in this case is

6  "directly based" on health care services and should therefore be construed as "subject to the one

7  year statute of limitation as set forth in Code of Civil Procedure section 340.5."  (MTD at 10.)

8  For the reasons described above, however, the undersigned cannot find that plaintiff's

9  "Defamation and Slander" (SAC ¶ 80; SAC's caption)) claims are time-barred under Section

10  340.5 as a matter of law.

11          However, AMR also argues in the alternative that plaintiff's defamation/slander

12  claim is time-barred even if treated as a "straight" defamation/slander claim and therefore subject

13  to the one-year limitations period set forth in Code of Civil Procedure § 340(c) ("Section

14  340(c)").  (MTD at 10.)  As to the application of Section 340(c), defendants' argument is well-

15  taken.  E.g, Lee Myles, 557 F. Supp. 2d at 1137-38 (applying the one-year statute of limitations

16  codified in Section 340(c) to a defamation claim).

17          As described above, AMR's alleged tortious conduct occurred "on or about"

18  November 21, 2007.  (SAC ¶ 18.)  Plaintiff does not allege any delay in discovering injuries she

19  alleges resulted from AMR's conduct.  Accordingly, on the face of the SAC, the one-year statute

20  of limitations applicable to the tort of defamation/slander appears to have run on or about

21  November 21, 2008.  (Id. ¶ 18.)  Plaintiff filed her complaint on February 20, 2009, well after

22  that period.  (Dkt. No. 1.)  From the face of the SAC, then, plaintiff's defamation/slander claim is

23  time-barred as against AMR.

24          Accordingly, because it is apparent from the face of the SAC that the claim is

25  time-barred, the undersigned recommends that the motion to dismiss plaintiff's defamation claim

26  be granted as to AMR on this additional and alternate ground.  Because plaintiff has had multiple

1   opportunities to amend her pleading, and has not indicated any ability to amend the deficiency,

2   the undersigned recommends that the defamation/slander claim be dismissed with prejudice as

3   against AMR.

4       k.  Eleventh Claim for "Conversion"

5         i)  Failure to Plead Supporting Facts

6      A conversion occurs where the defendant wrongfully exercises dominion over the

7   property of another.  Bank of New York v. Fremont General Corp., 523 F.3d 902, 914 (9th Cir.

8   2008).  To establish conversion, a plaintiff must show: (1) her ownership of or right to possess

9   the property at the time of the conversion, (2) that the defendant disposed of the plaintiff's

10   property rights or converted the property by a wrongful act, and (3) damages.  Id. (citing cases).

11      While plaintiff purports to advance her conversion claim against "all defendants,"

12   (SAC ¶¶ 80-81), the SAC is devoid of factual allegations supporting a conversion claim as

13   against AMR.  Plaintiff bases her "conversion" claim solely upon the allegation that various

14   items of her personal property were allegedly "confiscated" by various defendants, including

15   AMR.  (SAC ¶¶ 37-42.)  While the SAC alleges plaintiff's ownership in certain personal

16   property including a flute, purse, luggage, etc. (id. ¶ 82), plaintiff does not allege any further

17   details about what happened to other items of personal property except for conclusions that the

18   items were "seized, damaged, destroyed, lost, converted, and/or stole[n]."  (Id. at 82).  Although

19   plaintiff details the items of personal property allegedly converted, she does not plead the fact

20   that AMR ever had access to or came remotely near such property.  Indeed, plaintiff alleges that

21   her items were searched and seized upon her *arrest* at Room 101 of the Comfort Suites hotel in

22   Rocklin—something she does not allege AMR participated in—and then conclusorily alleges that

23   the arresting defendants *and* AMR (and others) "confiscated" her property.  (Id. ¶¶ 32-33, 38-39,

24   40.)  Indeed, nowhere in the SAC does plaintiff allege facts suggesting that AMR's employees

25   *themselves* ever came into contact with or had access to plaintiff's personal property, let alone

26   facts indicating that moving defendants unlawfully converted or seized that property.

1    On these allegations, it *possible* that AMR—or any one of the over 100

2    defendants—confiscated plaintiff's personal property, but there are no factual allegations

3    nudging the claim into the realm of plausibility.  See Iqbal, 129 S. Ct. at 1952 (where a plaintiff

4    has failed to "nudge [his or her] claims across the line from conceivable to plausible," the claim

5    may be dismissed.)  These allegations suggest only "a sheer possibility that" AMR seized

6    plaintiff's personal property.  See id. at 1949; see Twombly, 550 U.S. at 544.

