1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KATHLYN A. RHODES,

11              Plaintiff,                    No. 2:09-cv-00489 MCE KJN PS

12        vs.

13   PLACER COUNTY, et al.,

14              Defendants.                   FINDINGS & RECOMMENDATIONS

15   _____/

16

17              Presently before this court is a motion to dismiss ("MTD") filed by defendants

     County of Sacramento (the "County" or "SCMHTC"[1]) and Dorian Kittrell ("Kittrell")

18   (collectively, the "moving defendants").  (MTD, Dkt. No. 72.)  Plaintiff Kathlyn Rhodes[2]

19

20   _____

21        [1]   The County indicates that it was erroneously sued as Sacramento Mental Health
     Treatment Center ("SCMHTC").  (Dkt. No. 72-1 at 1.)  Notwithstanding that correction, to
     facilitate reference to the SAC this order will use the terms "SCMHTC" and the "County"
22   interchangeably.

23        [2]   This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered
24   February 9, 2010.  (Dkt. No. 36.)  Pursuant to the local rules, this matter was assigned to the
     undersigned because plaintiff did not initially identify to the court the fact that she is an attorney
25   licensed in California.  Local Rule 302(c)(21) provides that where a pro se litigant later becomes
     represented by an attorney, that such an action will be referred back to the district judge.  It is not
26   clear that this local rule governs the treatment of this action because plaintiff is still acting in pro

                                           1

1   opposed the motions with a written opposition and declaration.  (Oppo., Dkt. Nos. 90, 95.)

2   Moving defendants filed a written reply.  (Reply, Dkt. No. 98.)  The matter was submitted

3   without oral argument pursuant to Eastern District Local Rule 230(g).  (Dkt. No. 101.)

4          After plaintiff filed her second amended complaint (the "SAC"), three sets of

5   defendants filed motions to dismiss and partially strike it, and those motions are now pending

6   before the court.[3]  The motions filed by other defendants are addressed in separate orders.  This

7   order addresses only the motions filed by the moving defendants: the County and Kittrell.

8   (MTD, Dkt. No. 72.)

9          After careful consideration of the pleadings on file, the record, and the papers

10  filed in support of and in opposition to these motions, and as discussed below, the undersigned

11  recommends that the motion to dismiss be granted, and that the claims against moving

12  defendants be dismissed with prejudice.

13  I.    BACKGROUND

14         Plaintiff, a licensed attorney[4] appearing in pro se and in forma pauperis, filed this

15  action on February 20, 2009.  (Dkt. No. 1.)  In general, plaintiff complains of violations of her

16  rights based upon alleged events surrounding her arrest and subsequent treatment at a mental

17  health facility.  Following this court's screening of plaintiff's original complaint under 28 U.S.C.

18  
_____

19  per.  In the interests of judicial economy, the undersigned will proceed by way of findings and
    recommendations which will then be reviewed by the district judge in this action.

20  

21  [3]  Defendants  Sonja Marie Jackson, M.D. and David Fakhri, M.D. filed a separate motion
    to dismiss and strike the SAC.  (Dkt. No. 73.)  Defendant American Medical Response also filed

22  a separate motion to dismiss and partially strike the SAC.  (Dkt. No. 77.)  The remaining
    defendants filed answers to plaintiff's SAC, namely: California Forensic Medical Group, Inc.,

23  Elaine Hustedt, Dan Hustedt, Taylor Fithian, M.D. (Dkt. No. 69), Choice Hotels International,
    Inc., Sac City Lodging Partners, LLC, Eva Cooper, Myrna Yao (Dkt. No. 70), City of Rocklin,

24  Susan Davis, Darrell Jantz, Jennifer Collins, Mark Siemens, Carlos Urrutia, Thomas J. Platina
    (Dkt. No. 74), Placer County, Edward N. Bonner, Mike Seipert and Cheryl Hamilton (Dkt. No.
    75).

25  

26  [4]  At several hearings in this action, plaintiff confirmed her status as an active member of
    the California Bar.  (E.g., Dkt. Nos. 60, 117.)

2

§ 1915, she filed a first amended complaint on May 20, 2009.  (Dkt. No. 4.)  Several defendants,

including the County and Kittrell, filed motions to dismiss that complaint.  This court heard oral

arguments on the motion to dismiss the first amended complaint on March 25, 2010.  (Dkt. No.

60.)  During that hearing, the undersigned warned plaintiff that, because she was a licensed

member of the California Bar, she would not continue to receive the leniency typically given to

pro se litigants.  The undersigned directed plaintiff to very carefully review and amend her

pleading to correct the various deficiencies noted in the motions to dismiss, including the need to

plead factual allegations as against each defendant for each claim.  The undersigned gave

plaintiff the example of the defamation/slander claim, and informed her that to properly state

such a claim, she must allege:  the statement(s) made; by whom; and identify who heard those

alleged statements.  The undersigned also emphasized that some of the statute of limitations

arguments made in the motions to dismiss appeared "well-taken," and cautioned plaintiff that

while she would be permitted the opportunity to amend the apparently time-barred claims, she

would be held to the standards of an attorney and might therefore face sanctions for continuing to

pursue claims that are, in fact, time-barred.  The undersigned warned plaintiff that, as a member

of the California Bar, she would be expected to omit claims that were time-barred unless she

could make good faith arguments to the contrary.  Finally, the undersigned instructed plaintiff

that with respect to any claims with a claim presentation requirement (i.e., claims requiring

compliance with the Government Claims Act), plaintiff would need to plead the dates she

presented her claim(s) and attach the notice or claim to her pleading.  (Id.)

 After the hearing on March 25, 2010, the court dismissed the first amended

complaint and gave plaintiff leave to file her SAC.  (Dkt. No. 61.)  The court ordered plaintiff to

craft her SAC so as to distinguish between each defendant and his or her alleged actions, to state

non-conclusory factual bases for claims, and to specifically set forth the notice or claim provided

to defendants for any claims requiring such notice or claim presentation.  (Dkt. Nos. 60, 61 at 2-

4.)