7    Accordingly, the undersigned recommends that the motion to dismiss be granted

8    with respect to plaintiff's "conversion" claim.  Because plaintiff has had multiple opportunities to

9    amend her pleading, and because she fails to suggest a factual basis for the conversion claim in

10   her opposition or even address AMR's arguments thereupon, the undersigned recommends that

11   the "conversion" claim be dismissed with prejudice as against AMR.

12             l.      Twelfth Claim for "Medical Malpractice"

13                     i)      Failure to Plead Supporting Facts

14   The elements a plaintiff must prove for a negligence action based on medical

15   malpractice are: "(1) the duty of the professional to use such skill, prudence, and diligence as

16   other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a

17   proximate causal connection between the negligent conduct and the resulting injury; and (4)

18   actual loss or damage resulting from the professional's negligence."  Thomas, 2007 WL

19   1273190, at *16-17 (citing Johnson v. Superior Court, 143 Cal. App. 4th 297, 305 (2006);

20   Hanson v. Grode, 76 Cal. App. 4th 601, 606 (1999).)

21             When conclusory allegations are stripped away, the SAC's relevant allegations are

22   that AMR and the AMR Does—alleged medical professionals with a duty of care (SAC ¶ 54)—

23   transported plaintiff from the Auburn jail to SCMHTC (id. ¶ 18), "injected syringes into eleven

24   (11) areas on Plaintiff's hands and left inside forearm without a physician's order" (id. ¶ 46-47),

25   "inject[ed] Plaintiff's body with needles and foreign substances without Plaintiff's consent,"

26   rendered her unconscious, and forced medications upon her (id. ¶ 54(c)), and "inject[ed]

34

1    Plaintiff's body with needles and foreign substances at the Main Jail in Auburn and/or in the

2    AMR ambulance and at SCMHTC, without Plaintiff's consent, rendering Plaintiff unconscious .

3    . . forc[ed] Plaintiff to ingest medications . . . ." (id. ¶ 85), and that she suffered emotional

4    distress as a result (id. ¶ 46-47).

5              It is conceivable that forcing injections upon someone without their consent might

6    amount to conduct below the standard of care required of medical professionals.  Therefore, the

7    undersigned cannot conclude that plaintiff's medical malpractice claim fails to meet minimal

8    pleading requirements warranting dismissal at this stage.

9                            ii)     Statutory Immunity

10             AMR does not argue that statutory immunity under Section 5278 applies to

11   medical malpractice claims.  (MTD at 8.)

12                           iii)    Statute of Limitations

13             Although a claim may be dismissed pursuant to Rule 12(b)(6) on the ground that

14   the claim is barred by the applicable statute of limitations, such a dismissal may be had "only

15   when 'the running of the statute is apparent on the face of the complaint.'"  Von Saher v. Norton

16   Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) (quoting Huynh v. Chase

17   Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006)).  "'[A] complaint cannot be dismissed

18   unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the

19   timeliness of the claim.'"  Id. (modification in original) (quoting Supermail Cargo, Inc. v. United

20   States, 68 F.3d 1204, 1206 (9th Cir. 1995)); see also Cervantes v. City of San Diego, 5 F.3d

21   1273, 1275 (9th Cir. 1993) (stating that when a motion to dismiss is based on the running of the

22   statute of limitations, the motion "can be granted only if the assertions of the complaint, read

23   with the required liberality, would not permit the plaintiff to prove that the statute was tolled")

24   (citation and quotation marks omitted); accord E.E.O.C. v. ABM Industries Inc., 249 F.R.D. 588,

25   591 (E.D. Cal. 2008) (explaining that pleadings "can be dismissed for failure to state a valid

26   claim when a violation of the limitations period is evident from the face of the complaint" and

                                                  35

1   concluding that, "[b]ased on the pleadings filed to date, it is impossible for the Court to ascertain

2   with any degree of certainty whether" claims were time-barred.)

3          Plaintiff's medical malpractice claim alleges professional negligence by health

4   care providers—like AMR (SAC ¶ 85 (deeming AMR as having provided "medical care and

5   treatment"))—and is therefore subject to the statute of limitations set forth in Section 340.5.

6   Section 340.5 requires plaintiff to commence her action "three years after the date of the injury or

7   one year after the plaintiff discovers, or through the use of reasonable diligence should have

8   discovered, the injury, *whichever comes first*." Cal. Civ. Code § 340.5 (emphasis added).

9   Plaintiff alleges that AMR treated her on November 21, 2007. (SAC ¶ 18.) On the pleaded facts,

10  then, plaintiff discovered her alleged injuries at the time they occurred or soon thereafter;

11  plaintiff does not allege any delay in discovering the physical and emotional distress injuries she

12  alleges resulted from moving defendants' conduct. Accordingly, without any extensions or

13  tolling, the statute of limitations appears to have run on or about November 21, 2008. See Cal.