On April 27, 2010, plaintiff filed her SAC.  (SAC, Dkt. No. 66.)  Plaintiff's SAC sets forth fourteen separate claims for relief stemming from an allegedly improper search and arrest and subsequent confinement in a mental facility following her time as a guest at the Comfort Suites hotel in Rocklin, California.  (Dkt. No. 66.)  The SAC asserts claims against twenty-three separate defendants.[5]

The SAC alleges that on November 20, 2007, three Rocklin police officers surrounded plaintiff in a public parking lot, performed a pat down of her body, interrogated her and ordered her to undergo a field sobriety test.  (SAC ¶ 10.)  Plaintiff alleges that this interaction occurred across the street from the Comfort Suites hotel in Rocklin, where she had rented Room 101.  (Id.) Although plaintiff avers that she successfully complied with the police officers' requirements, she nonetheless was "forced to ride in the bank of Rocklin Police Officer Davis' patrol car from the parking lot to the front door of Comfort Suites," and that she was injured by officer Davis during this process.  (Id.)  Plaintiff alleges that defendants Platina, Collins and others prepared a false police report claiming that defendant Yao told Officer Platina that plaintiff had been "praying to a light" and singing in the hotel lobby and was "acting crazy." (Id. ¶ 21.)

Later that same night, plaintiff contends that Officer Platina and another officer returned to the Comfort Suites, told the hotel clerk, defendant Yao, to unlock plaintiff's room, and thereafter searched plaintiff's hotel room and her other belongings without a warrant or exigent circumstances.  (Id. ¶ 11.)  Plaintiff contends that the officers also broke into her car trunk to perform a search.  (Id. ¶ 13.)  Plaintiff then states that "Rocklin Police Officers Platina and/or Jantz, Davis and/or one or more 'Doe' Defendants 1-20 subsequently beat Plaintiff to the ground and rendered her unconscious, then transported Plaintiff in the back of Platina's patrol car to the Placer County Main Jail in Auburn during the night of November 20, 2007."  (Id. ¶ 14.)

---

[5]   The parties are familiar with the other allegations in the complaint and they will only be recited as relevant to the grounds discussed herein.

4

1  Plaintiff also alleges that "Platina sexually assaulted Plaintiff in the back seat of his police

2  vehicle." (Id.) Plaintiff avers that she was assaulted and injured by a variety of persons

3  including four entities, five individuals, and 80 unnamed Doe defendants with whom she came

4  into contact on November 20 and 21, 2007. (Id. ¶ 16 ("Said Defendants refused to allow Plaintiff

5  to make any telephone calls; refused to give Plaintiff food, water or medical treatment for her

6  personal injuries inflicted by Defendants; interrogated Plaintiff against her consent; laughed at

7  and ignored Plaintiff's multiple requests to call her boy friend [sic], a lawyer and/or a judge; told

8  Plaintiff she was at Guantanamo Bay and that most of Plaintiff's family was dead; rendered

9  Plaintiff unconscious and searched her body, stripped off Plaintiff's socks and two toe rings

10 without her consent; and injected needles and foreign substances into Plaintiff's body without her

11 consent.").

12       Plaintiff alleges that on the night of November 21, 2007, she was transported via

13 ambulance from the Placer County Main Jail to the SCMHTC medical facility run by the County.

14 (Id. ¶ 18.) Plaintiff alleges that upon her arrival at SCMHTC, she was "beat" in the parking lot

15 by three Doe defendants employed by any of five separate entity defendants. (Id.)

16       Plaintiff alleges that she was involuntarily confined for eight days at the

17 SCMHTC. (Id.) Plaintiff avers that "[a]s a proximate result of the police brutality, medical

18 malpractice, torture and abuse by Platina, Jantz, Davis, Seipert, Hamilton, Bonner, CFMG,

19 AMR, 'Doe' Defendants 1-80 and/or others, Plaintiff sustained severe personal and bodily

20 injuries, including injuries to her head, neck, back, left nipple, both knees, left hip, right

21 shoulder, both wrists, both legs and both feet." (Id. ¶ 22.)

22       Plaintiff alleges she sustained injuries during her stay at the County's SCMHTC

23 medical facility—a facility for which Kittrell is alleged to be the "Director." (Id. ¶ 6.) Plaintiff

24 alleges that SCMHTC "was and is a 'health care provider.'" (Id. ¶ 5.) Plaintiff alleges that

25 SCMHTC employed (or had as its agents) various "Doe" Defendants numbered 61 through 80

26 (the "SCMHTC Does"). (Id. ¶¶ 5-6.)

5

1    Plaintiff alleges that during her time at SCMHTC she was "treated" by two

2 physicians there: Dr. Fakhri and Dr. Jackson.  (Id. ¶¶ 6, 85.)  She alleges that Fakhri and Jackson

3 "were and are physicians licensed to practice psychiatry" in California.  (Id. ¶ 6.)  Plaintiff alleges

4 that Fakhri and Jackson did not properly advise her of the risks of ingesting medications called

5 Seroquel and Lithobid.  (Id. ¶ 6.)

6    Plaintiff alleges that Jackson "treated" her on or about November 25 through 28,

7 2007, and "prescribed" a medication, Seroquel, "without plaintiff's consent."  (Id.)  Plaintiff

8 alleges that Jackson did not disclose Seroquel's "adverse side effects" to plaintiff, in violation of

9 a duty of care.  (Id.)  Plaintiff also alleges that, during her time at SCMHTC, Fakhri "treated

10 Plaintiff on or about November 25, 2007," and "changed the dosage of Seroquel and prescribed

11 Lithobid (Lithium)," also without plaintiff's informed consent.  (Id. ¶¶ 6, 54(b).)  Plaintiff alleges

12 that Fakhri and defendant Frank Patino (also employed by SCMHTC) (id. ¶ 4), among other

13 SCMHTC Doe defendants, administered injections to her body against her will.  (Id. ¶¶ 30(b),

14 54(b).)  According to plaintiff, those actions amounted to harmful and offensive contact with her

15 person and amounted to medical battery in that it "fell below the standard of care of medical

16 care" required.  (Id. ¶ 54.)

17    Plaintiff alleges that Fakhri, Jackson, Patino, Kittrell, and SCMHTC failed to

18 advise her of the risks of ingesting the prescribed medications or that she had a right to refuse

19 them, the right to contact a Patient's Rights Advocate, "and/or the right to a hearing within 72

20 hours after being admitted, pursuant to Welfare and Institutions Code Section 5150, to determine

21 whether there were sufficient grounds to confine Plaintiff involuntarily.  Such failures by said

22 Defendants, as well as their refusal to allow Plaintiff to make telephone calls to lawyers[,]

23 violated Plaintiff's rights as an involuntarily committed patient and also violated SCMHTC's

24 own policies."  (Id. ¶ 6.)