14  Civ. Code § 340.5. Plaintiff filed her complaint on February 20, 2009, well after that date. (Dkt.

15  No. 1.)

16         Section 340.5's limitation period can be extended for a 90-day period if a plaintiff

17  serves defendants with a letter giving Notice of her Intention to File Suit ("NIFs") pursuant to

18  California Code of Civil Procedure § 364. "From the language of section 364(d) it is apparent

19  that the Legislature intended (1) that for a plaintiff who serves notice within the last 90 days of

20  the original limitations period that period is 'extended' for a variable period beyond the initial

21  expiration date, not 'tolled' for an automatic 90 days, and (2) that the extension be calculated

22  from the date of 'service of the notice,' by its terms a date that varies with each case." Estrella v.

23  Brandt, 682 F.2d 814, 818 (Cal. 1982).

24         However, in her opposition to AMR's motion, plaintiff does not indicate that she

25  served a NIF upon AMR or otherwise attempted to extend the deadline set in Section 340.5. As

26  illustrated by the fact that plaintiff has raised precisely this argument in her opposition to a

1   separate motion to dismiss filed by different defendants, plaintiff is aware of the argument.  (E.g.,

2   Dkt. No. 94 at 11, 15.)  Accordingly, plaintiff's failure to raise this argument in connection with

3   AMR's motion evinces an inability to plead grounds for a 90-day extension of the statute of

4   limitations pursuant to Section 364.

5           Instead of invoking Section 364's 90-day extension of the statute of limitations,

6   plaintiff argues that the statute of limitations for her medical malpractice claim against AMR did

7   not begin to run until she discovered AMR's identity.  (Oppo. at 10.)  While her SAC is utterly

8   silent on this issue, her opposition plaintiff argues that she "did not discover the AMR's identity

9   until December 2, 2008."  (Id.)  Plaintiff's argument is not well-taken.  As AMR points out, a

10  statute of limitations begins to run when a plaintiff has reason to suspect that "someone has done

11  something wrong."  Norgart v. Upjohn Co., 21 Cal. 4th 383, 397-98 (1999).

12          Plaintiff's ignorance of AMR's identity will not delay accrual of or toll her claim

13  absent other special circumstances, such as AMR's fraudulent concealment of its identity.  A

14  "plaintiff may discover, or have reason to discover, the cause of action even if he does not

15  suspect, or have reason to suspect, the identity of the defendant.  [Citation.]  That is because the

16  identity of the defendant is not an element of any cause of action.  [Citation.]  It follows that

17  failure to discover, or have reason to discover, the identity of the defendant does not postpone the

18  accrual of a cause of action, whereas a like failure concerning the cause of action itself does."

19  Norgart, 21 Cal. 4th at 399 (citations omitted) (citing Bernson v. Browning-Ferris Industries, 7

20  Cal. 4th 926, 932 (1994)); accord Garamendi v. SDI Vendome S.A., 276 F. Supp. 2d 1030, 1043-

21  45 (C.D. Cal. 2003) (same).  Except in cases where  "a diligent plaintiff . . . remains 'totally

22  ignorant' of a defendant's identity . . . [as] the result of the defendant's fraudulent concealment"

23  —something plaintiff has not alleged in her SAC or intimated in her opposition—an ignorance as

24  to a defendant's identity will not delay accrual of or toll the statute of limitations.  See

25  Garamendi, 276 F. Supp. 2d at 1043-45; Crown Paper Liquidating Trust v. American Intern.

26  Group, Inc., No. C-07-2308 MMC, 2007 WL 4207943, at * 9, 11 (N.D. Cal. Nov. 27, 2007) (not

1  reported) (dismissing claims as time-barred where plaintiff did not "allege any facts in its

2  complaint pertaining to" fraudulently concealed facts resulting in delayed discovery of

3  defendants' identities and where plaintiff's opposition did not state, "even in a cursory manner"

4  why in the exercise of reasonable diligence such facts could not have been discovered earlier).

5  Pursuant to these authorities, plaintiff's broad argument that the statute of limitations did not

6  begin to run until she learned of AMR's identity until December 2008 (Oppo. at 10)—with no

7  suggestion AMR engaged in fraudulent concealment—does not salvage the otherwise time-

8  barred claim.

9  　　　　Accordingly, plaintiff's medical malpractice claim against AMR is time-barred,

10  and the undersigned recommends that the motion to dismiss the claim be granted.  As plaintiff

11  has had multiple opportunities to amend her pleading, and because plaintiff has not suggested an

12  ability to amend her pleading to include facts that would properly toll, extend, or delay accrual of

13  the statute of limitations with respect to AMR, the undersigned recommends that the medical

14  malpractice claim against AMR be dismissed with prejudice.