25    Similarly, plaintiff alleges that "as against SCMHTC, FAKHRI and PATINO,"

26 these defendants committed medical battery by

6

(i) not assessing Plaintiff's circumstances and holding no hearing
within 72 hours to determine whether, in fact, Plaintiff was
'gravely disable[d]' as required by California Welfare &
Institutions Code § 5150;
(ii) forcing Plaintiff to ingest Seroquel, Lithium, and other
medications;
(iii) failing to explain the side effects of the medications;
(iv) failing to obtain informed consent;
(v) failing to follow SCMHTC's own policy to provide patient
records within thirty (30) days.

(Id. ¶ 54(b).)

In her first claim for relief (for "violation of federal civil and constitutional

rights"), plaintiff alleges that "violations of her civil and constitutional rights were caused by

implementation of customs, policies, and/or official acts of" multiple defendants: Placer County,

City of Rocklin, CFMG, AMR, "and/or" SCMHTC, and that those customs, policies, and/or

official acts include but are "not limited to" the following:

(a) failure to train or supervise the other named and/or "DOE"
Defendants;
(b) ratifying the illegal conduct of themselves, each other, and the
other named and "DOE" defendants; and
(c) acting or failing to act pursuant to one or more interrelated *de
facto* policies, practices, and/or customs of Defendants CITY OF
ROCKLIN and its Police Department, PLACER COUNTY,
PLACER COUNTY SHERIFF EDWARD N. BONNER, CFMG,
AMR, and/or SCMHTC and/or their regulating Boards.

(Id. ¶ 27.)  The paragraph goes on to allege a laundry list of various "policies, practices, and

customs" specifically ascribed to a list of several defendants: the City of Rocklin, Placer County,

CFMG, AMR, and Doe defendants, but *not* SCMHTC and Kittrell.  (Id. (specifically, SAC p.14,

lns. 13-25).)

Plaintiff also alleges that Kittrell and SCMHTC had a duty to supervise Patino,

Jackson, and Fakhri (id. ¶ 55-56), and that they "failed to exercise reasonable care in not

supervising the medical providers who inflicted medical batteries on Plaintiff's body without

Plaintiff's consent, causing Plaintiff to suffer personal injuries and severe emotional distress."

(Id. ¶¶ 56-57.)  Plaintiff repeats these "duty to supervise" and "failure to supervise" allegations

1   for other state law tort claims without adding any further supporting factual allegations,

2   appearing to base the claims upon the limited factual allegations described above (i.e, unwanted

3   injections; lack of a hearing to determine whether plaintiff was "gravely disabled").  (E.g., id. ¶¶

4   62-63, 65 (IIED claim); ¶¶ 74-75 (false imprisonment claim); ¶¶ 85-88 (medical malpractice); ¶¶

5   91-94 (negligence per se from failure to hold a "gravely disabled" hearing).)

6           In her second claim for relief ("violations of California Constitution and

7   Statutes") plaintiff alleges that all defendants "acted together and in concert and entered into an

8   agreement among themselves to violate Plaintiff's rights . . . ."  (Id. ¶ 30.)  The SAC names

9   SCMHTC and Kittrell in lengthy lists of defendants appearing after successive lists of statutes.

10  (Id. ¶ 30(a)-(c).)  There are no factual allegations clearly tied to these lists of multiple defendants

11  and lists of allegedly-violated statutes.

12          As to her numerous state law tort claims, plaintiff conclusorily alleges that she

13  "timely filed claims" against SCMHTC and Kittrell.  (Id. ¶ 23.)  According to the SAC,

14  "[a]ttached as Exhibit "4" are true and correct copies of the medical malpractice claims by

15  Plaintiff against SCMHTC and Kittrell, including the certified mail receipt."  (Id.)  Plaintiff also

16  conclusorily alleges that she "timely served notices of her intent to commence litigation for

17  medical malpractice against the medical Defendants named in this Claim for Relief, thereby

18  extending the statute of limitations pursuant to California Code of Civil Procedure § 364."  (Id. ¶

19  89 (naming SCMHTC and Kittrell, among other defendants, in the claim for relief).)  Aside from

20  these sentence and the exhibit it references, the SAC does not allege any other form of claim

21  presentation to SCMHTC or Kittrell.

22  II.   LEGAL STANDARDS

23          A.  Legal Standard For A Motion to Dismiss Under Rule 12(b)(6)

24          Moving defendants' motion is brought pursuant to Rules 12(b)(6).  A motion to

25  dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency

26  of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp.

2d 1104, 1109 (E.D. Cal. 2009).   Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of the claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  The complaint must give a defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and modification omitted).

On a motion to dismiss, the court construes the pleading in the light most favorable to the plaintiff and resolves all doubts in the plaintiff's favor.[6]  Corrie v. Caterpiller, 503 F.3d 974, 977 (9th Cir. 2007); Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  The complaint's factual allegations are accepted as true.  Church of Scientology of Cal. v. Flynn, 744 F.2d 694, 696 (9th Cir. 1984).  In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), however, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).  Factually unsupported claims framed as legal conclusions, and mere recitations of the legal elements of a claim, do not give rise to a cognizable claim for relief.

---

[6] Pro se pleadings are typically held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Parduc, 551 U.S. 89 (2007).  With respect to pleadings by pro se parties, the court must construe such a pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).  However, during a recent hearing, plaintiff confirmed to the court that she is, in fact, an attorney currently licensed to practice law in California.  (E.g., Dkt. No. 117.)  Therefore, it makes little sense to hold the SAC to a "less stringent" standard in this case.  Moreover, plaintiff has not argued that a less stringent standard should apply to her.  To date, this court has given plaintiff several opportunities to amend her pleading and otherwise treated her as a typical, non-attorney pro se party (by, for instance, permitting her to make arguments in hearings for which she failed to file any written oppositions despite Eastern District Local Rule 230(c)).  Plaintiff has admitted that she is a licensed attorney in California.  The undersigned has already informed plaintiff that her pleading will no longer be held to a less stringent, non-attorney standard.  (E.g., Dkt. No. 60.)

1  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-51 (2009) (holding that Rule 8 "demands more than an

2  unadorned, the defendant-unlawfully-harmed-me-accusation").