15  　　　　　　m.  　Thirteenth Claim for "Negligence Per Se"

16  　　　　In California, negligence per se is "a presumption of negligence [that] arises from

17  the violation of a statute which was enacted to protect a class of persons of which the plaintiff is

18  a member against the type of harm which the plaintiff suffered as a result of the violation of the

19  statute."  People of California v. Kinder Morgan Energy Partners, L.P., 569 F. Supp. 2d 1073,

20  1087 (S.D. Cal. 2008) (citing cases).  Negligence per se "is merely an evidentiary doctrine and

21  not an independent cause of action."  Id. (clarifying that negligence per se is simply a codified

22  evidentiary doctrine that does not establish tort liability).  However, the facts giving rise to a

23  negligence claim—not a violation of the statute or regulation itself—are what entitle a plaintiff to

24  recover civil damages for negligence per se.  Spencer v. DHI Mortg. Co., Ltd., 642 F. Supp. 2d

25  115, 1161-62 (E.D. Cal. 2009) ("The negligence per se doctrine assists as evidence to prove

26  negligence . . . In such circumstances the plaintiff is not attempting to pursue a private cause of

action for violation of the statute; rather, he is pursuing a negligence action and is relying upon the violation of a statute, ordinance, or regulation to establish part of that cause of action." (citations and internal quotation marks omitted).)

As described above, plaintiff has pleaded a minimal basis for a medical malpractice claim against AMR.  But while the allegations supporting that underlying negligence claim might support civil damages for "negligence per se," "negligence per se" is not an independent cause of action.  See Spencer, 642 F. Supp. 2d at 1161-62.

Moreover, even if "negligence per se" were an independent cause of action, plaintiff's allegations, that she "was and is one of the class of persons for whose protection the statutes or regulations were adopted" (SAC ¶ 92), and that her alleged injuries at the hands of AMR "resulted from occurrences that said statutes and/or regulations were designed to prevent" (id. ¶ 93), are vague and conclusory and do not support a negligence per se "claim."  While plaintiff alleges that she was arrested on account of her religious practices, she has not alleged that *AMR* played a role in her arrest, that its employees' conduct toward her had anything to do with those religious practices, or that they were even aware of her religious beliefs.

Accordingly, the motion to dismiss is granted with respect to plaintiff's negligence per se claim, and because amendment would be futile, the undersigned recommends that this "claim" be dismissed with prejudice as against AMR.

2.   Lack of Subject Matter Jurisdiction

AMR asserts Federal Rule of Civil Procedure 12(b)(1) in efforts to dismiss all claims against it on grounds the court lacks federal subject matter jurisdiction *as to AMR*.  (Dkt. No. 78 at 10.)   In an argument virtually devoid of case law or other support for its position,[14]

---

[14]   AMR cites one out-of-circuit case in support of its argument for dismissal for lack of jurisdiction.  (Dkt. No. 77 at 10 (citing Serrano-Moran v. Grau-Gaztambide, 195 F.3d 68, 69-70 (1st Cir. 1999).)  In Serrano-Moran, the claim was brought by the parents of a mentally impaired individual who was allegedly kidnapped and beaten by four police officers, hospitalized the next day, and died a few days later, allegedly as a result of beatings and medical  malpractice.

1    AMR contends that: (1) there is no federal question jurisdiction underlying plaintiff's claim

2    against AMR; and (2) that there is no basis for supplemental jurisdiction.  (Id.)  AMR passingly

3    suggests that its alleged wrongful acts are not part of the same case or controversy as the acts

4    alleged to have violated federal law, and thus that no supplemental jurisdiction exists.  (Id.)

5    AMR argues that supplemental jurisdiction does not exist as to it because the state law claims are

6    "insufficiently related to the federal claims against the other defendants."  (Id.)  AMR's

7    arguments are not well-taken at this time.

8              In general, the court must exercise supplemental jurisdiction over state-law claims

9    that are part of the "same case or controversy."  28 U.S.C. § 1367(a).  Only a "loose factual

10   connection" to the underlying federal claim is required for supplemental jurisdiction purposes.