3          Iqbal and Twombly describe a two-step process for evaluation of motions to

4  dismiss.  The court first identifies the non-conclusory factual allegations, and the court then

5  determines whether these allegations, taken as true and construed in the light most favorable to

6  the plaintiff, "plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1949-50.[7]

7          "A complaint may survive a motion to dismiss if, taking all well-pleaded factual

8  allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its

9  face.'" Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010).  "'A claim has facial

10  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

11  inference that the defendant is liable for the misconduct alleged.'" Caviness v. Horizon Cmty.

12  Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).

13          "Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood

14  that a pleader will succeed in proving the allegations.  Instead, it refers to whether the

15  non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the

16  reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at

17  1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

18  than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.

19  at 557).  A complaint may fail to show a right to relief either by lacking a cognizable legal theory

20

21          [7]  The court may consider certain limited evidence on a motion to dismiss.  In ruling on
   a motion to dismiss pursuant to Rule 12(b), the court "may generally consider only allegations
22  contained in the pleadings, exhibits attached to the complaint, and matters properly subject to
   judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th
23  Cir. 2007) (citation and quotation marks omitted). "The court need not, however, accept as true
   allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v.
24  Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) as amended by 275 F.3d 1187 (9th
   Cir.2001); accord Makua v. Gates, Civil No. 09-00369 SOM/LEK, 2009 WL 3923327, at *3 (D.
25  Haw. Nov. 19, 2009) (not reported) (". . . the court need not accept as true allegations that
   contradict matters properly subject to judicial notice or allegations contradicting the exhibits
26  attached to the complaint") (citing Sprewell).

1   or by lacking sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police

2   Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Only where a plaintiff has failed to "nudge [his or her]

3   claims across the line from conceivable to plausible," is the complaint properly dismissed.

4   Iqbal, 129 S. Ct. at 1951-52.  While the plausibility requirement is not akin to a probability

5   requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."

6   Id. at 1949; accord Twombly, 550 U.S. at 556.  This plausibility inquiry is "a context-specific

7   task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

8   at 1950.

9   III.    DISCUSSION

10          A.      Motion to Dismiss

11          1.      Failure To State A Claim For Violation Of 42 U.S.C. § 1983

12          Moving defendants argue that the SAC fails to allege a factual basis for any

13   alleged violations of 42 U.S.C. § 1983 ("Section 1983") against them.  (MTD at 3 (citing cases);

14   Exh. 1 to MTD[8] at 4-5.)  The argument is well-taken.

15          a)      SCMHTC's Alleged Violation of Section 1983

16          Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore

17   may be liable for causing a constitutional deprivation.  Monell v. Department of Soc. Servs., 436

18   U.S. 658, 690 (1978); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

19   "[A] local government may not be sued under § 1983 for an injury inflicted solely by its

20   employees or agents.  Instead, it is when execution of a government's policy or custom, whether

21

22          [8] Moving defendants attached their previous motion to dismiss (and its supporting
     documents, including a request for judicial notice) as exhibits to their pending MTD.  However,
23   moving defendants did not actually file a request for judicial notice along with their pending
     MTD.  The undersigned cannot properly rule on a request made in an exhibit to a pending
24   motion, or on other requests not technically before the court.  Regardless, the undersigned did not
     find it necessary to look outside moving defendants' previous and current points and authorities
25   in resolving the pending MTD.  Where appropriate, the undersigned will reference relevant
     elements of the points and authorities filed with moving defendants' previous motion and
26   appended to their renewed motion, as the arguments have not substantially changed.

made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell,

436 U.S. at 694.

Municipal liability may be premised on: (1) conduct pursuant to an expressly

adopted official policy; (2) a longstanding practice or custom which constitutes the 'standard

operating procedure' of the local government entity; (3) a decision of a decision-making official

who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly

be said to represent official policy in the area of decision; or (4) an official with final

policymaking authority either delegating that authority to, or ratifying the decision of, a

subordinate. Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008); Lytle v. Carl, 382 F.3d 978, 982

(9th Cir. 2004); Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). A "policy" is a "deliberate

choice to follow a course of action . . . made from among various alternatives by the official or

officials responsible for establishing final policy with respect to the subject matter in question."

Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008). A custom is a widespread and longstanding

practice that "constitutes the standard operating procedure of the local government entity."

Trevino, 99 F.3d at 918; Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992). "Liability

for improper custom may not be predicated on isolated or sporadic incidents; it must be founded

upon practices of sufficient duration, frequency and consistency that the conduct has become a

traditional method of carrying out policy." Trevino, 99 F.3d at 918; McDade v. West, 223 F.3d

1135, 1141 (9th Cir. 2000). After proving one of the above methods of liability, the plaintiff

must show that the challenged municipal conduct was both the cause in fact and the proximate

cause of the constitutional deprivation. Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th

Cir. 2008); Trevino, 99 F.3d at 918.

A governmental entity's failure to train its employees can create Section 1983

liability where the failure to train "amounts to deliberate indifference to the rights of persons"

with whom those employees are likely to come into contact. [F]or liability to attach in this

1    circumstance the identified deficiency in a [local governmental entity's] training program must

2    be closely related to the ultimate injury.  In other words, a plaintiff must show that his or her

3    constitutional injury would have been avoided had the governmental entity properly trained its

4    employees."  Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001) (internal citations

5    and quotation marks omitted) (citing City of Canton v. Harris, 489 U.S. 378, 389-91 (1989);

6    Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)).

7              The SAC alleges that plaintiff suffered injuries at SCMHTC and, broadly, that all

8    of those injuries were the results of customs or policies.  While the SAC includes a long list of

9    customs and de facto policies plaintiff ascribes to *other* defendants, the SAC does not clearly

10   specify a particular custom or policy of SCMHTC's that caused a violation of plaintiff's

11   constitutional or federally-protected rights.  The SAC also fails to allege that SCMHTC

12   personnel who allegedly injected her or deprived her of a hearing were acting pursuant to any

13   particular SCMHTC "policies" governing injections or hearings.