11   See e.g. CVPartners Inc. v. Boben, No. C 09-689 SI, 2009 WL 1331108, at *1 (N.D. Cal. May

12   13, 2009) (not reported); Campos v. Western Dental Servs. Inc., 404 F. Supp. 2d 1164, 1168-69

13   (N.D. Cal. 2005) (exercising supplemental jurisdiction where claim and counterclaim were

14   factually and legally distinct but were "offshoots of same basic transaction").)  If this condition is

15   ////

16   ////

17   _____

18   Serrano-Moran, 195 F.3d at 69-70.  The appellate court affirmed the district court's finding that
     the claims against medical defendants did not share a common nucleus of operative facts with the
19   claims against police defendants because the facts relevant to the civil rights claim were entirely
     separate from the facts relevant to the malpractice claim, and because there was a "temporal
20   break" between the two sets of facts.  (Id.)  The facts of Serrano-Moran are similar to this case
     but are ultimately distinguishable.  While the court in Serrano-Moran found that "whether or not
21   the police violated [the decedent's] civil rights has nothing to do with whether the hospital and
     doctors conformed to the requisite standard of care," that is not the case on the pleaded facts at
22   issue here.  Here, the propriety of the treatments AMR allegedly administered to plaintiff in the
     ambulance are potentially intertwined with the propriety of plaintiff's arrest, detention and the
23   reasons plaintiff was transferred to SCMHTC care via AMR's ambulance.  The facts relevant to
     plaintiff's federal claims against the police officers are not apparently "entirely separate" from
24   the facts relevant to her claims against AMR.  See Hensley v. U.S, No. C04-302P, 2006 WL
     118248, at *2-3 (W.D. Wash. Jan. 13, 2006) (not reported) (discussing Serrano-Moran, factually
25   distinguishing it, and clarifying that supplemental jurisdiction exists unless facts relevant to state
     claims are "entirely separate" from facts relevant to federal claims, as "a loose factual connection
26   between the claims is generally sufficient").

1   satisfied,[15] the federal court maintains jurisdiction over the state claims and all other parties –

2   even parties not facing an allegation that they violated federal law.  28 U.S.C. § 1367(a); Sea-

3   Land Serv. v. Lozen Int'l, 285 F.3d 808, 814 (9th Cir. 2002) (claims that "rely on identical facts

4   for their resolution" are part of the same "case or controversy" for supplemental jurisdiction

5   purposes); Executive Software N. Am., Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal., 24 F.3d

6   1545, 1556 (9th Cir. 1994), overruled on other grounds in Cal. Dept. of Water Res. v. Powerex

7   Corp., 533 F.3d 1087 (9th Cir. 2008); e.g., Ortega v. Brock, 501 F. Supp. 2d 1337, 1340-44

8   (M.D. Ala. 2007) (court had original jurisdiction over defendant officer based on 42 U.S.C. §

9   1983 claim and had supplemental jurisdiction over other defendants based on state-law claims.)

10          Plaintiff's state law claims are related to the federal claims existing in this action

11   (SAC ¶¶ 8-9) and these claims are all part of the same case or controversy.  Here, plaintiff has

12   alleged numerous violations of her rights over seven consecutive days, beginning on November

13   20, 2007, with the allegedly improper search of her body, hotel room, and vehicle, continuing

14   with her allegedly improper detention and treatment at the Placer County Main Jail, and

15   continuing with her allegedly improper treatment (i.e., unwanted injections) in the AMR

16   ambulance during her transfer from the jail to SCMHTC, and continuing with her removal from

17   the AMR ambulance in the SCMHTC parking lot.   (Id. ¶¶ 18, 46, 54.)  Thus, the SAC alleges a

18   temporally-connected chain of events.

19          Artificially severing this pleaded chain of alleged events at the time plaintiff left

20   the jail makes little sense, given that the events preceding her ambulance ride are relevant to

21   whether her treatment during the ride was proper.  Given this temporal and logical connection,

22   the alleged actions by AMR are part of the same "case or controversy" as the acts alleged to have

23   violated federal law (i.e., the initial search, seizure and arrest).  Even if the SAC fails to allege

24   that AMR violated federal law, the other defendants' alleged violations of federal law have not

25

26          [15]  The court's exercise of supplemental jurisdiction is also subject to certain conditions
    that are inapplicable in this case and were not raised by AMR.  See 28 U.S.C. 1367(c).

1   been challenged at this posture.[16]  Absent such a showing, this court maintains jurisdiction over

2   the case and all parties to it, including AMR.  Hence, as of now, the invocation of supplemental

3   jurisdiction is appropriate here.  28 U.S.C. § 1367(a).  Therefore, the motion to dismiss for lack

4   of subject matter jurisdiction is denied.