14              i)  A Policy Of Providing Records Within 30 Days

15              The only SCMHTC-related or Kittrell-related "policy" clearly alleged within the

16   SAC is the "policy to provide patient records within thirty (30) days."  (Id. ¶ 54(b).)  While

17   plaintiff alleges that *she* did not receive her records within thirty days, she stops short of alleging

18   that this was the result of a broader SCMHTC policy—de facto or otherwise—of *denying* such

19   records.  Instead, plaintiff alleges the inverse: SCMHTC's *failure* to comply with its policy of

20   *providing* records.  Accordingly, SCMHTC's alleged failure to provide plaintiff her records

21   within 30 days is not alleged to have been the product of a broader "policy" of denying timely

22   access to patient records.[9]  Moreover, the alleged violation of SCMHTC's internal policy of

23

24         [9]  Similarly, Plaintiff alleges that she did not receive a hearing to determine whether she
     was "gravely disabled" within 72-hours (SAC ¶ 54(b)), but she stops short of alleging that this
25   was the result of a broader SCMHTC policy—de facto or otherwise—of regularly denying such
     hearings to patients.  Indeed, while the SAC alludes to a "policy" to "provide patient records,"
26   plaintiff never alleges that SCMHTC's failure to provide her a hearing was itself the result of a

1   providing patient records within 30 days is not alleged to have caused a violation of plaintiff's

2   federal or constitutional rights.  Instead, those rights were allegedly violated during plaintiff's

3   stay at SCMHTC, by way of unwanted injections and other alleged conduct that occurred while

4   plaintiff was a patient at SCMHTC.

5                    ii)   A Policy Of Failing To Train Or Supervise Employees

6                    Aside from referencing SCMHTC's policy of providing patient records, described

7   above, plaintiff also alleges moving defendants' Section 1983 liability arises from a "failure to

8   train or supervise" SCMHTC employees or from "ratifying" their improper conduct.  (SAC ¶ 27.)

9                    First, the SAC does not contain any factual allegations supporting an alleged

10  "ratification" of any particular conduct.  Therefore, this allegation is conclusory and is

11  disregarded at this posture.  See Iqbal, 129 S. Ct. at 1949-50.

12                   Second, while plaintiff alleges a policy of deficient training and supervision (SAC

13  ¶ 27), she does not allege that her alleged injections (or that her being denied a hearing) would

14  have been avoided in the absence of such a policy.  In other words, plaintiff does not allege she

15  would have been treated any differently if the SCMHTC personnel involved had received

16  additional training or supervision, and she does not specify the sort of training or supervision the

17  lack of which caused her particular alleged injuries.  See Young v. City of Visalia, 687 F. Supp.

18  2d 1141, 1149 (E.D. Cal. 2009) (holding that, where a "complaint does not identify what the

19  training and hiring practices were, how the training and hiring practices were deficient, or how

20  the training and hiring practices caused [p]laintiffs' harm[,]" the complaint merely makes

21  "threadbare" conclusory allegations that track the elements for Monell liability) (citing cases)[10];

22  _____

23  "policy."

24          [10]  As the court in Young explained, "in light of Iqbal, it would seem that the prior Ninth
    Circuit pleading standard for Monell claims (i.e. 'bare allegations') is no longer viable."  Young,

25  687 F. Supp. 2d at 1149; accord Carrea v. California, 2010 WL 3984832, at *18-19 (C.D. Cal.
    Aug. 25, 2010) (not reported) (dismissing Monell claim with prejudice after applying Iqbal

26  standard.)

1   accord Lucas v. City of Visalia, No. 1:09-CV-1015 AWI DLB, 2010 WL 1444667, at *4 (E.D.

2   Cal. April 12, 2010) (not reported) (holding that "[a]llegations of Monell liability will be

3   sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom;

4   (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the

5   plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i .e.

6   show how the deficiency involved was obvious and the constitutional injury was likely to

7   occur.")

8          At best, the SAC makes a broad, vague "failure to train or supervise" allegation,

9   and therefore fails to plausibly allege that plaintiff's injuries at SCMHTC were the result of a

10  "policy."  See Young, 687 F. Supp. 2d at 1149; see also Lutz v. Delano Union School Dist., No.

11  1:08 CV 01787 OWW DLB, 2009 WL 2525760, at *5 (E.D. Cal. Aug. 7, 2009) (not reported)

12  (dismissing Section 1983 claim in part because allegation that "at all times material hereto, [the

13  defendants acted] in accordance with a policy, custom, and practice", and holding that a

14  "conclusory statement, which is unsupported by any factual allegations as to what that 'policy,

15  custom, and practice' consists of, who established it, when, or for what purpose, does not

16  sufficiently allege a basis for Monell liability"); cf. Lee v. City of Los Angeles, 250 F.3d 668,

17  681-82 (9th Cir.2001) (holding that complaint included factual allegation sufficient to state a

18  Monell claim where the complaint alleged the challenged policy/custom, explained how the

19  policy/custom was deficient, explained how the policy/custom caused the plaintiff harm, and

20  explained how the deficiency involved was obvious and the constitutional injury was likely to

21  occur).  Under these authorities, the SAC's broadly-alleged "failure to train or supervise," is not

22  sufficient to support the Section 1983 claim against moving defendants.

23          Further, in her opposition plaintiff acknowledges that moving defendants take

24  issue with the SAC's failure to clearly allege a "policy" that could form the basis of a claim

25  under 42 U.S.C. § 1983.  (Oppo, Dkt. No. 90 at 8.)  But despite being an active member of the

26  California Bar, plaintiff did not raise a single counter argument on the issue.  (Id.)  Plaintiff has

1    not indicated an ability to amend her pleading to include factual allegations to describe a

2    SCMHTC policy that violated her federal rights.

3                  b)  Kittrell's Alleged Violation of Section 1983

4                  Supervisory personnel are generally not liable under Section 1983 for the actions

5    of their employees or contractors under a theory of respondeat superior and, therefore, when a

6    named defendant holds a supervisorial position a causal link between the supervisor and the

7    claimed constitutional violation must be alleged.  Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir.

8    1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

9                  To state a claim for relief against Kittrell under Section 1983 based on a theory of

10   supervisory liability, plaintiff must allege facts that would support a claim that Kittrell either:

11   personally participated in the alleged deprivation of constitutional rights; knew of the violations

12   and failed to act to prevent them; or promulgated or "implemented" a specific policy "so

13   deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force

14   of the constitutional violation.'"  See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)

15   (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although

16   federal pleading standards are broad, some *facts* must be alleged to support claims under section

17   1983.  Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

18                  The SAC does not allege that Kittrell personally participated in the alleged

19   deprivation of plaintiff's constitutional rights.  The SAC does not allege that Kittrell knew of

20   constitutional violations and failed to act to prevent them.  And, as detailed above, because the

21   SAC does not allege a specific "policy" that deprived plaintiff of her rights, the SAC necessarily

22   fails to allege that Kittrell himself implemented or promulgated such a policy.  See Hansen, 885

23   F.2d at 646; Taylor, 880 F.2d at 1045.

24                  In sum, Kittrell cannot be liable for Section 1983 violations by SCMHTC

25   employees on a respondeat superior theory; i.e., on a theory that Kittrell should be held liable for

26   the actions of employees he should have supervised more closely.  See Fayle, 607 F.2d at 862;

                                                   16

1  Mosher, 589 F.2d at 441.  Therefore, the causal link between Kittrell and plaintiffs' claimed

2  constitutional violations must be alleged, but the SAC lacks such an allegation.  The SAC does

3  not include factual allegations showing the requisite causal link between Kittrell and the conduct

4  of SCMHTC personnel such as Fakhri, Jackson, and Patino, even assuming that their conduct

5  caused violations of plaintiff's constitutionally-protected rights.