5               B.     Motion to Strike

6               1.     Claims for Punitive Damages From AMR

7               The Ninth Circuit Court of Appeals has clarified that "Rule 12(f) does not

8   authorize a district court to strike a claim for damages on the ground that such damages are

9   precluded as a matter of law."  Whittlestone, 618 F.3d at 971.  AMR's motion to strike (MTS,

10  Dkt. No. 78, 10-11) argues that punitive damages are unavailable as a matter of law, on grounds

11  that plaintiff has not complied with statutory procedural requirements enabling her to properly

12  seek such damages.  (MTS at 10 (citing Cal. Code Civ. Proc. § 425.13 (requiring leave of court

13  to seek punitive damages against medical providers).)  Accordingly, the motion to strike appears

14  to run afoul of Rule 12(f)'s limits as described by the court in Whittlestone.  See Whittlestone,

15  618 F.3d at 971.  However, courts sometimes construe such deficient motions to strike as

16  motions to dismiss and analyze them accordingly, and the undersigned will do so here.[17]

17              Construing the motion to dismiss "punitive damages" claims against AMR as a

18  motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the undersigned addresses

19  AMR's argument.  AMR is correct that California Code of Civil Procedure § 425.13 requires a

20  plaintiff to obtain leave of court before claiming punitive damages against medical providers.

21

22          [16]  Defendants have not argued that the SAC fails to state a claim invoking at least one
    federal law as against at least one defendant.

23

24          [17]  See, e.g., Arrad v. City of Fresno, No. 10-cv-01628 LJO SMS, 2011 WL 284971, at *2
    n. 4 (E.D. Cal. Jan. 26, 2011) (not reported) (construing defendant's motion to strike punitive
25  damages as a motion to dismiss in light of the holding in Whittlestone); Angel v. Golden Valley
    Transport, LLC, No. 10-cv-890 LJO DLB, 2011 WL 201465, at *2 (E.D. Cal. Jan. 20, 2011) (not
26  reported) (noting that a motion to strike portions of plaintiff's request for statutory penalties is
    improper and instead construing the motion as a motion to dismiss).

1    The court in <u>Central Pathology</u> construed the requirements of that section to apply to both

2    negligence *and* tort claims against medical providers.  <u>Central Pathology</u>, 3 Cal. 4th at 192.

3    AMR is also correct that a review of the court's docket confirms plaintiff has not complied with

4    California Code of Civil Procedure § 425.13 and has not obtained leave of court with respect to

5    the punitive damages she seeks from medical providers like AMR.

6              However, AMR's argument overlooks the fact that this case is proceeding in

7    federal court and is subject to the Federal Rules of Civil Procedure—not the procedural rules

8    governing actions proceeding in California state courts.  California Code of Civil Procedure §

9    425.13 is a procedural rule that does not necessarily apply in this federal case.

10             Moreover, AMR omitted to cite to any authorities directly on this point.  <u>E.g.</u>,

11   <u>Jackson v. East Bay Hosp.</u>, 980 F. Supp. 1341, 1353 (N.D. Cal. 1997) (where plaintiff claimed

12   punitive damages under a federal statute that incorporates state substantive law in determination

13   of damages, the court denied a motion to strike punitive damages claim against medical providers

14   in federal court "[s]ince section 425.13 is a procedural requirement and does not warrant special

15   exception, it is therefore inapplicable"); <u>contra</u> <u>Allen v. Woodford</u>, No. 1:05-CV-01104-OWW

16   -LJO, 2006 WL 1748587, at *22 (E.D. Cal. June 26, 2006) (not reported) (granting motion to

17   strike punitive damages and holding that, because Section 425.13 is so "intimately bound up"

18   with the substantive law of the underlying state law claims arising from the rendering of

19   professional medical services, it must be applied by federal courts when addressing the issue of

20   punitive damages against medical providers for state law claims.); <u>Thomas v. Hickman</u>, No. CV

21   F 06-0215 AWI SMS, 2006 WL 2868967, at *38-41 (E.D. Cal. Oct. 6, 2006) (not reported)

22   (holding that "Plaintiff's causes of action for professional negligence, intentional infliction of

23   emotional distress, fraud and misrepresentation are directly related to the manner in which

24   Defendants provided their professional services.  These claims arise out of the professional

25   negligence of health care providers.  Plaintiff must petition the court for punitive damages

26   pursuant to Section 425.13 for such relief under her state law claims.") (citing <u>Allen</u>, 2006 WL

1    1748587 at *20-22; <u>Jackson</u>, 980 F. Supp. at 1352.)