6          For all of the above reasons, the SAC fails to allege a SCMHTC "policy" that

7  violated plaintiff's constitutional rights and fails to meet the elements of a Monell claim, and the

8  SAC fails to allege a sufficient basis for Kittrell's supervisory liability.  Accordingly, the

9  undersigned recommends that moving defendants' motion to dismiss the Section 1983 claim be

10 granted.  Further, as plaintiff is a licensed attorney who has had multiple opportunities to amend

11 her pleading and has not suggested any ability to correct these defects, the undersigned

12 recommends that the claim for violation of Section 1983 be dismissed with prejudice as against

13 the moving defendants.

14          2.      Failure to State Claims For Violations Of Federal Statutes

15          Moving defendants argue that the SAC also fails to plead facts sufficient to

16 support claims for violations of various federal statutes other than Section 1983, specifically 42

17 U.S.C. §§ 1981, 1985, 1986, and 18 U.S.C. § 245.  (MTD at 3; Exh. 1 to MTD at 5-6.)  The

18 arguments are well-taken.

19          42 U.S.C. § 1981

20          Moving defendants argue that 42 U.S.C. § 1981 ("Section 1981") prohibits racial

21 discrimination in regards to contracts, and that both the existence of a contract and racial

22 discrimination must be alleged to state a claim thereunder.  (MTD at 3; Exh. 1 to MTD at 5-6.)

23          A plain reading of Section 1981 reveals that it applies outside the strict context of

24 "mak[ing] and enforc[ing] contracts"—it also protects the right to "sue, be parties, give evidence,

25 and to the full and equal benefit of all laws and proceedings for the security of persons and

26 property as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981.  While Section 1981 may be

17

1  read to embrace other rights aside from "making and enforcing contracts," more central here is

2  the U.S. Supreme Court's clarification that Section 1981 protects against discrimination based on

3  *race.* Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 474-75 (2006) (holding that Section

4  1981 protects the equal right of all persons "without respect to race"); Johnson v. Riverside

5  Healthcare System, LP, 534 F.3d 1116, 1123 (9th Cir. 2008) (holding that Section 1981 "creates

6  a cause of action only for those discriminated against on account of their race or ethnicity");

7  White v. Wash. Pub. Power Supply Sys., 692 F.2d 1286, 1290 (9th Cir. 1982) (holding that it is

8  "well settled that section 1981 only redresses discrimination based on plaintiff's race");

9  Longariello v. Phoenix Union High School Dist., No. CV-09-1606-PHX-LOA, 2009 WL

10  4827014, at *5 (D. Ariz. Dec. 15, 2009) (not reported) (granting motion to dismiss Section 1981

11  claim because complaint did not allege that the plaintiff was a member of a racial minority).

12  Plaintiff has not alleged that any of the events and injuries described in her SAC

13  were the result of her race, nor does she plead her race or ethnicity.  (E.g., SAC ¶ 1.)

14  Accordingly, the undersigned recommends that moving defendants' MTD be granted with

15  respect to the claim for violation of 42 U.S.C. § 1981.  Because plaintiff has had multiple

16  opportunities to amend her pleading and has never intimated that any of the alleged events were

17  the result of racial discrimination, the undersigned recommends that the claim be dismissed with

18  prejudice as against moving defendants.

19  42 U.S.C. §§ 1985 and 1986

20  Moving defendants argue that the SAC fails to state a basis for violation of 42

21  U.S.C. § 1985 ("Section 1985") because there are no factual allegations supporting any alleged

22  conspiracy to violate her rights.   (MTD at 3; Exh. 1 to MTD at 5-6 (citing cases).)

23  Section 1985 "proscribes conspiracies to interfere with civil rights."  Sanchez v.

24  City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1991) (en banc).  To state a cause of action

25  under § 1985(3), plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the

26  purpose of depriving, either directly or indirectly, any person or class of persons of the equal

18

1   protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in

2   furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or

3   deprived of any right or privilege of a citizen of the United States.  Sever v. Alaska Pulp Corp.,

4   978 F.2d 1529, 1536 (9th Cir. 1992) (citing United States Brotherhood of Carpenters and Joiners

5   of America v. Scott, 463 U.S. 825, 828-29 (1983)).

6          The claim under this section "must allege facts to support the allegation that

7   defendants conspired together.  A mere allegation of conspiracy without factual specificity is

8   insufficient."  Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988).

9   "[T]he second of these four elements requires that in addition to identifying a legally protected

10  right, a plaintiff must demonstrate a deprivation of that right motivated by 'some racial, or

11  perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators'

12  action.'"  Sever, 978 F.2d at 1536 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).  A

13  pleading that conclusorily alleges a "conspiracy" to violate the plaintiff's rights, without more,

14  fails to state a viable conspiracy claim under Section 1985.  E.g., Torres v. Perata, No. CIV

15  S-07-2593 JAM EFB PS, 2009 WL 2985478, at *4 (E.D. Cal. Sept. 16, 2009) (not reported)

16  (dismissing claim with prejudice due to lack of plausible factual allegations supporting claimed

17  "conspiracy" to violate civil rights).

18         The SAC alleges that *all* defendants "acted together and in concert and entered

19  into an agreement among themselves to violate Plaintiff's rights . . . ."  (SAC ¶ 30.)  The SAC

20  also alleges that a list of various defendants (not including moving defendants) "conspired among

21  themselves" to injure her on account of her "religion, including silent prayer," (id. ¶ 26(e), but

22  the SAC contains no "conspiracy" allegation clearly leveled as against moving defendants.