2           Like the claims in <u>Allen</u> and <u>Thomas</u>, in this case plaintiff's punitive damages

3    claims arise from state law claims and are directly related to the manner in which AMR allegedly

4    provided its professional services.  See <u>Allen</u>, 2006 WL 1748587 at *20-22; <u>Thomas</u>, 2006 WL

5    2868967, at *40-41.  Therefore, those two cases offer more guidance than the <u>Jackson</u> case,

6    which involved a punitive damages claim under a federal statute incorporating state substantive

7    law regarding damages.  See <u>Thomas</u>, 2006 WL 2868967, at *38-41.  Accordingly, plaintiff must

8    petition the court for permission to claim punitive damages as against AMR pursuant to Section

9    425.13 for such relief under her state law claims.  See <u>Thomas</u>, 2006 WL 2868967, at *41.

10          Therefore, the motion to strike plaintiff's punitive damages claims against AMR

11   is construed as a motion to dismiss and the motion is granted.  All of plaintiff's claims and

12   prayers for punitive damages as against AMR are dismissed without prejudice.  If plaintiff

13   wishes to pursue punitive damages from AMR, she will have 30 days from the date of this order

14   to file documents attempting to make the "substantial probability" showing required under

15   California Code of Civil Procedure § 425.13.

16          2.   Claims for Attorneys' Fees "Pursuant to 42 U.S.C. § 1983"

17          The Federal Civil Rights Act provides for an award of attorney fees for plaintiffs

18   who prevail in actions brought under 42 U.S.C. § 1983 ("Section 1983").  The statutory section

19   permitting such a fee award in any Section 1983 "action or proceeding" is 42 U.S.C. § 1988

20   ("Section 1988").

21          AMR seeks to strike plaintiff's claims for attorneys fees and costs for "violations

22   of California law" insofar as those fee claims are "pursuant to 42 U.S.C. § 1983," (SAC ¶ 31).

23   (MTD at 11-12.)  According to AMR, plaintiff is not entitled to recover attorney fees or costs

24   from it for state law violations as a matter of law, because Section 1988 only embraces

25   "violations of the United States Constitution and/or federal law" and "violations of state and/or

26   common law do not support claims for relief under that section."  (MTS at 15-16.)  As discussed

44

1   above, because the motion seeks to strike a claim for fees and costs on grounds that such fees and

2   costs are unavailable as a matter of law, the motion runs afoul of Rule 12(f)'s limits as described

3   by the court in Whittlestone.  See Whittlestone, 618 F.3d at 971.  However, also as described

4   above, courts sometimes construe such deficient motions to strike as motions to dismiss and

5   analyze them accordingly, and the undersigned will do so here.

6            In support of AMR's argument that plaintiff cannot invoke the Federal Civil

7   Rights Act to collect attorney fees upon pendant *state law* claims alleged against it, AMR cites

8   no supporting authority.  Absent authority to the contrary, the undersigned cannot conclude as a

9   matter of law that Section 1988 attorney fees may not be awarded against AMR for violations of

10  state law.  Some courts have interpreted the Federal Civil Rights Act to provide for an award of

11  Section 1988 attorneys' fees upon successful pendant state law claims even where a federal

12  constitutional claim ultimately fails.  E.g.,  Maher v. Gagne, 448 U.S. 122, 132 (1980) (clarifying

13  that attorneys' fees under Section 1988 are available in cases "in which the plaintiff prevails on a

14  wholly statutory, non-civil rights claim pendent to a substantial constitutional claim."); Milwe v.

15  Cavuoto, 653 F.2d 80, 84 (C.A. Conn. 1981) (holding that attorneys' fees may be awarded as

16  against a defendant found to have committed the state law tort of assault, a claim pendant to the

17  Section 1983 claim, even though defendant was not found to have committed a violation of

18  federal constitutional law).

19           Moreover, the Ninth Circuit Court of Appeals has held that, when the plaintiff in a

20  civil rights action prevails on a pendent state claim based on a common nucleus of operative fact

21  with a substantial federal claim, fees may be awarded under Section 1988.  Carreras v. City of

22  Anaheim, 768 F.2d 1039, 1050 (9th Cir. 1985) abrogated on other grounds by Los Angeles

23  Alliance for Survival v. City of Los Angeles, 22 Cal. 4th 352 (2000); cf. Mateyko v. Felix, 924

24  F.2d 824, 828-29 (9th Cir. 1990) (denying Section 1988 fees for successful pendant state law

25  claims *if* plaintiff "loses on his federal claim").

26           While there might be case law supporting AMR's argument, AMR has not

1    provided any to the undersigned.  Absent such authority, the undersigned cannot find that Section

2    1988 attorney fees can *never* be awarded as against AMR as a matter of law for pendant state law

3    tort claims.  Accordingly, the motion to strike plaintiff's claims for attorneys' fees and costs is

4    construed as a motion to dismiss, and the motion is denied.

5                    C.        Motion for a More Definite Statement

6               AMR seeks a more definite statement under Federal Rule of Civil Procedure 12(e)

7    in the event the undersigned does not grant its motion to dismiss in full.  (MTD at 12.)