23  There is no allegation that moving defendants *themselves* were ever aware of plaintiff's

24  "religion" or practice of "silent prayer" or that *their* conduct toward her was motivated by such

25  awareness.  There are simply no *factual* allegations supporting moving defendants' involvement

26  in any alleged "conspiracy" to violate plaintiff's rights, and thus the SAC has failed to state a

19

1  claim for violation of Section 1985.  See Karim-Panahi, 839 F.2d at 626; Torres, 2009 WL

2  2985478, at *4.

3         Accordingly, the undersigned recommends that the motion to dismiss the Section

4  1985 claim be granted.  Further, as plaintiff has had multiple opportunities to amend her pleading

5  and has not suggested any ability to amend her pleading to correct these defects, and as the

6  undersigned informed plaintiff of the need to plead *factual allegations* to support her conspiracy

7  claim in particular (Dkt. No. 60), the undersigned recommends that the claim for violation of

8  Section 1985 be dismissed with prejudice as against the moving defendants.

9         Further, to the extent the SAC alleges that moving defendants violated 42 U.S.C.

10  § 1986 ("Section 1986"), because a "claim can be stated under section 1986 only if the complaint

11  contains a valid claim under section 1985," the undersigned recommends that the motion to

12  dismiss the Section 1986 claim also be granted.  See Karim-Panahi, 839 F.2d at 626; Torres,

13  2009 WL 2985478, at *4.  Section 1986 imposes liability on every person who knows of an

14  impending violation of Section 1985 but neglects or refuses to prevent the violation, and

15  therefore such claim is dependent upon the existence of a claim under Section 1985.

16  Karim-Panahi, 839 F.2d at 626.  Accordingly, the undersigned recommends that the Section 1986

17  claim be dismissed with prejudice as to moving defendants for the same reasons stated above.

18                    18 U.S.C. § 245

19         District courts have clarified that "18 U.S.C. § 245 is a criminal statute and does

20  not grant the plaintiff a private right of action."  Cooley v. Keisling, 45 F. Supp. 2d 818, 820 (D.

21  Or.1999); e.g., Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  Accordingly, as to any

22  alleged violation of 18 U.S.C. § 245, the motion to dismiss should be granted.  Because

23  amendment would be futile with respect to this claim, the undersigned recommends that the

24  claim for violation of 18 U.S.C. § 245 be dismissed with prejudice as against moving defendants.

25  ////

26  ////

20

3.     Failure To Present A Timely Government Claim

Moving defendants argue that all of plaintiff's state law claims should be

dismissed for failure to timely present a government claim.  (MTD at 3-4.)  Specifically, those

claims are:  the second claim for relief under California statutes; the third claim for trespass; the

sixth claim for medical battery; the seventh claim for intentional infliction of emotional distress;

the ninth claim for false imprisonment; the eleventh claim for conversion; the twelfth claim for

medical malpractice; and the thirteenth claim for negligence per se.  (MTD at 3.)  Moving

defendants' argument is well-taken.

The California's Government Claims Act, which is also known as the California

Tort Claims Act,[11] provides that a party seeking to recover money damages from a public entity

or its employees must submit a claim to the entity before filing suit in court, generally no later

than six months after the cause of action accrues.[12]  See Cal. Govt. Code §§ 905, 911.2, 945.4,

950-950.2.

Timely presentation of claims is not merely a procedural requirement but is an

element of the plaintiff's cause of action.  Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 209,

164 P.3d 630, 634 (2007) ("Timely claim presentation is not merely a procedural requirement,

but is, as this court long ago concluded, a condition precedent to plaintiff's maintaining an action

against defendant, and thus an element of the plaintiff's cause of action" (citation and quotation

marks omitted).).  A plaintiff may sue the public entity and its employees only after the entity has

acted upon or is deemed to have rejected the claim.  Id.; see also Mangold v. Cal. Pub. Utilities

Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a

_____

[11]  In 2007, the California Supreme Court adopted the practice of using the title "Government Claims Act" instead of the more traditional "California Tort Claims Act" to adequately capture the breadth of the statutory framework and to reduce confusion over issues such as whether breach of contract claims fall within the statutory provisions.  See City of Stockton v. Superior Court, 42 Cal. 4th 730, 741-42 & ns.6-7 (2007).

[12]  A state claim presentment requirements do not apply to *federal* civil rights actions.  Ford v. Long Beach Unified Sch. Dist., 461 F.3d 1087, 1089-90 (9th Cir. 2006).

21

1   condition precedent to suit against a public entity, the timely presentation of a written claim and

2   the rejection of the claim in whole or in part.").  A plaintiff's "failure to allege facts

3   demonstrating or excusing compliance with the claims presentation requirement subjects a claim

4   against a public entity" to dismissal for failure to state a claim.[13]  See State v. Superior Court

5   (Bodde), 32 Cal. 4th 1234, 1239 (2004).

6           Here, plaintiff failed to plead timely compliance with the Government Claims

7   Act.  The SAC alleges that plaintiff's stay at SCMHTC occurred on or about November 21

8   through 28, 2007, and that her alleged injuries occurred in that timeframe.  (SAC ¶¶ 6, 18.)

9   Plaintiff even confirms that "the statute of limitations began to run against SCMHTC and Kittrell

10   on November 25, 2007."  (Oppo. at 13.)  Six months after November 28, 2007, was May 28,

11   2008.  Accordingly, plaintiff had until May 28, 2008, to present her claims in accordance with

12   the Government Claims Act.  Putting aside conclusory allegations such as: "Plaintiff timely

13   served" notices "thereby extending the statute of limitations" (SAC ¶ 89), the SAC lacks any

14   allegation that plaintiff presented her claims to moving defendants *on or before* May 28, 2008.[14]

15   It also lacks any allegation that plaintiff applied to file a late claim, and any explanation as to

16   why the deadline was missed.  Cal. Govt. Code § 911.4.

17           The SAC attaches a letter that plaintiff alleges she sent to Kittrell in late August of

18   2008 (Exh. 4 to SAC).  But this letter was sent months *after* the six-month deadline (i.e., May 28,

19   2008) for plaintiff's claims presentation described above.  That August 2008 letter was not a

20

21      [13]  The Ninth Circuit Court of Appeals has held that a district court may properly dismiss

22   supplemental state law claims for failure to allege compliance or an excuse from compliance
     with the claims presentation requirement, but errs by failing to instruct a plaintiff regarding the

23   necessity of alleging compliance with the exhaustion requirements.  See Karim-Panahi v. L.A.
     Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

24      [14]  At most, the SAC conclusorily alleges that "plaintiff timely served notices of her

25   intent to commence litigation for medical malpractice against the Medical Defendants . . .
     thereby extending the statute of limitations pursuant to California Code of Civil Procedure §

26   364."  (SAC ¶ 89.)  Whether plaintiff did anything in a "timely" manner is a legal conclusion,
     and therefore that element of the allegation is disregarded here.  See Iqbal, 129 S. Ct. at 1949-50.