8               While it contains few non-conclusory, factual allegations relating to AMR, the

9    SAC nonetheless provides AMR with adequate notice of the basis for the claims against it.

10   While the SAC is far from a model of clarity, it does state claims against AMR.  The proper

11   avenue for eliciting additional detail is discovery, not a Rule 12(e) motion.  See e.g., Musacchio,

12   695 F. Supp. at 1060; Famolare, 525 F. Supp. at 949; Beery, 157 F.R.D. at 480.  Accordingly,

13   AMR's motion for a more definite statement is denied.

14              For the foregoing reasons, IT IS HEREBY ORDERED that:

15              1.        The motion to dismiss (Dkt. Nos. 77-78) filed by AMR is granted in part

16   and denied in part.

17                        a.  As to the first claim for AMR's alleged violations of the U.S.

18   Constitution, the motion to dismiss is denied.

19                        b.  As to the claims for AMR's alleged violations of 42 U.S.C. §§ 1985

20   and 1986, the motion to dismiss is denied.

21                        c.  As to alleged statutory violations contained within the SAC's second

22   claim for relief but not expressly addressed above, AMR's motion to dismiss the second claim

23   for relief is denied.

24                        d.  As to the assault claim and claim for alleged violations of California

25   Civil Code § 43, the motion to dismiss is denied.

26                        e.  As to the battery claim and claim for alleged violations of California

                                                    46

1    Civil Code § 43, the motion to dismiss is denied.

2              f.  As to the "medical battery" claim, the motion to dismiss is denied.

3              g.  As to the Intentional Infliction of Emotional Distress claim, the motion

4    to dismiss is denied.

5              h.  The motion to dismiss for lack of subject matter jurisdiction is denied.

6         2.      AMR's motion to strike (Dkt. No. 78, 10-11) is granted in part and denied

7              in part.

8              a.  The motion to strike plaintiff's punitive damages claims against AMR

9    is construed as a motion to dismiss and the motion is granted.  All of plaintiff's claims and

10   prayers for punitive damages as against AMR are dismissed without prejudice.  If she wishes to

11   pursue punitive damages from AMR, plaintiff will have 30 days from the date of this order to file

12   documents attempting to make the "substantial probability" showing required under California

13   Code of Civil Procedure § 425.13 prior to being permitted to claim punitive damages from

14   medical providers.

15             b.  The motion to strike plaintiff's claims for attorneys's fees and costs is

16   construed as a motion to dismiss, and the motion is denied.

17        3.      AMR's motion for a more definite statement is denied.

18        4.      This matter is set for status conference on <u>Thursday, May 19, 2011, at</u>

19   <u>10:00 a.m.,</u> before the undersigned.  The parties are to comply with the local rules regarding the

20   filing of a timely joint status report.

21        Additionally, IT IS HEREBY RECOMMENDED that:

22        1.      The motion to dismiss the claim for violation of 42 U.S.C. § 1981 be

23   granted as to AMR, and that the claim be dismissed with prejudice as against AMR;

24        2.      The motion to dismiss the claim for violation of 18 U.S.C. § 245 be

25   granted as to AMR, and that the claim be dismissed with prejudice as against AMR;

26        3.      The motion to dismiss the claims for violations of California Civil Code

47

§§ 51 and 51.7 be granted as to AMR, and that the claim be dismissed with prejudice as against AMR;

           4.     The motion to dismiss the claims for violations of California Civil Code §§ 54, 54.1, and 54.3 be granted as to AMR, and that the claims be dismissed with prejudice as against AMR.

           5.     The motion to dismiss the claims for violation of California Civil Code § 1708 be granted as to AMR, and that the claim be dismissed with prejudice as against AMR.

           6.     The motion to dismiss the "trespass" claim be granted as to AMR, and that the "trespass" claim be dismissed with prejudice as against AMR.

           7.     The motion to dismiss the false imprisonment and false arrest claims be granted as to AMR, and that the claims be dismissed with prejudice as against AMR.

           8.     The motion to dismiss the defamation/slander claim be granted as to AMR, and that the claim be dismissed with prejudice as against AMR.

           9.     The motion to dismiss the conversion claim be granted as to AMR, and that the claim be dismissed with prejudice as against AMR.

           10.     The motion to dismiss the medical malpractice claim be granted as to AMR, and that the claim be dismissed with prejudice as against AMR.

           11.     The motion to dismiss the "negligence per se" claim be granted as to AMR, and that the claim be dismissed with prejudice as against AMR.

         These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED AND RECOMMENDED**

DATED:  March 31, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

49