1   timely presentation of plaintiff's claims; if anything, it was a late presentation—and again,

2   nothing in the SAC or plaintiff's opposition suggests she applied for leave to file such a late

3   claim. Accordingly, on the face of the SAC, plaintiff has not pleaded facts indicating a timely

4   claims presentation in accordance with the Government Claims Act.

5            In her opposition and SAC, plaintiff argues that her August 2008 letter to Kittrell

6   was a "timely" notice of her intent to sue Kittrell and SCMHTC, at least for a medical

7   malpractice claim.  (E.g., SAC ¶ 89 (citing Cal. Code Civ. Proc. § 364).)  But California Code of

8   Civil Procedure § 364 would, at best, *extend* plaintiff's time to *file a lawsuit* against medical

9   providers by 90 days – it does not extend deadlines set in the Government Claims Act, and it

10  does not cure an otherwise late-presented claim.  Cal. Govt. Code §§ 901, 911.2; e.g., Anson v.

11  County of Merced, 202 Cal. App. 3d 1195, 1202 (1988) (holding that a six-month deadline set in

12  the Government Claims Act "controlled" over a statute of limitations set in a different statute,

13  California Code of Civil Procedure § 340.5).  In other words, while California Code of Civil

14  Procedure § 364 gives a plaintiff extra time to file a legal action against medical providers in a

15  court of law, it does not give her extra time to take the initial (and prerequisite) step of filing her

16  claims with a public agency within six months of her injury.

17           Further, neither the SAC nor plaintiff's opposition suggest a delayed discovery of

18  the injuries allegedly caused by SCMHTC and/or Kittrell.  While her argument is unclear,

19  plaintiff appears to suggest that SCMHTC's repeated failures to provide her copies of her

20  medical records—months after her time at SCMHTC—somehow extends the six-month deadline

21  for claims presentation.  (Oppo. at 9-11.)  The argument is not well-taken.  SCMHTC's alleged

22  delay in providing medical records might obscure *additional* claims or details regarding known

23  claims, but does not impact the accrual of claims based on, for instance, the alleged injections

24  administered against her wishes or the injuries and distress the injections caused at the moment

25  they allegedly occurred.  Similarly, plaintiff does not argue that fraudulent concealment or

26  anything else legitimately prevented her from discovering SCMHTC's identity; indeed, she

1  admits she "knew of the identity of SCMHTC within the first 72 hours that she was admitted" to

2  SCMHTC.  (Id. at 9.)

3          Because presentation of her state law claims is an element of the claims

4  themselves as described by the authorities above, plaintiff's failure to plead presentation of her

5  state law claims to moving defendants by May 28, 2008, mandates dismissal of those claims.

6  Further, plaintiff offers no compelling explanation for her late-filed claim, and neither the SAC

7  nor plaintiff's opposition suggests that she applied for leave to file a late claim or that she is

8  otherwise entitled to late claims presentation, tolling, or delayed accrual.

9          Accordingly, because the SAC lacks the factual allegation that plaintiff presented

10  her state law claims to moving defendants within six months of her injuries (i.e., by May 2008),

11  the undersigned recommends dismissal of plaintiff's state law claims against moving defendants.

12  The undersigned also recommends that dismissal of these state law claims be with prejudice as to

13  moving defendants.  Plaintiff, an attorney, has already had multiple opportunities to amend her

14  pleading.  The undersigned has specifically instructed her that she must plead timely claims

15  presentation as part of her pleading, and she has demonstrated the ability to append claims-

16  presentation documents to her complaint where such documents actually exist (as she has done

17  so with respect to several other defendants, by attaching her letters of claims presentation to the

18  City of Rocklin).  (E.g., SAC ¶ 23, Exh. 1 to SAC.)  At this point, plaintiff's failure to attach

19  timely claims presentation documents to her pleading with respect to moving defendants

20  confirms that no such documents exist.  Plaintiff does not indicate otherwise in her opposition,

21  and instead appears to argue that her August 2008 letter to Kittrell suffices for timely claims

22  presentation.  (Oppo. at 9-11.)  But the letter is dated three months after the claims presentation

23  deadline of May 2008, and as described above, does not suffice.  Accordingly, the undersigned

24  recommends that plaintiff's state law claims be dismissed with prejudice as against the County

25  and Kittrell.

26  ////

4.     Failure To Plead Facts; Governmental Immunity

Because the undersigned recommends dismissal of plaintiff's state law claims on grounds that they were not timely presented in accordance with the Government Claims Act, the undersigned does not reach the additional arguments made within the MTD, namely, that the SAC lacks factual allegations sufficient to support each of plaintiffs' state law claims, and that moving defendants are entitled to governmental immunity with respect to those claims.  (MTD at 2.)  While these arguments may have merit, in light of the foregoing the undersigned need not reach them here.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.     The motion to dismiss the claim for violation of 42 U.S.C. § 1983 be granted as to moving defendants, and that the claim be dismissed with prejudice as against them;

2.     The motion to dismiss the claim for violation of 42 U.S.C. § 1981 be granted, and that the claim be dismissed with prejudice as against them.

3.     The motion to dismiss the claims for violations of 42 U.S.C. §§ 1985-86 be granted, and that the claims be dismissed with prejudice as against them.

4.     The motion to dismiss the claim for violations of 18 U.S.C. § 245 be granted, and that the claim be dismissed with prejudice as against them.

5.     The motion to dismiss plaintiff's state law claims be granted, and that plaintiff's state law claims be dismissed with prejudice as against the County and Kittrell. Specifically, these state law claims are:

a.     The second claim for relief under California statutes;

b.     The third claim for trespass;

c.     The sixth claim for medical battery;

d.     The seventh claim for intentional infliction of emotional distress;

e.     The ninth claim for false imprisonment;

f.     The eleventh claim for conversion;

g.     The twelfth claim for medical malpractice; and

h.     The thirteenth claim for negligence per se.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO RECOMMENDED**

DATED:  March 31, 2011


_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE